UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| MIRIAM FULD, individually, as personal representative and administrator of the Estate of Ari Yoel Fuld, deceased, and as natural guardian of plaintiff Natan Shai Fuld, NATAN SHAI FULD, minor, by his next friend and guardian Miriam Fuld, NAOMI FULD, TAMAR GILA FULD, and ELIEZER YAKIR FULD, | :<br>:<br>:<br>:   Case No.: 20-cv-3374<br>:<br>:<br>: |
| Plaintiffs, | : |
| vs. | :   **COMPLAINT** |
| | :   **WITH JURY DEMAND** |
| THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY (a/k/a "The Palestinian Interim Self-Government Authority," and/or "The Palestinian Council," and/or "The Palestinian National Authority"), | :<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>:<br>:<br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## INTRODUCTION

1.      This is a civil action pursuant to the Antiterrorism Act, 18 U.S.C. §2331 *et. seq.*, the Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No. 116-94, div. J, tit. IX, §903, 133 Stat. 3082 (PSJVTA), and supplemental causes of action, brought by United States citizens, family members, and the personal representative of the estate of a United States citizen, who were injured and killed in a terrorist attack assisted and encouraged by defendants on September 16, 2018, in Gush Etzion, Israel.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter and over defendants pursuant to 18

U.S.C. §§2333, and 2334 and the rules of supplemental jurisdiction, as this is an action by

United States nationals who have been injured "in [their] person, property or business by reason

of an act of international terrorism."  Subject matter jurisdiction is also conferred by 28 U.S.C.

§§ 1331 and 1332, as this involves a federal question, and the matter in controversy is between

citizens of a State and citizens of a foreign state, and exceeds the sum or value of $75,000.

3.      The Southern District of New York is the proper venue for this action pursuant to

18 U.S.C. §2334(a), since defendants Palestinian Authority and Palestine Liberation

Organization maintain an office and agent in this district and are residents in this district.

Moreover, pursuant to 18 U.S.C. §2334(e)(1)(A)(i), defendants Palestinian Authority and

Palestine Liberation Organization are deemed to have consented to personal jurisdiction by

making payments 120 days after the enactment of the Promoting Security and Justice for Victims

of Terrorism Act of 2019 to the family of Khalil Yusef Ali Jabarin, who has been imprisoned for

the terrorist attack in which he killed Ari Yoel Fuld.

## PARTIES

4.      Plaintiff MIRIAM FULD was severely harmed by the terrorist attack encouraged,

incentivized, and assisted by defendants on September 16, 2018 in Gush Etzion, Israel, ("the

September 16, 2018 terrorist attack"), and is, and at all times relevant hereto was, an American

citizen.  Plaintiff MIRIAM FULD is the wife of American citizen Ari Yoel Fuld, who was

murdered in the September 16, 2018 terrorist attack, and brings this action individually, as the

personal representative and administrator of the Estate of Ari Yoel Fuld, and as a natural

guardian of her minor child, plaintiff NATAN SHAI FULD.

5.      Plaintiff NATAN SHAI FULD was severely harmed by the September 16, 2018 terrorist attack, and is, and at all times relevant hereto was, an American citizen and the minor son of plaintiff MIRIAM FULD, and decedent Ari Yoel Fuld, who was murdered in the September 16, 2018 terrorist attack.

6.      Plaintiff NAOMI FULD was severely harmed by the September 16, 2018 terrorist attack, and is, and at all times relevant hereto was, an American citizen and the daughter of plaintiff MIRIAM FULD and decedent Ari Yoel Fuld, who was murdered in the September 16, 2018 terrorist attack.

7.      Plaintiff TAMAR GILA FULD was severely harmed by the September 16, 2018 terrorist attack, and is, and at all times relevant hereto was, an American citizen and the daughter of plaintiff MIRIAM FULD and decedent Ari Yoel Fuld, who was murdered in the September 16, 2018 terrorist attack.

8.      Plaintiff ELIEZER YAKIR FULD was severely harmed by the September 16, 2018 terrorist attack, and is, and at all times relevant hereto was, an American citizen and the son of plaintiff MIRIAM FULD and decedent Ari Yoel Fuld, who was murdered in the September 16, 2018 terrorist attack.

9.      Defendant THE PALESTINE LIBERATION ORGANIZATION, (hereinafter "PLO"), is, and at all times relevant hereto was, a legal person as defined by 18 U.S.C. §2331(3).

10.     Defendant THE PALESTINIAN AUTHORITY, also known as The Palestinian Interim Self-Government Authority, and/or The Palestinian National Authority, and/or The Palestinian Council, (hereinafter "PA"), is, and at all times relevant hereto was, a legal person as defined by 18 U.S.C. §2331(3).

## STATEMENT OF FACTS

11.     Since its establishment in the 1960s and through the present day, defendant PLO has funded, planned, and carried out thousands of terrorist bombings, shootings, and other attacks, resulting in the deaths of hundreds of innocent civilians and the wounding of thousands more.  Dozens of United States citizens have been murdered, and scores more wounded, by terrorist attacks carried out and encouraged by defendant PLO.  Congress has explicitly found that "the PLO and its constituent groups have taken credit for, and been implicated in, the murders of dozens of American citizens abroad . . . [and] the PLO covenant specifically states that armed struggle is the only way to liberate Palestine, thus it is an overall strategy, not merely a tactical phase . . . .  Congress determines that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States . . . ."  22 U.S.C. §5201.  At all times relevant hereto, the PLO has funded, encouraged, carried out, and utilized terrorist attacks as an established and systematic policy and practice to advance and achieve its political goals.

12.     Since its establishment in 1994, and through the present day, defendant PA, as the governing body of the PLO, has funded, encouraged, planned, and carried out hundreds of terrorist bombings, shootings, and other terrorist attacks, resulting in the deaths of hundreds of civilians and the wounding of thousands more.  Dozens of United States citizens have been murdered, and many more wounded, by terrorist attacks carried out and encouraged by defendant PA.  Congress has explicitly found, "Textbooks used by the Palestinian Authority . . . in the West Bank and Gaza demonize Israel, encourage war, and teach children that Palestinian statehood can be achieved through violence. . . .  It is the sense of Congress that the Palestinian Authority and UNRWA have not sufficiently worked to eliminate all content and passages encouraging violence or intolerance toward other nations or ethnic groups from the curriculum used in their respective schools."  Peace and Tolerance in Palestinian Education Act.  At all times relevant

hereto, the PA has funded, encouraged, carried out, and utilized terrorist attacks as an established and systematic policy and practice to advance and achieve its political goals.

13.     At all times relevant hereto, defendants PLO and PA have encouraged and incentivized terrorism with the egregious practice of providing generous financial payments to families of Palestinians who engage in acts of terrorism and to individuals incarcerated in Israeli prisons.  Wall Street Journal, *Ending Aid to Terrorists, Palestinian Law Rewards Those Who Kill Jews, Including Americans*, November 13, 2016; Bloomberg Opinion, *The Palestinian Incentive Program for Killing Jews*, July 1, 2016; Wall Street Journal, *Pay for Slay in Palestine, U.S. Aid Becomes a Transfer Payment for Terrorists*, March 27, 2017; Jerusalem Post, *How to End the Palestinian Authority's 'pay-for-slay' laws*, March 6, 2017; The Tower Magazine, *Abbas Defends Payments to Terrorists After Meeting With U.S. Envoys*, June 22, 2017.  Moreover, defendants PA and PLO refer to Palestinians who commit terror attacks in Israel and otherwise as "heroes" and to those Palestinians who are killed while carrying out terror attacks as "martyrs," which serves to not only legitimize, but extol all acts against Israel, including violent acts such as murder.  The Washington Post, *If Palestinians Are Serious About Peace, 'Martyr' Violence Should Not Pay*, April 6, 2017.  In 2009, PA President Mahmoud Abbas stated that payments would continue to be made for prisoners belonging to the PLO.  Palestine News Network, *Stipends for PLO-member political prisoners*, March 4, 2009.

14.     The PA spends approximately $300 million per year, which is roughly 7 percent of its total budget, supporting two foundations: one established for the purpose of assisting families of "martyrs," The Foundation for the Care of the Families of Martyrs, and the second for Palestinians who are incarcerated in Israeli prisons, a program codified in 2004 Palestinian Law No. 14, the Aid for Prisoners in Israeli Prisons.  *Id*.  The law provides for monthly salaries  to

prisoners, along with an entire compensation package and reward upon the prisoner's release from prison, including various economic preferential treatments. *Id*. In 2014, in the face of international pressure on PA to cease payments, PA President Mahmoud Abbas transferred the Ministry of Prisoners' Affairs from PA to PLO, which Abbas also chairs. *Id*.; Forward, *Does Aid to Palestinians Subsidize the Families of Terrorists?*, August 23, 2016. In fact, defendants PA and PLO fund one another. *See id*. In June of 2016, PA's budget report listed a transfer of $137.45 million to PLO in support of PLO's program to protect its prisoners and their families. *Id*.

15.     On December 26, 2018, PA Prime Minister Rami Hamdallah informed Secretary of State Mike Pompeo that the PA would reject United States financial support as of January 31, 2019, because it did not want to be subject to personal jurisdiction in the United States pursuant to the proposed Anti-Terrorism Clarification Act of 2018, thus clearly indicating the PA's intention to continue to encourage and commit terrorist attacks in Israel without having to subject itself to trial in the United States for committing such acts against United States citizens in Israel. *See* Letter from PA Prime Minister Rami Hamdallah to Secretary of State Mike Pompeo (December 26, 2018). "The Government of Palestine respectfully informs the United States Government that, as of January 31st, 2019, it fully disclaims and no longer wishes to accept any form of assistance referenced in ATCA. . . . The Government of Palestine unambiguously makes the choice not to accept such assistance." *Id*. Implicit in Hamdallah's statement is the fact that the PA was willing to choose terrorism over foreign aid.

16.     Furthermore, after Congress passed the Taylor Force Act in March 2018, proposing a freeze on a American aid to the PA until the PA would agree to stop sending money to terrorists and their families via the PA's Martyr's Fund, PA President Mahmoud Abbas

responded, "We will not accept a cut or cancellation of salaries to the families of martyrs and prisoners . . . .  Even if we have only a penny left, we will give it to the martyrs, the prisoners and their families. . . .  We view the prisoners and the martyrs as planets and stars in the skies of the Palestinian struggle, and they have priority in everything."  *See*, *e.g.*, The Times of Israel*, Abbas Vows to Continue Stipends to Terrorists, even with PA's 'last penny,'"* July 24, 2018; The Jerusalem Post, *Abbas: We Won't Stop Payments to Martyrs and Prisoners*, July 24, 2018.  PA President Abbas added that the PA "will not allow anyone to interfere with the money that Israel is against us paying to the families of martyrs and prisoners."  *Id*.  The stipends amount to approximately $300 million, which was roughly 7 percent of the PA's $5 billion budget for 2018.  *Id*; The Washington Post, *If Palestinians Are Serious About Peace, 'Martyr' Violence Should Not Pay*, April 6, 2017.

17.     The aforementioned statements by both the prime minister and president of defendant PA, reiterating defendant PA's firm position that it will continue to fund and reward terrorism, as well as news of monthly stipends provided to various families under the Martyr's Fund, were incentives and catalysts that caused Khalil Yousef Ali Jabarin, ("Jabarin"), to commit his terrorist attack on September 16, 2018 and murder Ari Yoel Fuld.

18.     Upon information and belief, Jabarin decided to become a "Shahid," a "Martyr," and kill Jews by carrying out a stabbing attack with a knife that was twenty-one centimeters long, a knife that his family used to slaughter animals.

19.     Upon information and belief, on Sunday, September 16, 2018, in the early hours of the morning, Jabarin, intent on becoming a Shahid and murdering Jews, left his house in Yatta, near the city of Hebron, with a bag that held the twenty-one centimeter knife that was used to slaughter animals.

20.     Upon information and belief, Jabarin went to the Zif Junction, with the intent to carry out a stabbing attack against Israeli Defense Force soldiers, but proceeded to his next destination when he was unable to locate and target soldiers in the Zif Junction.

21.     Upon information and belief, Jabarin then hailed a taxi from the Zif Junction and traveled to the Cave of the Patriarchs in Hebron to commit a stabbing attack at that site. However, when he arrived at the Cave of the Patriarchs, Jabarin was informed that the entrance was closed, so he decided to travel in a taxi to a different destination to carry out the stabbing attack.

22.     Upon information and belief, upon arriving at a security crossing near Bethlehem with the intent to commit a stabbing attack on Jews, Jabarin noticed that there were Palestinian residents who were being checked by Israeli Defense Force soldiers, and because he didn't want to harm Palestinian residents in the crossing, Jabarin decided not to carry out his stabbing attack there.

23.     Subsequently, Jabarin went to the commercial compound mall near the Gush Etzion Junction, and planned to carry out his stabbing attack outside the Rami Levi supermarket. Jabarin spoke to a street cleaner, then entered the mall, went into the bathroom area, took the knife out of his bag, and hid it inside the coat he was wearing.  Jabarin went out of the mall into the parking lot, leaving his bag behind, and bought a sandwich at the falafel stand outside the mall. Upon information and belief, Jabarin asked the person who sold the falafel whether she was an American. Jabarin then sat outside the Rami Levi supermarket, and began eating his sandwich while observing the passersby.

24.     Ari Yoel Fuld, ("Ari"), a 45 year old New York native and father of four, then drove into the parking lot, waited for a parking spot for approximately seven minutes, and then

parked in a spot and stayed in his car for another three minutes.  Ari then got out of his car, walked past Jabarin, and went into the mall to a cell phone store.  Jabarin noticed that Ari had been wearing a skullcap with bold English lettering on it, and deduced that Ari was a Jew and an American.  Upon information and belief, Ari was targeted because he was a Jewish American.

25.     Jabarin continued to sit outside the supermarket as numerous other people passed by, apparently waiting for Ari to reappear.  Approximately fifteen minutes later, when Ari came out of the mall, Ari passed Jabarin again.  Ari walked toward Rami Levi supermarket, and Jabarin stood up and started to follow Ari, pausing and hiding amongst the cars so as not to be noticed when Ari stopped to look at his phone.  An older man then walked between Jabarin and Ari.  Jabarin decided to carry out the planned attack, and as soon as the older man passed by, at approximately 11:05 a.m., Jabarin approached Ari from behind while holding the handle of the knife in his pocket.  When he was about one- and one-half feet away from Ari, Jabarin pulled his knife out from his pocket, aimed it at the back of Ari's neck, and stabbed Ari on the upper part of his back near his neck, inserting the blade in full, while saying in Arabic, "Basem Allah," ("In the name of the lord"), and, "Allah Akhbar."

26.     Ari turned toward Jabarin and tried to push him away.  Jabarin pulled the knife out of Ari's body and started running with the knife in his hand away from Ari and toward the falafel stand.  Ari yelled, "Terrorist!" Then, Ari and a bystander pursued Jabarin and shot him causing Jabarin to fall.  The knife fell out of Jabarin's hand while he fell to the ground.  After his fall, Jabarin reached out to grab the knife again, but it was removed by another bystander.

27.     Ari then collapsed to the ground, saying, "I've been hurt."  Shortly thereafter, Ari was transferred to Shaarei Zedek Hospital.  His condition was unstable.  Motivated to become a

"Martyr," Jabarin's act of stabbing with the intent to kill Ari using his twenty-one centimeter knife caused a stab wound in Ari's back, and caused wounds to Ari's main artery and right lung, which resulted in the Ari's death.  After numerous attempts to resuscitate him failed, Ari Yoel Fuld was pronounced dead.

28.     The September 16, 2018 terrorist attack was incentivized and encouraged by defendants PA and PLO, and was a natural by-product of their egregious practice of providing generous financial payments to families of Palestinians who engage in acts of terrorism and to individuals incarcerated in Israeli prisons.

29.     Following the September 16, 2018 terrorist attack, Jabarin was taken into Israeli police custody, and the Palestinian Prisoner Affairs Commission spokesman, Hassan Abd Rabbo, stated, "We are not bashful or secretive about our support for our prisoners.  The [Jabarin] family would be eligible to receive a monthly salary of NIS 1,400, ($390), if their son is not freed by Israel and it completes all the necessary documents."  Times of Israel, *U.S. Envoy: Abbas Pay to Family of Terrorist Who Killed Ari Fuld is Unconscionable*, September 20, 2018.  Abd Rabbo added that the sum would increase if Jabarin would remain in prison for several years.  *Id*. Former PA Prisoners' Affairs Minister Ashraf al-Ajrami confirmed Abd Rabbo's statements, as well.  *Id*.

## FIRST COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, INTERNATIONAL TERRORISM PURSUANT TO 18 U.S.C. §2333

30.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

31.     Defendants' acts constitute a violation of the criminal laws of the United States and of the several States, or would constitute criminal violations if committed within the jurisdiction of the United States and of the several States.  The actions of defendants violate, or if committed within U.S. jurisdiction would violate literally scores of federal and state criminal statutes prohibiting, inter alia and without limitation: homicide, battery, assault, as well as the criminal prohibitions against aiding and abetting, attempting, serving as an accessory to, solicitation of and conspiracy to commit these and other such felonies.

32.     The acts of defendants described herein were performed pursuant to and as implementation of an established policy of utilizing terrorist attacks in order to achieve their goals.  Specifically, the acts of defendants described herein were intended to terrorize, intimidate, and coerce the civilian population in Israel into acquiescing to defendants' political goals and demands, and to influence the policy of the United States and Israeli governments in favor of accepting defendants' political goals and demands.  Moreover, defendants, themselves and through their respective officials, representatives, spokesmen, communications media and other agents; (a) repeatedly admitted to committing acts of terrorism and violence against the civilian population in Israel and the West Bank and expressly stated that these acts were intended both to intimidate and coerce that civilian population into acquiescing to defendants' political goals and demands and to influence the policy of the United States and Israeli governments in favor of defendants' political goals and demands, and (b) expressly threatened the further occurrence of such terrorist acts if their political goals and demands were not achieved.  The acts of defendants described herein therefore appear to be and were in fact intended to intimidate and coerce a civilian population, and to influence the policy of a government by intimidation or coercion, within the meaning of 18 U.S.C. §2331.

33.     Defendants' acts were dangerous to human life, by their nature and as evidenced by their consequences.

34.     Defendants' acts occurred outside the territorial jurisdiction of the United States.

35.     The acts of defendants are therefore, "acts of international terrorism," as defined under 18 U.S.C. §§2331 and 2333.  The behavior of defendants also constitutes aiding and abetting acts of international terrorism, and conspiracy to commit acts of international terrorism.

36.     As a direct and proximate result of the acts of international terrorism committed by defendants, and which defendants aided and abetted and/or conspired to commit, plaintiffs were caused severe injury, including: death, pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

37.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

38.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

**<u>SECOND COUNT</u>**

**AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS,
<u>WRONGFUL DEATH</u>**

39.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

40.     Defendants, personally and/or through their agents and/or employees and/or co-conspirators, willfully and deliberately encouraged, authorized, aided, abetted, induced, and conspired to commit the September 16, 2018 terrorist attack described above.

41.     Defendants' behavior constituted a breach of legal duties to desist from committing, or aiding, abetting, authorizing, encouraging or conspiring to commit acts of international terrorism and extrajudicial killing, and to refrain from intentionally, wantonly, and/or negligently authorizing or causing the infliction of death, physical injuries, harm to persons such as the plaintiffs herein.

42.     Defendants' actions were willful, malicious, intentional, wrongful, unlawful, negligent, and/or reckless, and were the proximate cause of the September 16, 2018 terrorist attack and the death of Ari Yoel Fuld.

43.     At the time of his death, decedent Ari Yoel Fuld enjoyed good health, was industrious, and in possession of all of his faculties.

44.     The murder of Ari Yoel Fuld caused decedent, his estate, and plaintiffs MIRIAM FULD, NATAN SHAI FULD, NAOMI FULD, TAMAR GILA FULD, and ELIEZER YAKIR FULD severe injury, including: pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship, and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

45.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

46.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public, warranting an award of punitive damages.

**THIRD COUNT**

**AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF**
**THE ESTATE OF ARI YOEL FULD,**
**PAIN AND SUFFERING**

47.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

48.     As a result of the September 16, 2018 terrorist attack caused by defendants' actions described herein, decedent Ari Yoel Fuld, prior to his death, sustained great, severe, and permanent injuries to his body, head, and limbs, became sick, sore, lame and disabled.  From the time of the stabbing until his death, decedent Ari Yoel Fuld suffered great conscious pain, shock, and physical and mental anguish.

49.     Defendants are therefore jointly and severally liable to the estates of decedent Ari Yoel Fuld for the full amount of decedent's damages, in such sums as may hereinafter be determined.

50.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

**FOURTH COUNT**

**AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF**
**THE ESTATE OF ARI YOEL FULD,**
**BATTERY**

51.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

52.     The September 16, 2018 terrorist attack described herein caused decedent Ari Yoel Fuld severe physical and psychological injuries, extreme pain and suffering, and severe financial loss, including deprivation of present and future income.

53.     The September 16, 2018 terrorist attack described herein constituted a battery on the person of decedent Ari Yoel Fuld.

54.     As a result of the severe injuries inflicted on him by the September 16, 2018 terrorist attack described herein, decedent Ari Yoel Fuld required hospitalization and other medical treatment.

55.     Defendants' actions were willful, wanton, malicious, intentional, reckless, unlawful, and were the proximate cause of the September 16, 2018 terrorist attack described herein, and the battery on the persons of decedent, Ari Yoel Fuld, and the injuries decedent suffered thereby.

56.     Defendants are therefore jointly and severally liable for the full amount of plaintiff the estate of Ari Yoel Fuld's damages, in such sums as may hereinafter be determined.

57.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public, warranting an award of punitive damages.

## FIFTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF
### THE ESTATE OF ARI YOEL FULD,
### ASSAULT

58.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

59.     The September 16, 2018 terrorist attack described herein and the ensuing carnage caused decedent Ari Yoel Fuld fear and apprehension of harm and death and actual physical harm, and constituted assaults on the persons of Ari Yoel Fuld.

60.     The September 16, 2018 terrorist attack described herein and assault on his person, which was a direct and proximate result of defendants' actions, caused decedent Ari Yoel Fuld extreme mental anguish and/or actual physical injury and pain and suffering.

61.     Defendants are therefore jointly and severally liable for the full amount of plaintiff the estate of Ari Yoel Fuld's damages, in such sums as may hereinafter be determined.

62.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public, warranting an award of punitive damages.

**SIXTH COUNT**

**AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS,
LOSS OF CONSORTIUM AND SOLATIUM**

63.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

64.     As a result and by reason of the death of Ari Yoel Fuld, which was caused by the actions of defendants described herein, plaintiff MIRIAM FULD has been deprived of the services, society, consortium, and solatium of her deceased husband, and has suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to her feelings.

65.     As a result and by reason of the death of Ari Yoel Fuld, which was caused by the actions of defendants described herein, plaintiffs NATAN SHAI FULD, NAOMI FULD, TAMAR GILA FULD, and ELIEZER YAKIR FULD have been deprived of the services, society, consortium, and solatium of their deceased father, and have suffered and will continue to suffer severe mental anguish, bereavement and grief, and injury to their feelings.

66.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

67.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## SEVENTH COUNT

### AGAINST DEFENDANTS
### ON BEHALF OF ALL PLAINTIFFS,
### NEGLIGENCE

68.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

69.     Defendants, personally and/or through their agents and/or employees and /or co-conspirators, willfully and deliberately and/or wantonly and/or negligently authorized, encouraged, and assisted in the September 16, 2018 terrorist attack that harmed plaintiffs.

70.     Defendants had legal duties under local and other applicable law to desist from engaging in, or authorizing and encouraging, acts of violence, and to refrain from deliberately and/or wantonly, and/or negligently authorizing or causing the infliction of injuries to persons such as the plaintiffs herein.

71.     Defendants' behavior constituted a breach of these legal duties.

72.     Defendants foresaw, or should have reasonably foreseen, that their breach of these legal duties would create unreasonable risk of injuries such as those suffered by the plaintiffs to persons such as the plaintiffs.

73.     AS a result of defendants' wrongful and/or unlawful and/or negligent acts, plaintiffs were caused severe injury, including: death; pain and suffering; pecuniary loss and loss of income; loss of guidance, society and companionship; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

74.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

75.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## EIGHTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

77.     Defendants' conduct was willful, outrageous, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

78.     Defendants' conduct was intended to and did in fact terrorize the plaintiffs and cause them egregious emotional distress.

79.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

80.     Defendants' conduct was outrageous in the extreme, wanton, willful, andn malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## NINTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

81.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

82.     Defendants' conduct was willful, outrageous and/or grossly negligent, and was dangerous to human life, and constituted a violation of applicable criminal law and all international standards of civilized human conduct and common decency.

83.     Defendants' conduct caused the plaintiffs egregious emotional distress.

84.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

85.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

**TENTH COUNT**

**AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS,
CIVIL CONSPIRACY**

86.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

87.     Defendants knowingly and willingly conspired, agreed and acted in concert with each other, in a common plan and design to facilitate and cause acts of terrorism, such as the one in which plaintiffs were harmed.

88.     As a result of the September 16, 2018 terrorist attack caused, resulting from, and facilitated by defendants' conspiracy, plaintiffs suffered the damages enumerated herein.

89.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

90.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## ELEVENTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, AIDING AND ABETTING

91.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

92.     Defendants provided one another, and their organs, agencies, instrumentalities, officials, agents and employees, and their other co-conspirators with material support and resources and other substantial aid and assistance, in order to aid, abet, facilitate, and cause the commission of acts of terrorism, including the September 16, 2018 terrorist attack in which plaintiffs were harmed.

93.     As a result of the September 16, 2018 terrorist attack caused, resulting from, and facilitated by defendants' provision of material support and resources and other acts of aiding and abetting, plaintiffs suffered the damages enumerated herein.

94.     Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

95.     Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## TWELFTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

96.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

97.     At all relevant times, defendants PLO and PA engaged in the actions described herein within the scope of their agency, office, and employment, and in furtherance of the interests of defendants PLO and PA.

98.     Defendants PLO and PA authorized, ratified, and/or condoned the actions described herein of Khalil Yousef Ali Jabarin.

99.     Therefore, defendants PLO and PA are vicariously liable for the acts of Khalil Yousef Ali Jabarin.

100.    Defendants are therefore jointly and severally liable for the full amount of plaintiffs' damages, in such sums as may hereinafter be determined.

101.    Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

## THIRTEENTH COUNT

### AGAINST DEFENDANTS ON BEHALF OF ALL PLAINTIFFS, INDUCEMENT

102.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

103.    Defendants PLO and PA offered and provided their own and each other's officials, agents, and employees with substantial material and pecuniary inducements and incentives to plan, organize, and execute acts on international terrorism, including the September 16, 2018 terrorist attack in which plaintiffs were harmed.  Defendants PLO and PA did so,

knowing that the acts for which they provided inducements and incentives were illegal and/or tortious, and that they would had been directly liable had they performed those acts themselves.

104.    As a result of the September 16, 2018 terrorist attack caused, resulting from, and facilitated by the substantial material and pecuniary inducements and incentives offered and provided by defendants PLO and PA, plaintiffs suffered the damages enumerated herein.

105.    Defendants' conduct was outrageous in the extreme, wanton, willful, and malicious, and constitutes a threat to the public at large, warranting an award of punitive damages.

WHEREFORE, plaintiffs demand judgment against the defendants jointly and severally, as to each of the above counts and causes of action, as follows:

A.    Compensatory damages against all defendants, jointly and severally, in the amount of $200,000,000.00 (TWO HUNDRED MILLION DOLLARS);

B.    Treble damages, costs and attorney's fees as provided in 18 U.S.C. §2333;

C.    Punitive Damages;

D.    Reasonable costs and expenses;

E.    Reasonable attorney's fees; and

F.    Such further relief as the Court finds just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: April 30, 2020
         New York, New York

LAW OFFICE OF JEFFREY FLEISCHMANN PC
By: /s/ Jeffrey Fleischmann
         Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiffs*

150 Broadway, Suite 900
New York, N.Y. 10038
Tel.: (646) 657-9623
Fax: (646) 351-0694
Email: jf@lawjf.com

And

Samuel Silverman, Esq.
The Silverman Law Firm
16 Squadron Blvd.
New City, NY  10956
(845) 517-0351
silvermans@silvermanlaw.net