UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MIRIAM FULD, et al.,

                              Plaintiffs,

-against-

THE PALESTINE LIBERATION
ORGANIZATION and THE PALESTINIAN
AUTHORITY,

                              Defendants.

Case No.: 20-cv-3374

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS THE PALESTINE LIBERATION ORGANIZATION AND THE
PALESTINIAN AUTHORITY**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Attorneys   for   Defendants   Palestine
Liberation   Organization   and   Palestinian
Authority*

August 10, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 4

I.   PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION OVER THE DEFENDANTS. ............................ 4

    A.   Defendants Are Not Subject to General or Specific Jurisdiction. ......... 5

    B.   Defendants Did Not Make Payments to Jabarin's Family that Trigger the PSJVTA. ........................................................................................... 8

II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMARY OR SECONDARY ATA LIABILITY, REQUIRING DISMISSAL OF THE "INTERNATIONAL TERRORISM" CLAIM. ....................................................... 8

    A.   Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism." ........................................................................ 9

        1.   Plaintiffs Do Not Plausibly Allege that Defendants Acted with the Required Terroristic Intent.................................................... 10

        2.   Plaintiffs Fail to Plausibly Allege that Defendants Engaged in "Violent Acts or Acts Dangerous to Human Life." ................................. 11

    B.   Plaintiffs Do Not Plausibly Allege Defendants Provided Material Support to an FTO, As Required Under 18 U.S.C. 2339B, or Provided Funds Knowing or Intending that Such Funds Would be Used to Prepare for or Carry Out a Terrorist Act, as Required Under 2339A or 2339C. ........................ 12

    C.   The Complaint Fails to Plausibly Allege Proximate Cause................................ 13

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. § 2333(D)...................................................... 16

    A.   Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted an FTO................................ 16

    B.   Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack............................ 17

    C.   Plaintiffs Have Not Plausibly Alleged, and Could Not Plausibly Allege, that Defendants were "Aware" they were "Assuming a Role" in Violent Terrorist Activity. ............................................................................... 19

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY OR FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333(D). ......................... 19

V.   PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS LACK CAPACITY TO BE SUED..................................... 21

# TABLE OF CONTENTS
(continued)

**Page**

VI.   PLAINTIFFS' CLAIMS FOR BATTERY, ASSAULT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE TIME-BARRED. ......................... 22

VII.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION, AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW. ............... 23

VIII.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR VICARIOUS LIABILITY/RESPONDEAT SUPERIOR. .................................................................... 24

IX.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR INDUCEMENT....................... 25

CONCLUSION.................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahmad v. Christian Friends of Israeli Cmtys.*,
  Case No. 13 Civ. 3376 (JMF), 2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May
  5, 2014), *aff'd*, 600 F. App'x 800 (2d Cir. 2015) ......................................................8, 12, 13, 14

*Amidax Trading Group v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)........................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................................8

*Atchley v. AstraZeneca UK Ltd.*,
  Case No. 17-2136, 2020 U.S. Dist. LEXIS 126469 (D.D.C. July 17, 2020)....................14, 17

*Boim v. Holy Land Foundation for Relief and Development*,
  549 F.3d 685 (7th Cir. 2008) ..............................................................................................10, 11

*Brill v. Chevron Corp.*,
  Case No. 15-cv-04916, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017) .....................10

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*,
  349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................................................................................23

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) ...................................................................................................4

*De Sole v. Knoedler Gallery, LLC*,
  137 F. Supp. 3d 387 (S.D.N.Y. 2015).......................................................................................24

*Engelman v. Rofe*,
  Case No. 152072/2018, 2019 N.Y. Misc. LEXIS 3160 (Sup. Ct. N.Y. County
  June 5, 2019)..............................................................................................................................23

*Fields v. Twitter*,
  200 F. Supp. 3d 964 (N.D. Cal. 2016), *aff'd* 881 F.3d 739 (9th Cir. 2018) ...........................16

*Freeman v. HSBC Holdings PLC*,
  413 F. Supp. 3d 67 (E.D.N.Y. 2019) ........................................................................................20

*Gill v. Arab Bank, PLC*,
  893 F. Supp. 2d 474 (E.D.N.Y. 2012) .................................................................................12, 13

*Gill v. Arab Bank, PLC*,
  893 F. Supp. 2d 542 (E.D.N.Y. 2012) .........................................................................................9

*Goldberg v. UBS AG*,
    660 F. Supp. 2d 410 (E.D.N.Y. 2009) ...................................................................18

*Gomez v. City of N.Y.*, No. 14 Civ. 05932 (CM),
    2016 U.S. Dist. LEXIS 128338 (S.D.N.Y. Sept. 14, 2016).....................................23

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .............................................................17, 18, 19, 20

*ICO Servs., Ltd. v. Coinme, Inc.*,
    Case No. 18 Civ. 4276, 2018 U.S. Dist. LEXIS 212081 (S.D.N.Y. Dec. 17,
    2018) ........................................................................................................................5

*Kaplan v. Lebanese Canadian Bank*,
    405 F. Supp. 3d 525 (S.D.N.Y. 2019)...............................................................15, 20

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) ...........................................................................18, 19, 20

*Estate of Klieman v. Palestinian Auth.*,
    923 F.3d 1115 (D.C. Cir. 2019).........................................................................6, 7

*Estate of Klieman v. Palestinian Auth.*,
    206 L. Ed. 2d 851 (U.S., Apr. 27, 2020)....................................................................6

*Knox v. PLO*,
    306 F. Supp. 2d 424 (S.D.N.Y. 2004).....................................................................23

*Linde v. Arab Bank PLC*,
    882 F.3d 314 (2d Cir. 2018)........................................................................... *passim*

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ................................................................................6, 7

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014).......................................................................................8

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*,
    714 F.3d 659 (2d Cir. 2013)........................................................................................4

*O'Sullivan v. Deutsche Bank AG*,
    Case. No. 17 CV 8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y.
    Mar. 28, 2019)...................................................................................................19, 20

*Estate of Parsons v. Palestinian Auth.*,
    Case No. 07-cv-1847, 2008 U.S. Dist. LEXIS 124833 (D.D.C. Sept. 30, 2008) ...................22

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)............................................................................4

*Peschmann v. BlogTalkRadio, Inc.*,
    15 Civ. 9504, 2017 U.S. Dist. LEXIS 156694 (S.D.N.Y. Sep. 22, 2017) ...............................5

*Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*,
    Case No. 18-cv-3528 (SFJ) (ARL), 2019 U.S. Dist. LEXIS 100901 (E.D.N.Y.
    June 17, 2019)....................................................................................................4, 5

*Rothbein v. City of New York*,
    Case No. 18-CV-5106 (VEC), 2019 U.S. Dist. LEXIS 32358 (S.D.N.Y.
    Feb. 28, 2019) ..................................................................................................7

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)............................................................9, 13, 14, 16

*Safra v. Palestinian Auth.*,
    82 F. Supp. 3d 37 (D.D.C. 2015) ............................................................21

*Shatsky v. PLO*,
    955 F.3d 1016 (D.C. Cir. 2020) .....................................................6, 7, 15, 22

*Shatsky v. PLO*,
    Case No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20,
    2017), *vacated and remanded on other grounds*, 955 F.3d 1016 (D.C. Cir.
    2020) ................................................................................................15, 18, 22

*Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019) ..........................................16

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014)..................................................... *passim*

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)......................................................................4

*Stansell v. BGP, Inc.*,
    Case No. 8:09-cv-2501-T-30AEP, 2011 U.S. Dist. LEXIS 39808 (M.D. Fla.
    Mar. 31, 2011)................................................................................................10

*Taamneh v. Twitter, Inc.*,
    343 F. Supp. 3d 904 (N.D. Cal. 2018) ............................................................17, 20

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
    135 F. Supp. 3d 219 (S.D.N.Y. 2015)......................................................................5

*In re Terrorist Attacks*,
    714 F.3d 118 (2d Cir. 2013)......................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018) ........................................................................4

*Trisvan v. Heyman*,
   305 F. Supp. 3d 381 (E.D.N.Y. 2018) .......................................................................4

*Truman v. Brown*,
   434 F. Supp. 3d 100 (S.D.N.Y. 2020) ......................................................................23

*United States v. Ghayth*,
   709 F. App'x 718 (2d Cir. 2017) ..............................................................................12

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016), *cert. denied sub nom*, *Sokolow v. PLO*, 137 S.
   Ct. 2319 (2017) ............................................................................................... *passim*

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014) ................................................................................10, 12

*Wultz v. Bank of China*,
   306 F.R.D. 112 (S.D.N.Y. 2013) .........................................................................22, 23

*Wultz v. Bank of China Ltd.*,
   865 F. Supp. 2d 425 (S.D.N.Y. 2012) ......................................................................23

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) .............................................................................24

*Zapata v. HSBC Holdings PLC*,
   414 F. Supp. 3d 342 (E.D.N.Y. 2019) .....................................................................17

**Statutes**

18 U.S.C. § 2331 .........................................................................................................11, 12

18 U.S.C. § 2333 ..................................................................................................... *passim*

18 U.S.C. § 2334 ..............................................................................................................2

18 U.S.C. § 2339A .......................................................................................................2, 12

18 U.S.C. § 2339B .......................................................................................................3, 13

18 U.S.C. § 2339C .....................................................................................................12, 13

Promoting Security and Justice for Victims of Terrorism Act of 2019
   ("PSJVTA") ............................................................................................................2, 6, 8

**Other Authorities**

CPLR § 202.............................................................................................................22

CPLR. § 1025..........................................................................................................22

Fed. R. Civ. P. 12................................................................................... *passim*

Fed. R. Civ. P. 17............................................................................................21, 22

## PRELIMINARY STATEMENT

Plaintiffs do not plausibly attribute responsibility to the Palestinian government (Defendants in this action) for a terrorist attack (the "Attack") committed by a third-party, who by Plaintiffs' own allegations pursued a random act of revenge against Israeli soldiers or civilians. Complaint (Dkt. #1) ("Compl.") ¶¶ 19-26.  The Complaint instead makes clear that the Palestinian government did not employ, control, direct, or indeed have any contact whatsoever with the attacker, and did not have advance knowledge of the Attack or facilitate it in any way.

Plaintiffs are the relatives, survivors, heirs, and the personal representative of the estate of Ari Yoel Fuld, whom Plaintiffs allege was killed in a terrorist attack carried out by Khalil Yusef Ali Jabarin ("Jabarin") on September 16, 2018, in Gush Etzion, a cluster of Israeli settlements in the occupied West Bank, Palestine, that the international community views as illegal.  *See* Complaint (Dkt. #1) ("Compl.") ¶¶ 1, 3, 17-27, 29.  Plaintiffs have brought Anti-Terrorism Act ("ATA")[1] and common-law claims against the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO"), which are the domestic government of Palestine and the overseas diplomatic representative of the Palestinian people, respectively.  *See Waldman v. PLO*, 835 F.3d 317, 322-23 (2d Cir. 2016), *cert. denied sub nom*, *Sokolow v. PLO*, 137 S. Ct. 2319 (2017).

Without reaching the legal sufficiency of Plaintiffs' claims, the Complaint should be dismissed for lack of jurisdiction over Defendants, who under recent Circuit precedent are not subject to the general jurisdiction of U.S. courts, and over whom specific jurisdiction cannot be exercised because the United States was not the "focal point" of the Attack.  *Waldman*, 835 F.3d at 332-35 (general jurisdiction), 335-44 (specific jurisdiction).  Further, Defendants cannot be

---

[1] The ATA was amended by the Justice Against Sponsors of Terrorism Act ("JASTA").  18 U.S.C. §2333.

"deemed to have consented to personal jurisdiction" pursuant to the post-*Waldman* Promoting Security and Justice for Victims of Terrorism Act of 2019 (the "PSJVTA")[2] because, contrary to Plaintiffs' allegations, they have not made post-PSJVTA payments "to the family of" Jabarin.[3] *Compare* Compl. ¶ 3 *with* the Declaration of Tareq Mustafa filed herewith ("Declaration" or "Decl."), ¶¶ 5-9.

Even if Plaintiffs could make a *prima facie* case of jurisdiction over Defendants (which they cannot), the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

Plaintiffs' first cause of action under the ATA (for "International Terrorism Pursuant to 18 U.S.C. § 2333") is legally deficient for a host of reasons. Notably, Plaintiffs do not identify which provision(s) of § 2333, or which predicate criminal statute(s), they allege Defendants have violated. But whatever ATA provisions Plaintiffs intended to invoke, they have not plausibly alleged the required elements.

Plaintiffs fail to state a <u>primary-liability</u>, or "material support," claim under the ATA because they do not plausibly allege:

- That Defendants <u>themselves</u> committed an "act of international terrorism," as required to state an ATA primary-liability claim;

- That Defendants provided material support with knowledge or intent that their support would be used to prepare for, or to carry out, a criminal act of terrorism, as required for liability under 18 U.S.C. §§ 2339A or 2339C;

---

[2] The PSJVTA purports to "deem[]" Defendants to have consented to personal jurisdiction for claims brought under the ATA should Defendants make any payments to "any payee designated by an individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment." 18 U.S.C. § 2334(e)(1)(A)(i).

[3] Issues concerning the application of the PSJVTA in *Waldman* currently are pending before the Second Circuit following remand by the Supreme Court. *See generally* Defendant's letter brief in *Sokolow v. Palestinian Authority*, Case No. 15-3135, ECF No. 354 (filed July 17, 2020). As explained therein, there are multiple statutory-construction and constitutional issues concerning "deemed consent" jurisdiction under the PSJVTA. This Court need not reach those issues, however, because Plaintiffs rely on the payment provision of the PSJVTA, which does not apply as a factual matter because Defendants have made no post-PSJVTA payment in respect of Jabarin or the Attack.

- That Defendants provided material support to a U.S.-designated Foreign Terrorist Organization ("FTO"), as required for liability under 18 U.S.C. § 2339B;

- That Defendants' acts were the proximate cause of Plaintiffs' injuries.

To the extent Plaintiffs' "International Terrorism" count can be charitably interpreted as asserting a claim for <u>secondary</u> liability under JASTA, 18 U.S.C. § 2333(d), it is legally insufficient to state such a claim, because Plaintiffs do not plausibly allege:

- That the attack was committed by an FTO, as required by § 2333(d);

- That Defendants "knowingly and substantially assisted" in the Attack;

- That Defendants were "generally aware" that they were playing a "role" in violent or life-threatening acts;

- Any "agreement" between Defendants and Jabarin to commit a terror attack, as required for a JASTA conspiracy claim;

- A connection between any purported conspiracy and the Attack.

Plaintiffs' twelve non-ATA claims also all fail to state a claim, and must be dismissed, for the following reasons:

- All of Plaintiffs' non-federal claims fail because the Defendants are "unincorporated associations that lack the capacity to be sued under New York law as to Plaintiffs' non-federal claims." *See Sokolow v. PLO*, 60 F. Supp. 3d 509, 523-24 (S.D.N.Y. 2014) (collecting cases); *Waldman*, 835 F.3d at 332.

- Plaintiffs' battery, assault, and intentional infliction of emotional distress claims are time-barred under New York's one-year statute of limitations.

- Plaintiffs' claim for civil conspiracy fails because Plaintiffs do not plausibly allege an "agreement" between Jabarin and Defendants.

- Plaintiffs' claim for vicarious liability/respondeat superior fails because there is no plausible allegation, or plausible basis to allege, that Jabarin was an employee or agent of either Defendant, or that Jabarin should be treated as such because of alleged government-support payments to his family.

- There is no separate cause of action for "inducement," and Plaintiffs have failed to assert facts that would permit a jury to find that Defendants "induced" Jabarin.

<u>**ARGUMENT**</u>

I.     <u>**PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION OVER THE DEFENDANTS.**</u>

On a Rule 12(b)(2) motion to dismiss, the "plaintiff has the burden of making a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (citation omitted); *see Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). The Complaint "'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013) (same). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (rejecting jurisdictional allegations lacking "supporting facts" and "factual specificity")). On a Rule 12(b)(2) motion, "the court is neither required to draw argumentative inferences in the plaintiff's favor, nor must it accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d at 424 (citations and quotations omitted).

In addition, when resolving a Rule 12(b)(2) motion, the Court "may consider materials outside the pleadings," including affidavits submitted by a defendant. *See Trisvan v. Heyman*, 305 F. Supp. 3d 381, 391 (E.D.N.Y. 2018). "A motion to dismiss pursuant to Rule 12(b)(2) . . . is inherently a matter requiring the resolution of factual issues outside of the pleadings. Therefore all pertinent documentation submitted by the parties may be considered in deciding the motion." *Reliance First Capital, LLC v. Mid Am. Mortg., Inc.*, No. 18-cv-3528 (SFJ) (ARL), 2019 U.S. Dist.

LEXIS 100901, at *2, 17 (E.D.N.Y. June 17, 2019) (internal quotations and citations omitted) (granting motion to dismiss for lack of jurisdiction after considering "the affidavits and documentary exhibits submitted by Plaintiff and Defendant."); *Peschmann v. BlogTalkRadio, Inc.*, 15 Civ. 9504, 2017 U.S. Dist. LEXIS 156694, at *15 (S.D.N.Y. Sept. 22, 2017) ("[C]ourts are authorized to rely on affidavits [and declarations] submitted by the parties in deciding a Rule 12(b)(2) motion to dismiss.") (internal quotations and citation omitted, alterations in original).

A court need not accept as true jurisdictional allegations that are contradicted by affidavit evidence. *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true <u>unless contradicted by more specific allegations or documentary evidence</u>—from the complaint and from the exhibits attached thereto.") (emphasis added). "The allegations in the complaint must be taken as true <u>to the extent they are uncontroverted by the defendant's affidavits</u>." *Reliance First Capital*, 2019 U.S. Dist. LEXIS 100901, at *17 (quoting *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (emphasis added)); *ICO Servs., Ltd. v. Coinme, Inc.*, No. 18 Civ. 4276, 2018 U.S. Dist. LEXIS 212081, at *4 (S.D.N.Y. Dec. 17, 2018) (same). "[W]hen a defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) (internal quotation and citation omitted).

### A.   <u>Defendants Are Not Subject to General or Specific Jurisdiction.</u>

The Second Circuit's *Waldman* decision forecloses this Court's exercise of general jurisdiction over the PA and PLO. *See Waldman*, 835 F.3d at 332-35 (the PA and PLO "are 'at home' in Palestine," and therefore "the district court could not properly exercise general personal jurisdiction over the defendants").

Similarly, *Waldman* (and the D.C. Circuit in three separate cases) has squarely rejected the exercise of specific jurisdiction over the PA and PLO where, as here, plaintiffs bring suit against the PA and PLO for indiscriminate overseas attacks committed by third parties, and Defendants' alleged suit-related overseas conduct was not directed at the United States.[4]  *Id.* at 335-44 (rejecting specific jurisdiction over the PA and PLO for indiscriminate overseas third-party attacks because "mere knowledge that United States citizens might be wronged in a foreign country" is insufficient, and the "focal point of the torts alleged" was Israel, not the United States).  Instead, where, as here, a defendant is sued in the United States for its overseas conduct, specific jurisdiction requires that the "focal point" of the defendant's suit-related conduct (and the harm suffered) be the forum where the lawsuit is pursued (here, the United States).  *Id.* at 340.  *See also Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (rejecting specific jurisdiction over the PA for an indiscriminate overseas attack because there was no link between that attack and the PA's U.S. lobbying activities); *Est. of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1124-25 (D.C. Cir. 2019)[5] (rejecting specific jurisdiction over the PA and PLO for an indiscriminate overseas attack because all of the alleged suit-related conduct took place in the occupied West Bank); *Shatsky v. PLO*, 955 F.3d 1016, 1037 (D.C. Cir. 2020) (rejecting specific jurisdiction over the PA and PLO for an indiscriminate overseas attack because defendants' alleged suit-related overseas conduct was not directed at the United States).

Plaintiffs' non-conclusory allegations place this case precisely within this same fact pattern, and demonstrate that the United States was not the focal point of the Attack.  Plaintiffs allege that Jabarin traveled to several different locations seeking to carry out a stabbing attack against IDF

---

[4] There is no allegation, or plausible basis to allege, that Defendants engaged in any suit-related conduct in the United States.

[5] The Supreme Court vacated and remanded *Klieman* to the D.C. Circuit "for further consideration in light of the [PSJVTA]," where it remains pending.  *See Estate of Klieman v. Palestinian Auth.*, 206 L. Ed. 2d 851 (U.S., Apr. 27, 2020).

soldiers.  Compl. ¶¶ 20-22.  Unable to fulfill his initial plan, Jabarin allegedly diverted to a "commercial compound mall near the Gush Etzion Junction" where he "planned to carry out his stabbing attack outside the Rami Levi supermarket."  *Id.*, ¶ 23.  Ultimately, Jabarin attacked Mr. Ari Fuld in the mall parking lot after he exited the mall.  *Id.*, ¶ 25.

Seeking to escape the jurisdictional implications of Jabarin's facially chaotic and random actions, Plaintiffs make the argumentative and speculative leap that "Jabarin had noticed that Ari [Fuld] had been wearing a skullcap with bold English lettering on it", such that Jabarin deduced that "Ari [Fuld] was a Jew and an American," and "[u]pon information and belief, . . . targeted [Mr. Fuld] because he was a Jewish American."  *Id.*, ¶ 24.  The Court cannot credit such speculative and implausible "information and belief" allegations.  *See Rothbein v. City of New York*, 18-CV-5106 (VEC), 2019 U.S. Dist. LEXIS 32358, at *29 (S.D.N.Y. Feb. 28, 2019) (holding that information and belief allegations can be credited only "'where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible.'") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).  Even putting aside Plaintiffs' impermissible efforts at reading Jabarin's mind, those allegations in no way show that the United States was the focal point of the Attack, particularly when Plaintiffs' other allegations establish their contention that Jabarin intended to target IDF soldiers.

Accordingly, the only plausible inference to be drawn from Plaintiffs' allegations is that Jabarin, initially hoping to carry out a stabbing attack against IDF soldiers, ultimately decided to and did carry out an indiscriminate act of violence in a mall parking lot—a factual scenario *Waldman*, *Livnat*, *Klieman*, and *Shatsky* squarely rejected as a basis for specific jurisdiction.

**B.      Defendants Did Not Make Payments to Jabarin's Family that Trigger the PSJVTA.**

Plaintiffs' conclusory allegation that Defendants have made "payments 120 days after the enactment of" the PSJVTA "to the family of Jabarin," Compl. ¶ 3, is directly contradicted by the Declaration filed herewith, which confirms unequivocally that Defendants <u>have not made any payments</u> to Jabarin, his family, or his designees after the PSJVTA was enacted. *See* Decl., ¶¶ 5-9.[6] Accordingly, Defendants have made no payments to Jabarin, his family, or his designees that would trigger "deemed consent" to jurisdiction under the PSJVTA.

**II.      PLAINTIFFS FAIL TO STATE A CLAIM FOR PRIMARY OR SECONDARY ATA LIABILITY, REQUIRING DISMISSAL OF THE "INTERNATIONAL TERRORISM" CLAIM.**

Independent of the insurmountable lack of personal jurisdiction, Plaintiffs' claims are legally insufficient under Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)); *Ahmad v. Christian Friends of Israeli Cmtys.*, 13 Civ. 3376 (JMF), 2014 U.S. Dist. LEXIS 62053, at *5 (S.D.N.Y. May 5, 2014) (same), *aff'd*, 600 F. App'x 800, 801 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *5. The court may consider only well-pled factual allegations, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014), and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citation omitted).

---

[6] A single payment was made as a result of human error to Jabarin's mother in October 2019, before the PSJVTA's enactment. Decl., ¶ 6. The error was quickly discovered and rectified, and all further payments were blocked. *Id.*, ¶ 7.

Plaintiffs' first claim for relief purports to be a claim for "International Terrorism Pursuant to 18 U.S.C. §2333." Compl., ¶¶ 30-38. The ATA provides for both primary (or "material support") liability and secondary (aiding-and-abetting and conspiracy) liability. Plaintiffs do not specify the provision(s) of the ATA they rely on for their claim. Whether Plaintiffs intend to assert a claim for primary or secondary liability under the ATA, Plaintiffs' "international terrorism" claim fails fundamentally and must be dismissed, because Plaintiffs have not plausibly alleged facts that would give rise to an ATA claim for the reasons set forth below.

### A. Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism."

For ATA primary liability, a plaintiff must plausibly allege (i) that defendant has violated a predicate criminal statute <u>and</u> (ii) the additional elements for the ATA civil cause of action established in 18 U.S.C. § 2333(a), including, *inter alia*, that a U.S. national was injured or killed "by reason of an act of international terrorism." *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) ("Like a civil RICO claim, a suit for damages under the ATA is akin to a Russian matryoshka doll, with statutes nested inside of statutes.") (internal quotation and citation omitted).

Section 2331 defines "international terrorism" to <u>require</u> that a defendant's acts "involve violence or endanger human life" and "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government." *Linde v. Arab Bank PLC*, 882 F.3d 314, 326 (2d Cir. 2018). To state a viable claim for primary liability, Plaintiffs must plausibly allege that Defendants <u>themselves</u> committed an act of "international terrorism." *See*, *e.g.*, *Linde*, 882 F.3d at 320-22 (2d Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).

The Complaint does not meet these exacting requirements, and thus Plaintiffs' primary-liability claim must be dismissed.

1.    **Plaintiffs Do Not Plausibly Allege that Defendants Acted with the Required Terroristic Intent.**

Plaintiffs do not plausibly allege that Defendants' acts "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government," *Linde*, 882 F.3d at 326.  This is an objective test that "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions."  *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014) (citation omitted).

Courts regularly dismiss ATA claims where, as here, plaintiffs have failed to plausibly allege that a defendant acted with terroristic intent, as required by Section 2331(1).  More particularly, courts hold that even payments made to those who may be generally engaged in violent activities do not satisfy the ATA's terroristic-intent requirement absent some plausible allegation that those payments reflected the defendant's own intentional involvement in a terrorist attack.

In *Brill v. Chevron Corp.,* Case No. 15-cv-04916, 2017 U.S. Dist. LEXIS 4132, at *9-10 (N.D. Cal. Jan. 9, 2017), Chevron allegedly paid illegal surcharges and "kickbacks" to Saddam Hussein's regime in Iraq in connection with oil contracts, which allegedly "contributed to the funds Hussein used to incentivize terrorist attacks."  Nonetheless, the court held that it was "impossible" to say that plaintiffs had sufficiently alleged Chevron's terroristic intent, in part because Chevron was "alleged at most to have made payments to third parties."  *Id.* at *18-20.  The *Brill* court distinguished the Seventh Circuit's decision in *Boim*, because that decision rested on the finding that in that case, "'donations to Hamas'"—a designated FTO—"'would enable Hamas to kill or wound, or try to kill, or conspire to kill more people in Israel.'"  *Id.* at *18 (quoting *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685, 693-94 (7th Cir. 2008)).  Similarly, in *Stansell v. BGP, Inc.*, Case No. 8:09-cv-2501-T-30AEP, 2011 U.S. Dist. LEXIS 39808, *26 (M.D. Fla. Mar. 31, 2011), defendants allegedly made payments directly to an FTO in exchange for the

FTO's agreement that defendants could conduct oil exploration activities without being targeted by terrorist acts.  The court held that those payments, despite being made directly to an FTO, "would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B)."  *Id.*  These holdings are consistent with the Second Circuit's decision in *Linde*, 882 F.3d at 326-27 and 332, which distinguished *Boim* and held that even the provision of material support to a terrorist organization does not, without more, satisfy the terroristic intent requirement of § 2331.

Here, Plaintiffs allege that Defendants (1) provide payments to Palestinians incarcerated in Israeli prisons or their families or designees (*see* Compl. ¶ 14, alleging that this program has been codified in Palestinian law since 2004), and (2) provided post-attack payments pursuant to this policy to a third party—Jabarin's family—while he was in prison.  Compl. ¶ 3.  Another judge of this Court already has held that such payments cannot be taken as evidence of PA or PLO support for a terrorist attack.  *Sokolow v. PLO*, 60 F. Supp. 3d at 517 n.11 ("[a] showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that [the remitter was] somehow responsible for the attacks.").  Logically, if a post-incarceration payment made not to an attacker, but instead to his family, does not reflect an intent by the PA or PLO to take responsibility for a terrorist attack, then it cannot establish an intent by the PA or PLO to be a primary participant in that attack, as terroristic intent requires.  On these facts, Plaintiffs have not plausibly alleged that Defendants' actions appeared to be intended to intimidate or coerce a civilian population or to influence or affect a government, requiring dismissal of Plaintiffs' ATA claim.

### 2.    Plaintiffs Fail to Plausibly Allege that Defendants Engaged in "Violent Acts or Acts Dangerous to Human Life."

For similar reasons, Plaintiffs also fail to allege facts to support a reasonable inference that Defendants engaged in activities that "involve violent acts or acts dangerous to human life" sufficient

to constitute an act of "international terrorism" under Section 2331(1).  In the paragraphs describing the Attack, Compl. at ¶¶ 18-27, neither Defendant is even mentioned, much less alleged to have played any role whatsoever in planning or committing the Attack.  Instead, Plaintiffs fall back on their allegations that Jabarin's family received post-attack payments pursuant to Palestinian law. Compl. ¶¶ 3, 14.  But the Second Circuit has rejected the notion that even "the provision of material support to a terrorist organization"—not at issue here— "invariably equate[s] to an act of international terrorism." *Linde*, 882 F.3d at 326.  Post-attack payments to third-parties who are not charged with wrongdoing, without more, cannot be an act that is violent or dangerous to human life.

B.  **Plaintiffs Do Not Plausibly Allege Defendants Provided Material Support to an FTO, As Required Under 18 U.S.C. 2339B, or Provided Funds Knowing or Intending that Such Funds Would be Used to Prepare for or Carry Out a Terrorist Act, as Required Under 2339A or 2339C.**

The ATA's primary-liability provision also requires Plaintiffs to plausibly allege that Defendants committed a predicate criminal act with the requisite *mens rea*.  18 U.S.C. § 2331(1)(A); *see Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014). Plaintiffs have not alleged the violation of any predicate criminal statute.  Moreover, Plaintiffs could not plausibly allege a violation of the predicate statutes set forth in the ATA itself, 18 U.S.C. 2339A, 2339B, or 2339C.

Section 2339A requires Plaintiffs to plausibly allege that Defendants "provide[d] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out," the Attack.  18 U.S.C. § 2339A; *see United States v. Ghayth*, 709 F. App'x 718, 722-23 (2d Cir. 2017) (summary order) (quoting § 2339A); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *7-8 (for a § 2339A claim, "the defendant must have known or intended that the support would be used in preparation for, or in carrying out, violations of certain federal criminal statutes.") (citing *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 504 (E.D.N.Y. 2012)).  Section 2339C

similarly requires Plaintiffs to plausibly allege that Defendants "provide[ed] or collect[ed] funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" the Attack.  18 U.S.C. § 2339C; *see Ahmad,* 2014 U.S. Dist. LEXIS 62053, at *8 (for a § 2339C claim, "the defendant must have intended or known that such funds would be used to carry out terrorist attacks.") (citing *Gill*, 893 F. Supp. 2d at 504).

Plaintiffs have not alleged that Defendants had prior knowledge of the Attack or provided any support or resources to (or even had any contact whatsoever with) Jabarin.  Plaintiffs have alleged only that Defendants made payments to Jabarin's family well after Jabarin allegedly carried out the Attack.  Given that the Attack had already occurred at the time of the alleged payments, Plaintiffs have not plausibly alleged—and  could not plausibly allege—that Defendants made such payments to Jabarin knowing or intending that those funds would be used to prepare for, or carry out, the Attack.

Section 2339B, on the other hand, explicitly requires a showing that the defendant provide support or resources "to a foreign terrorist organization," 18 U.S.C. 2339B(a)(1).  Plaintiffs have not alleged that Jabarin was a member of, or affiliated with, any FTO, or that any FTO was involved in planning or committing the Attack.  *See Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *6 n.1 (disregarding § 2339B claim where complaint did not allege that attacks were committed by an FTO).

## C.   The Complaint Fails to Plausibly Allege Proximate Cause.

To state a claim for ATA primary liability, Plaintiffs must also plausibly allege facts showing that their injuries occurred "by reason of" an act of international terrorism committed by Defendants. The Second Circuit has interpreted the "by reason of" language to require a showing that the defendant's acts proximately caused plaintiff's injury.  *See Rothstein*, 708 F.3d at 95; *see also In re Terrorist Attacks*, 714 F.3d 118, 123-24 (2d Cir. 2013); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at

*12 ("It is well established that an ATA plaintiff must plead proximate causation.") (citations omitted), *aff'd*, 600 F. App'x at 801 ("We agree . . . that plaintiffs failed plausibly to allege the requisite proximate causation to state a claim for relief under the ATA.") (citations omitted).

Therefore, Plaintiffs must plausibly allege that each Defendant's purported conduct was "a substantial factor in the sequence of responsible causation," and that Plaintiffs' injuries were "reasonably foreseeable or anticipated as a natural consequence." *Rothstein*, 708 F.3d at 91 (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)) (emphasis in original). "In the context of an ATA action, proximate causation requires non-conclusory, plausible allegations of 'a proximate causal relationship between the cash transferred . . . and the terrorist attacks . . . that injured plaintiffs.'" *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *12 (quoting *Rothstein*, 708 F.3d at 97).

Plaintiffs have not met and cannot meet this standard. Plaintiffs do not allege that Defendants participated in the Attack or provided support or resources to Jabarin, the alleged perpetrator of the Attack. Plaintiffs have not alleged, and cannot plausibly allege, that Defendants provided any funds that were used to commit the Attack, or that Jabarin would not have been able to carry out the Attack absent those funds. Plaintiffs allege only that Defendants made payments to Jabarin's family, not Jabarin himself, after the Attack and while Jabarin was in prison. Plaintiffs have not even alleged that any funds Defendants sent to Jabarin's family after the attack were ultimately provided to Jabarin. Under such circumstances, where a defendant's actions have an attenuated connection to the attacker himself, courts regularly hold that plaintiffs fail to plausibly allege proximate cause. *See Atchley v. AstraZeneca UK Ltd.*, No. 17-2136, 2020 U.S. Dist. LEXIS 126469, at *27 (D.D.C. July 17, 2020) ("'[T]he presence of an independent intermediary' makes a defendant 'more than one step removed from a terrorist act or organization,'" and therefore "'create[s] a more attenuated chain of

causation'" than one in which payments are made "'directly to a terrorist organization.'") (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018)); *see Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 533 (S.D.N.Y. 2019).

Nor do Plaintiffs' conclusory and speculative allegations as to Defendants' motivation for carrying out the Attack cure Plaintiffs' deficient Complaint.  Plaintiffs allege "upon information and belief" that Jabarin "decided to become a 'Shahid,' a 'Martyr,'" *see* Compl. ¶¶ 18 and 27, and speculate that the Attack "was a natural by-product" of payments administered pursuant to Palestinian law to "families of Palestinians who engage in acts of terrorism and to individuals incarcerated in Israeli prisons," *id.* at ¶ 28.  But Plaintiffs' allegations as to Jabarin's supposed motivations are speculative and conclusory, because the Complaint does not make any fact-based allegation that Jabarin knew his family would receive any payment after the Attack, much less that he was motivated by the prospect of such payments.  *See Shatsky v. PLO*, No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("plaintiffs have pointed to no evidence" that the assailant knew of or was motivated by the prospect of post-attack, posthumous payments to his family, and, "without more, these after-the-fact payments [to surviving families] are not sufficient for a reasonable jury to conclude that defendants proximately caused the" attack), *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020) (citing *Sokolow*, 60 F. Supp. 3d at 517 n.11).

Accordingly, at best Plaintiffs have alleged nothing more than post-attack financial support to Jabarin's family.  As a matter of law, these allegations are not sufficient to plausibly allege Defendants' legal responsibility for Jabarin's actions, much less a proximate-cause connection of Defendants' alleged payments to the Attack.  "A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that [the remitter was] somehow responsible for the attacks."  *Sokolow*, 60 F. Supp. 3d at 517 n.11.

Plaintiffs also fail to plausibly allege that the Attack was "reasonably foreseeable or anticipated as a natural consequence" of Defendants' alleged post-Attack payment to Jabarin's family. *Rothstein*, 708 F.3d at 91 (quoting *Lerner*, 318 F.3d at 123).  It defies logic that an attack could be "foreseeable" or "anticipated" as a result of a payment allegedly made <u>after</u> the attack and while the alleged attacker was in prison.  In sum, Plaintiffs' allegations are simply "too speculative [and] attenuated to raise a plausible inference of proximate causation," and Plaintiffs' claim for "international terrorism" must be dismissed.  *Fields v. Twitter*, 200 F. Supp. 3d 964, 974 n.4 (N.D. Cal. 2016) (citations omitted), *aff'd* 881 F.3d 739 (9th Cir. 2018).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. § 2333(D).

To the extent Plaintiffs' "international terrorism" claim can be charitably read to assert a claim for JASTA aiding and abetting liability, Plaintiffs fail to plausibly allege the essential elements identified by the Second Circuit in *Linde* and *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), for a JASTA secondary-liability claim.  First, and most obviously, Plaintiffs do not plausibly allege that that their injuries arise from "an act of international terrorism committed, planned, or authorized" by an FTO.  Second, Plaintiffs do not plausibly allege that either Defendant "knowingly and substantially assist[ed] the principal violation," namely the Attack.  *Siegel*, 933 F.3d at 223 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Third, Plaintiffs do not plausibly allege that either Defendant was "aware" that it was assuming a "role" in the Attack or in any other violent or life-endangering activity.

### A.   Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted an FTO.

JASTA is plain that, in order to state a claim for secondary liability, a plaintiff must plausibly allege (and later show) that his or her injury arises from "an act of international terrorism committed, planned, or authorized" <u>by an FTO</u>, and that the defendant "knowingly provid[ed] substantial

assistance" to the "person who committed" the terrorist act.  18 U.S.C. § 2333(d)(2).  "The ATA does not provide for secondary liability unless the act of international terrorism in question was carried out by an entity formally designated as a foreign terrorist organization."  *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 355 (E.D.N.Y. 2019) (citing § 2333(d)(2)); *see Atchley*, 2020 U.S. Dist. LEXIS 126469, at *34-35 ("General support or encouragement is not enough. . . .  Congress opted for a more limited statute, circumscribing aiding-and-abetting liability to situations where an FTO *itself* had a significant role in a particular attack.") (emphasis in original, citation omitted).

To the extent Plaintiffs' "international terrorism" claim can be read as a JASTA claim—for either aiding-and-abetting or conspiracy liability—it must be dismissed because the Complaint does not allege that the Attack was "committed, planned, or authorized" by an FTO, as required by the plain language of § 2333(d)(2).  This alone defeats any claim under JASTA.

### B.      Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack.

"Congress, in enacting JASTA, instructed that the 'proper legal framework for how [aiding and abetting] liability should function' under the ATA is that identified in" *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).  *Linde,* 882 F.3d at 329 (quoting 18 U.S.C. § 2333 Statutory Note) (alterations in original).  In *Halberstam*, "the D.C. Circuit indicated that . . . the assistance given by the defendant should play a 'major part in prompting the tort' or be 'integral' to the tort in order to be considered substantial assistance."  *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 918 (N.D. Cal. 2018) (internal citations and quotations omitted).

*Halberstam* identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the requirement that the defendant "must knowingly and substantially assist the principal violation"—that is, the Attack at issue here.  *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 487).  Those six factors are: (1) the nature of the act encouraged;

(2) the amount of assistance given by defendant; (3) defendant's presence or absence at the time of the tort; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of defendant's assistance.  *Id.* (citing *Halberstam*, 705 F.2d at 483-84); *see also Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) ("It has long been recognized that 'substantial assistance' means more than just a little aid.") (internal quotation and citation omitted).

Plaintiffs have not alleged, and cannot plausibly allege, that either Defendant provided substantial assistance to the Attack or to Jabarin.  The Complaint contains no allegations that either Defendant ever provided <u>any</u> assistance, or ever had any contact or "relation" <u>whatsoever</u> with, Jabarin.  Defendants were not present during the Attack.  There is no allegation that either Defendant provided <u>any</u> funds or any other assistance, for <u>any</u> period of time, to Jabarin.  Plaintiffs allege only that Defendants made payments to Jabarin's <u>family</u>, <u>long after</u> the Attack.  But Plaintiffs have not plausibly alleged facts that would establish that Jabarin was even aware of this program, much less that it motivated or incentivized him to commit the Attack.  Finally, as explained *supra*, the Complaint does not plausibly allege that Defendants harbored terroristic intent, or indeed that either Defendant had any prior knowledge that Jabarin intended to commit the Attack or any other violent act.

It is axiomatic that a payment to Jabarin's family that allegedly occurred well <u>after</u> the Attack had already taken place could not logically have "substantially assisted" in the Attack.  Just as alleged after-the-fact payments to the family of Jabarin are insufficient to establish <u>substantial</u>-factor proximate cause for a primary-liability ATA claim, *see Sokolow*, 60 F. Supp. 39 at 517 n.11, and *Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *32, such alleged payments also cannot establish the knowing and <u>substantial</u> assistance required for a JASTA aiding-and-abetting claim.  Put another way, Defendants are too far "down the causal chain" for Plaintiffs to establish aiding-and-

abetting liability under JASTA for the Attack.  *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395-96 (7th Cir. 2018).

      **C.**      **Plaintiffs Have Not Plausibly Alleged, and Could Not Plausibly Allege, that Defendants were "Aware" they were "Assuming a Role" in Violent Terrorist Activity.**

To state an aiding and abetting claim, Plaintiffs must plausibly allege that "the secondary actor"—here, the PA and the PLO—is "'aware' that, by assisting the principal, it is itself assuming a 'role' in terrorist activities."  *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 477); *see also O'Sullivan v. Deutsche Bank AG*, Case No. 17 CV 8709, 2019 U.S. Dist. LEXIS 53134, at *39 (S.D.N.Y. Mar. 28, 2019) ("[T]he Complaint must allege plausibly that . . . Defendants were 'generally aware' that they were . . . playing a 'role' in an FTO's violent or life-endangering activities.").

Plaintiffs have failed to plausibly allege that Defendants were "aware" that they were playing a "role" in Jabarin's terrorist activities.  As noted above, Plaintiffs do not allege that either Defendant had any contact <u>whatsoever</u> with "the principal"—allegedly Jabarin.  And Defendants' alleged post-Attack payments to Jabarin's family do not support an inference that Defendants were "aware" that they were playing a "role" in that Attack.

**IV.**     **PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY OR FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333(D).**

"The crux of any conspiracy is an agreement between the co-conspirators."  *Kemper*, 911 F.3d at 395 (citing *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)).  "Although 'a conspirator [need] not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the <u>specific intent</u> that' the conspiratorial goal be completed."  *Id.* (emphasis and alteration in original).  Indeed, "one cannot join a conspiracy by apathy" even where

one "knows that his or her actions might somehow be furthering that conspiracy." *Id.* (quoting *United States v. Collins*, 966 F.2d 1214, 1219-20 (7th Cir. 1992)).

Further, JASTA requires Plaintiffs to link the alleged agreement to the "act of international terrorism" for which they sue. *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (The "plain language of JASTA … suggests that JASTA liability lies where 'the secondary tortfeasor [conspired with] the principal tortfeasor in committing '<u>such an act</u> of international terrorism.'") (quoting *Taamneh*, 343 F. Supp. 3d at 916) (modification and emphasis original).  Plaintiffs must therefore present evidence that the co-conspirators' activities were "so coordinated or monolithic that [they] shared a common purpose or plan[.]" *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *37.  Evidence of the relationship between the actors and between their actions—*e.g.*, proximity in time and place and duration of joint activity—are relevant to inferring an agreement where no explicit agreement can be proven. *Halberstam*, 705 F.2d at 481.  "But the further down the causal chain a defendant sits, the more diligent a plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement[.]" *Kemper*, 911 F.3d at 395-96.

Plaintiffs' "international terrorism" claim, to the extent it can be read as asserting a claim for conspiracy under JASTA, fails under these standards (as does Plaintiffs' non-federal civil conspiracy claim).  The Complaint does not plausibly allege that either Defendant agreed with Jabarin to commit any act of "international terrorism" as defined in the ATA, let alone the Attack at issue here.  *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (for a JASTA conspiracy claim, "a defendant must have conspired to commit an act of international terrorism."); *Kaplan*, 405 F. Supp. 3d at 534 ("Plaintiffs must allege that Defendant and [an FTO] entered into an agreement to commit an act of international terrorism").

Plaintiffs also fail to plausibly allege that either Defendant "conspire[d] directly with the person or entity"—here, Jabarin—"that committed the act of international terrorism that injured the plaintiff." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 98 n.41 (E.D.N.Y. 2019). Indeed, Plaintiffs do not even allege <u>any</u> communications or contact whatsoever between either Defendant and Jabarin. For the same reasons that Plaintiffs have not plausibly alleged that Defendants knew or intended that a post-imprisonment payment to Jabarin's family would be used to fund, prepare for or commit the Attack or any other violent act (*supra* at II(B)), the Complaint does not plausibly allege that Defendants <u>agreed</u> with Jabarin or anyone else to perpetrate or facilitate the Attack or any other violent act.

By Plaintiffs' own allegations, any payments made to Jabarin's family were made not pursuant to any agreement, but pursuant to a Palestinian law broadly applicable to Palestinians incarcerated in Israel. Compl. ¶¶ 3, 14. Plaintiffs do not plausibly allege that either Defendant agreed to commit an underlying act of international terrorism as defined by the ATA, or indeed any other criminal act. Plaintiffs' "international terrorism" claim, to the extent it alleges a conspiracy under JASTA, must be dismissed (as must Plaintiffs' non-federal civil conspiracy claim).

## V.     PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS LACK CAPACITY TO BE SUED.

"Courts that have considered this issue agree that" the PA and PLO "are most appropriately treated as unincorporated associations." *Sokolow*, 60 F. Supp. 3d at 523-24 (collecting cases); *see also Waldman*, 835 F.3d at 332 ("both [the PA and PLO] are unincorporated associations."); *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37, 48 (D.D.C. 2015) ("With respect to service of process and to amenability to suit, other district court judges have treated the Palestinian Authority as an unincorporated association.") (citing *Sokolow*, 60 F. Supp. 3d at 524, and *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006)). Pursuant to Fed. R. Civ. P. 17(b),

because the PA and the PLO are neither individuals nor corporations, "they are captured by the catch-all language of Rule 17(b)(3)," which provides that "the law of the state where the court is located determines whether the defendant has the capacity to be sued"—here, New York. *Sokolow*, 60 F. Supp. 3d at 523 (citing Fed. R. Civ. P. 17(b)(3) and *La Russo v. St. George's Univ. of Med.*, 747 F.3d 90, 95 (2d Cir. 2014)).

Under N.Y. C.P.L.R. § 1025, unincorporated associations lack the capacity to be sued for non-federal claims. Accordingly, "[p]ursuant to Federal Rule of Civil Procedure 17(b)(3) and NY C.P.L.R. § 1025, Defendants do not have the capacity to be sued on Plaintiffs' non-federal claims under New York law," and Plaintiffs' non-federal claims must be dismissed. *Sokolow*, 60 F. Supp. 3d at 523 (dismissing non-federal claims against PA and PLO); *see also Estate of Parsons v. Palestinian Auth.*, No. 07-cv-1847, 2008 U.S. Dist. LEXIS 124833, at *13-14 (D.D.C. Sept. 30, 2008) (holding that the PA and PLO are unincorporated associations and dismissing non-federal claims); *Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *33-36, *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020).

## VI.   PLAINTIFFS' CLAIMS FOR BATTERY, ASSAULT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE TIME-BARRED.

"'New York courts generally apply New York's statute of limitations even when the injury giving rise to the action occurred outside New York. This general rule, however, is subject to a traditional statutory exception, New York's 'borrowing' statute.'" *Wultz v. Bank of China*, 306 F.R.D. 112, 114 (S.D.N.Y. 2013) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)). Under New York's borrowing statute, CPLR § 202, "'when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period . . . of either: (1) New York; or (2) the state where the cause of action accrued.'" *Wultz*, 306 F.R.D. at 114 (quoting *Stuart*, 158 F.3d at 627) (emphasis added). "'Hence, an action by a

nonresident on a foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred.'"  *Id.* (quoting *Stuart*, 158 F.3d at 627) (emphasis added).

Pursuant to C.P.L.R. 215(3), New York applies a one-year statute of limitations to most intentional torts, including those for battery, assault, and intentional infliction of emotional distress.  *See, e.g., Gomez v. City of N.Y.*, No. 14 Civ. 05932 (CM), 2016 U.S. Dist. LEXIS 128338, at *15 (S.D.N.Y. Sept. 14, 2016) ( "All of those claims are barred by the statute of limitations . . . assault and battery (one year, CPLR 215(3))"); *Engelman v. Rofe*, Case No. 152072/2018, 2019 N.Y. Misc. LEXIS 3160, at *8 (Sup. Ct. N.Y. County June 5, 2019) ("Civil assault and battery are among the intentional torts that have a one-year statute of limitations (*see* CPLR 215 [3]).")"; *Truman v. Brown*, 434 F. Supp. 3d 100, 117 (S.D.N.Y. 2020) ("IIED is subject to a one-year statute of limitations.") (citation omitted); *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F. Supp. 2d 765, 829 (S.D.N.Y. 2005) (dismissing assault, battery, and IIED claims pled more than one year after Sept. 11 attacks).

Plaintiffs filed the Complaint on April 30, 2020, more than one year after the Attack allegedly occurred on September 16, 2018.  Accordingly, Plaintiffs' causes of action for battery, assault, and intentional infliction of emotional distress are time-barred and must be dismissed.

## VII.    <u>PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION, AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW.</u>

To the extent that Israeli law applies[7], Plaintiffs' negligence claim must be dismissed because the Complaint does not allege, and could not plausibly allege, that Defendants' actions

---

[7] Plaintiffs do not specify which jurisdiction's law they claim should apply to their non-federal causes of action.  In the event of an outcome-determinative conflict between the laws of (i) the place of Defendants' alleged actions and Plaintiffs' alleged injury and (ii) the laws of this forum, the laws of Palestine would apply, unless this Court applies the law of Israel as the occupying power.  *See, e.g., Knox v. PLO*, 306 F. Supp. 2d 424, 437 (S.D.N.Y. 2004) ("the PA's authority is subordinate to Israel's sovereign control, in many fundamental ways"); *see also Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 427 (S.D.N.Y. 2012) ("'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'") (quoting *GlobalNet Financial.com, Inc. v. Frank Crystal & Co.*, 449 F.3d

were the "but-for" cause of Plaintiffs' injuries.  "Israeli courts determine factual causation under the tort of negligence by applying a but-for causation test." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 63 (D.D.C. 2010) (citing CA 148/80 *Vaknin v. Beit Shemesh Local Council* 37(1) PD 113, 133 [1982] (Isr.)).  "'[T]he meaning of this test is that a breach of the duty is a factor *sine qua non*' resulting in injury, not merely a 'fundamental and substantial factor' contributing to injury." *Id.* (quoting *Vaknin*, 37(1) PD at 144).  Plaintiffs have not alleged that the Attack would not have happened but for Defendants' alleged actions.  Accordingly, under Israeli law, the negligence claim must be dismissed.

## VIII.   PLAINTIFFS HAVE NOT STATED A CLAIM FOR VICARIOUS LIABILITY/RESPONDEAT SUPERIOR.

Plaintiffs' twelfth cause of action, for "vicarious liability/respondeat superior," fails to plausibly state a claim, and must be dismissed, for at least two reasons (independent of the flaws discussed *supra*).

First, Plaintiffs have not plausibly alleged, nor could they allege, that Jabarin was ever employed by either Defendant, let alone that the Attack was within the scope of such employment or agency.  Indeed, Plaintiffs do not plausibly allege that Jabarin ever had <u>any</u> contact with either Defendant.  *See De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 417 (S.D.N.Y. 2015) ("The key element of respondeat superior . . . is an employment relationship between the alleged tortfeasor and the party that the plaintiff is seeking to hold vicariously liable.") (quoting *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007)).

Second, as a matter of law, a vicarious liability claim cannot be sufficiently stated on the sole basis of post-attack payments by the Palestinian government.  Plaintiffs' fact-free, conclusory

377, 384 (2d Cir. 2006)).  At this early stage of the litigation, where Plaintiffs have not alleged that any foreign law applies to their non-federal claims, it appears that the only outcome-determinative conflict with New York law is with respect to Plaintiffs' Negligence claim, because Israeli law requires but-for causation.

statement that Defendants "authorized, ratified, and/or condoned" Jabarin's acts, Compl. ¶ 98, cannot be credited even on a Rule 12(b)(6) motion.  As in *Sokolow*, "Plaintiffs seem to argue that Defendants' [alleged] post-attack 'ratification' of [Jabarin's] actions" is itself unlawful.  60 F. Supp. 3d at 517 n.11.  But as a matter of law, "[a] showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attack[]."  *Id.*  Here, Plaintiffs have not alleged that Defendants did anything more, requiring dismissal of this claim.

## IX.  **PLAINTIFFS HAVE NOT STATED A CLAIM FOR INDUCEMENT.**

Separate from the reasons above requiring dismissal, Plaintiffs' claim for "inducement" must be dismissed because Plaintiffs have not plausibly alleged that an independent cause of action for "inducement" exists in this context.  Moreover, the Complaint does not plausibly allege facts that would permit a jury to conclude that Defendants "induced" Jabarin to commit the Attack.  As explained above, Plaintiffs have not alleged that Defendants had any contact with Jabarin whatsoever prior to the Attack.  Plaintiffs' purported "inducement" claim alleges that Defendants "offered and provided their own and each other's officials, agents, and employees" with incentives to "plan, organize, and execute acts on [sic] international terrorism."  Compl. ¶ 103 (emphasis added).  But Plaintiffs have not plausibly alleged that Jabarin was ever an official, agent, or employee of either Defendant, nor that Defendants had any involvement whatsoever in planning, organizing, or executing the Attack.  Plaintiffs' "inducement" claim fails and must be dismissed.

## **CONCLUSION**

The Complaint should be dismissed with prejudice.

Dated: August 10, 2020

Respectfully submitted,

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Gassan A. Baloul*
Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Attorneys for Defendants Palestine Liberation Organization and Palestinian Authority*