UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MIRIAM FULD, et al.,<br><br>                              Plaintiffs,<br><br>-against-<br><br>THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY,<br><br>                              Defendants. | Case No.: 20-cv-3374 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS THE PALESTINE LIBERATION ORGANIZATION AND THE PALESTINIAN AUTHORITY**

**SQUIRE PATTON BOGGS (US) LLP**
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

Joseph S. Alonzo
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
Telephone: (212) 872-9800
Facsimile:  (212) 872-9815

*Attorneys for Defendants Palestine Liberation Organization and Palestinian Authority*

November 9, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................... iii

PRELIMINARY STATEMENT ................................................. 1

ARGUMENT ......................................................................... 4

I.  PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION OVER THE DEFENDANTS. ......................... 4

  A.  This Court Should Defer Ruling on PSJVTA Issues Pending Proceedings in *Sokolow*, Which Will Yield Binding Appellate Authority on the PSJVTA. ................................................................. 4

II.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ATA, REQUIRING DISMISSAL OF THE "INTERNATIONAL TERRORISM" CLAIM. ..................... 10

  A.  Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism." ................................................. 11

    1.  Plaintiffs Do Not Plausibly Allege that Defendants Acted with the Required Terroristic Intent. .................................... 11

    2.  Plaintiffs Fail to Plausibly Allege that Defendants Engaged in "Violent Acts or Acts Dangerous to Human Life." ................. 13

  B.  Plaintiffs Do Not Plausibly Allege Defendants Provided Funds to an FTO, or Knew or Intended that Such Funds Would be Used for a Terrorist Act. ........ 13

  C.  Plaintiffs Do Not Plausibly Allege Any Connection Between Purported Statements by President Abbas and the Attack by a Third-Party, Jabarin. .......... 15

  D.  The Complaint Fails to Plausibly Allege Proximate Cause. ................... 16

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. § 2333(D) ..................................... 19

  A.  Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted an FTO. .................... 19

  B.  Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack. .................. 20

  C.  Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Were "Aware" They Were "Assuming a Role" in Violent Terrorist Activity. ................................................. 21

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY OR FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333(D). ........................ 22

V.  PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS LACK CAPACITY TO BE SUED ..................................... 24

## <u>TABLE OF CONTENTS</u>
(continued)

**Page**

VI.　PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION, AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW. ................ 24

VII.　PLAINTIFFS' NINTH CAUSE OF ACTION MUST BE DISMISSED. ....................... 25

CONCLUSION ............................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A2P SMS Antitrust Litig.*,
  No. 12-CV-2656 (AJN) 2015 U.S. Dist. LEXIS 24909 (S.D.N.Y. Mar. 2,
  2015) ................................................................................................................9

*Ahmad v. Christian Friends of Israeli Cmtys.*,
  13 Civ. 3376 (JMF), 2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014),
  *aff'd*, 600 F. App'x 800 (2d Cir. 2015)..............................................10, 14, 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................................10

*Atchley v. AstraZeneca UK Ltd.*,
  No. 17-2136, 2020 U.S. Dist. LEXIS 126469 (D.D.C. July 17, 2020) ............................17, 19

*Brill v. Chevron Corp.*,
  No. 15-cv-04916, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017)..............................12

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)................................................................................6

*Chavez v. Occidental Chem. Corp.*,
  300 F. Supp. 3d 517 (S.D.N.Y. 2018)..................................................................8, 9

*Chirag v. MT Marida Marguerite Schiffahrts*,
  604 F. App'x 16 (2d Cir. 2015) ...........................................................................4

*Cooper, Robertson & Partners, LLP v. Vail*,
  143 F. Supp. 2d 367 (S.D.N.Y. 2001).....................................................................7

*De Sole v. Knoedler Gallery, LLC*,
  137 F. Supp. 3d 387 (S.D.N.Y. 2015)...................................................................25

*EEOC v. Day & Zimmerman NPS, Inc.*,
  No. 15-cv-01416 (VAB), 2016 U.S. Dist. LEXIS 48800 (D. Conn. Apr. 12,
  2016) ................................................................................................................8

*Enter. Rent-A-Car Wage & Hour Emp't Practices Litig. v. Enter. Rent-A-Car Co.*,
  735 F. Supp. 2d 277 (W.D. Pa. 2010)....................................................................8

*Fields v. Twitter*,
  200 F. Supp. 3d 964 (N.D. Cal. 2016), *aff'd* 881 F.3d 739 (9th Cir. 2018) ............................19

*Freeman v. HSBC Holdings PLC*,
    413 F. Supp. 3d 67 (E.D.N.Y. 2019) ........................................................23

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) ...............................................11, 14

*Goldberg v. UBS AG*,
    660 F. Supp. 2d 410 (E.D.N.Y. 2009) ......................................................20

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ....................................................19, 20, 22

*Jazini by v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) .........................................................................4

*Kaplan v. Lebanese Canadian Bank*,
    405 F. Supp. 3d 525 (S.D.N.Y. 2019) ................................................17, 23

*Kemper v. Deutsche Bank AG*,
    911 F.3d 383 (7th Cir. 2018) .......................................................21, 22, 23

*Estate of Klieman v. Palestinian Auth.*,
    467 F. Supp. 2d 107 (D.D.C. 2006)) ........................................................24

*Estate of Klieman v. Palestinian Auth.*,
    923 F.3d 1115 (D.C. Cir. 2019) ..................................................................9

*Estate of Klieman v. Palestinian Auth.*,
    140 S. Ct. 2713 (U.S., Apr. 27, 2020) ........................................................9

*Klinghoffer v. S.N.C. Achille Lauro*,
    937 F.2d 44 (2d Cir. 1991) ..........................................................................6

*Kregler v. City of New York*,
    608 F. Supp. 2d 465 (S.D.N.Y. 2009) .........................................................7

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262 (NRB), 2016 U.S. Dist. LEXIS 51190 (S.D.N.Y. Apr. 15,
    2016) ...........................................................................................................8

*Linde v. Arab Bank PLC*,
    882 F.3d 314 (2d Cir. 2018) ........................................................... *passim*

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017), *cert. denied*, 139 S. Ct. 373 (2018) ......................................6, 9

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014) ......................................................................10

*Ocasio v. United States*,
    136 S. Ct. 1423 (2016) .................................................................................................22

*O'Sullivan v. Deutsche Bank AG*,
    Case No. 17 CV 8709, 2019 U.S. Dist. LEXIS 53134 (S.D.N.Y. Mar. 28,
    2019) ...............................................................................................................22, 23

*Estate of Parsons v. Palestinian Auth.*,
    No. 07-cv-1847, 2008 U.S. Dist. LEXIS 124833 (D.D.C. Sept. 30, 2008) ............................24

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010) .............................................................................................4

*Quill Corp. v. N. Dakota*,
    504 U.S. 298 (1992) ......................................................................................................6

*Rothbein v. City of New York*,
    18-CV-5106 (VEC), 2019 U.S. Dist. LEXIS 32358 (S.D.N.Y. Feb. 28, 2019) .....................10

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ...............................................................................11, 16, 17, 18

*Safra v. Palestinian Auth.*,
    82 F. Supp. 3d 37 (D.D.C. 2015) ....................................................................................24

*Shatsky v. PLO*,
    955 F.3d 1016 (D.C. Cir. 2020) ..................................................................................7, 9

*Shatsky v. PLO*,
    Case No. 1:18-cv-12355-MKV (S.D.N.Y.) ......................................................................7, 8

*Shatsky v. PLO*,
    No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946 (D.D.C. June 20, 2017),
    *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C.
    Cir. 2020) ...............................................................................................18, 21, 24

*Siegel v. HSBC N. Am. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019) ...........................................................................................19

*Sokolow v. PLO*,
    60 F. Supp. 3d 509 (S.D.N.Y. 2014) ......................................................................... *passim*

*SPV OSUS, Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018) .............................................................................................4

*Stansell v. BGP, Inc.*,
    No. 8:09-cv-2501-T-30AEP, 2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar.
    31, 2011) .................................................................................................................12

*Taamneh v. Twitter, Inc.*,
   343 F. Supp. 3d 904 (N.D. Cal. 2018) ...............................................................20

*Tannerite Sports, LLC v. NBCUniversal Media LLC*,
   135 F. Supp. 3d 219 (S.D.N.Y. 2015).................................................................5

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 118 (2d Cir. 2013).................................................................................16

*In re Terrorist Attacks on Sept. 11, 2001*,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018).................................................................4

*Trisvan v. Heyman*,
   305 F. Supp. 3d 381 (E.D.N.Y. 2018) .................................................................5

*United States v. Cigarette Merchandisers Assoc.*,
   18 F.R.D. 497 (S.D.N.Y. 1955) ...........................................................................8

*United States v. Ghayth*,
   709 F. App'x 718 (2d Cir. 2017) .........................................................................14

*United States v. Rahman*,
   189 F.3d 88 (2d Cir. 1999)...................................................................................16

*United States v. Sioux Nation*,
   448 U.S. 371 (1980)...............................................................................................6

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016), *cert. denied sub nom*, *Sokolow v. PLO*, 137 S.
   Ct. 2319 (2017) ("*Waldman I*") ...................................................................... *passim*

*Waldman v. PLO*,
   925 F.3d 570 (2d Cir. 2019) ("*Waldman II*") .................................................6

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014)........................................................................11, 13

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) .......................................................................25

*Zapata v. HSBC Holdings PLC*,
   414 F. Supp. 3d 342 (E.D.N.Y. 2019), *aff'd*, 19-3355-cv, 2020 U.S. App.
   LEXIS 32730 (2d Cir. Oct. 16, 2020) ...............................................................19

**Statutes**

18 U.S.C. § 373 ......................................................................................................16

18 U.S.C. § 2331 .........................................................................................11, 12, 13

18 U.S.C. § 2333 ..................................................................................................... *passim*

18 U.S.C. § 2334 ..............................................................................................2, 4, 5

18 U.S.C. § 2339A .............................................................................................13, 14

18 U.S.C. § 2339B .............................................................................................13, 14

18 U.S.C. § 2339C ..................................................................................................14

28 U.S.C. § 1292 ..................................................................................................8, 9

Promoting Security and Justice for Victims of Terrorism Act of 2019
("PSJVTA") ........................................................................................................ *passim*

**Rules**

N.Y. C.P.L.R. § 1025 ...............................................................................................24

Fed. R. Civ. P. 12 .............................................................................................. *passim*

Fed. R. Civ. P. 17 ....................................................................................................24

**Other Authorities**

4 *Wright & Miller*, Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.) .......................................8

5C *Wright & Miller*, Fed. Prac. & Proc. § 1373 (3d ed.).................................................8

## PRELIMINARY STATEMENT

Plaintiffs do not plausibly attribute responsibility to the Palestinian government (Defendants in this action) for the terrorist attack (the "Attack") at issue here, which was committed by a third-party. Despite having had the opportunity to amend their allegations, Plaintiffs' Amended Complaint (ECF 21) ("Am. Compl.") instead makes clear that the Palestinian government did not employ, control, direct, or indeed have any contact whatsoever with the attacker, and did not have advance knowledge of the Attack or facilitate it in any way.

Plaintiffs are the relatives, survivors, heirs, and the personal representative of the estate of Ari Yoel Fuld, whom Plaintiffs allege was killed in a terrorist attack carried out by Khalil Yusef Ali Jabarin ("Jabarin") on September 16, 2018, in Gush Etzion, a cluster of Israeli settlements in the occupied West Bank, Palestine, that the international community views as illegal. *See* Am. Compl. ¶¶ 1, 4-8, 101-110. Plaintiffs have brought Anti-Terrorism Act ("ATA")[1] and common-law claims against the Palestinian Authority ("PA") and the Palestinian Liberation Organization ("PLO"), which are the domestic government of Palestine and the overseas diplomatic representative of the Palestinian people, respectively. *See Waldman v. PLO*, 835 F.3d 317, 322-23 (2d Cir. 2016), *cert. denied sub nom*, *Sokolow v. PLO*, 137 S. Ct. 2319 (2017) ("*Waldman I*").

Plaintiffs' Amended Complaint largely relies on the *Sokolow* record to allege that Defendants are "deemed to have consented to personal jurisdiction" pursuant to the post-*Waldman I* Promoting Security and Justice for Victims of Terrorism Act of 2019 (the "PSJVTA").[2] The

---

[1] The ATA was amended in 2016 by the Justice Against Sponsors of Terrorism Act ("JASTA"). 18 U.S.C. § 2333.

[2] The PSJVTA purports to "deem[]" Defendants to have consented to personal jurisdiction for ATA claims should Defendants make payments to (1) "any payee designated by an individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment"; or (2) "any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual"; or should Defendants (3) "continue[] to maintain" or (4) "establish[]

PSJVTA issues Plaintiffs raise are not case-specific, nor are the statutory-construction and constitutional issues relating to whether the PJSVTA can supply jurisdiction over the PA and PLO for claims based on an Attack that pre-dates the PSJVTA.  Indeed, those issues will be resolved authoritatively by the Second Circuit following a limited remand to Judge Daniels in *Sokolow*.  *See Sokolow (Waldman) v. PLO*, No. 1:04-cv-0397-GBD, ECF 1006 at 3-4.  This Court can and should defer ruling on PSJVTA issues pending the Second Circuit's decision on those matters.

Aside from the PSJVTA, Plaintiffs do not and could not plausibly allege any basis for either general or specific personal jurisdiction over Defendants, which under recent Circuit precedent are not subject to the general jurisdiction of U.S. courts, and over whom specific jurisdiction cannot be exercised because the United States was not the "focal point" of the Attack. *See Waldman I*, 835 F.3d at 332-35 (general jurisdiction), 335-44 (specific jurisdiction).

Even if Plaintiffs could make a *prima facie* case of jurisdiction over Defendants (which they cannot), Fed. R. Civ. P. 12(b)(6) requires dismissal of the Amended Complaint because, despite amending their pleading, Plaintiffs fail to state any viable claims.

Plaintiffs' first cause of action under the ATA (for "International Terrorism Pursuant to 18 U.S.C. § 2333") is legally deficient for a host of reasons.  Notably, Plaintiffs do not identify which provision(s) of § 2333, or which predicate criminal statute(s), they allege Defendants have violated, with the exception of statutes related to "criminal solicitation."  Am. Compl. ¶ 117.  For the reasons discussed at Section II(C) *infra*, Plaintiffs' allegations related to "solicitation" do not plausibly support any of their claims, including their ATA claim.  Further, whatever ATA provisions Plaintiffs intended to invoke, they have not plausibly alleged the required elements.

---

or procure[] any office, headquarters, premises, or other facilities or establishments in the United States" or (5) "conduct[] any activity while physically present in the United States".  18 U.S.C. § 2334(e)(1)(A), (B).

Plaintiffs fail to state a <u>primary-liability</u>, or "material support," claim under the ATA because they do not plausibly allege:

- That Defendants <u>themselves</u> committed an "act of international terrorism," as required to state an ATA primary-liability claim;
- That Defendants provided material support either to a U.S.-designated Foreign Terrorist Organization ("FTO"), or with knowledge or intent that such support would be used to prepare for, or to carry out, a criminal act of terrorism;
- That an alleged speech by PA President Mahmoud Abbas the day before the Attack constituted criminal "solicitation" or incitement of Jabarin, where the speech called for peaceful diplomatic actions, not violence, and there is no plausible allegation that Jabarin was even aware of the speech or had any contact with Defendants; or
- That Defendants' acts were the proximate cause of Plaintiffs' injuries.

To the extent Plaintiffs' "International Terrorism" count charitably can be interpreted as asserting a claim for <u>secondary</u> liability under JASTA, 18 U.S.C. § 2333(d), it is legally insufficient to state such a claim, because Plaintiffs do not plausibly allege:

- That the attack was committed by an FTO, as required by § 2333(d);
- That Defendants "knowingly and substantially assisted" in the Attack;
- That Defendants were "generally aware" that they were playing a "role" in violent or life-threatening acts;
- Any "agreement" between Defendants and Jabarin to commit a terror attack, as required for a JASTA conspiracy claim, or any connection between any purported conspiracy and the Attack.

Separately, Plaintiffs' non-federal claims also should be dismissed because:

- Defendants are "unincorporated associations that lack the capacity to be sued under New York law as to Plaintiffs' non-federal claims." *See Sokolow v. PLO*, 60 F. Supp. 3d 509, 523-24 (S.D.N.Y. 2014) (collecting cases); *Waldman I*, 835 F.3d at 332. While Plaintiffs newly allege that each Defendant is a "public body," Am. Compl. ¶¶ 9-10, this argument was specifically considered and rejected by the district court in *Sokolow* and then by the Second Circuit in *Waldman I*.
- Supplemental jurisdiction will no longer apply upon dismissal of the ATA claim.
- Plaintiffs' claims for civil conspiracy, negligence, vicarious liability/respondeat superior, and inducement lack essential elements and therefore fail to state a claim.

Defendants identified these fatal flaws in Plaintiffs' claims in their motion to dismiss the original Complaint (ECF 17-1), and the Amended Complaint remains as factually and legally deficient as its predecessor. Plaintiffs' claims now must be dismissed.

## ARGUMENT

I. **PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* CASE FOR PERSONAL JURISDICTION OVER THE DEFENDANTS.**

On a Rule 12(b)(2) motion to dismiss, the "plaintiff has the burden of making a prima facie showing that personal jurisdiction over the defendant exists." *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 424 (S.D.N.Y. 2018) (citation omitted); *see Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010). The Amended Complaint "'must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant.'" *SPV OSUS, Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 19 (2d Cir. 2015) (citing *Jazini by Jazini v. Nissan Motor Co.,* 148 F.3d 181, 185 (2d Cir. 1998) (rejecting jurisdictional allegations lacking "supporting facts" and "factual specificity")). On a Rule 12(b)(2) motion, "the court is neither required to draw argumentative inferences in the plaintiff's favor, nor must it accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 295 F. Supp. 3d at 424 (quotations and citations omitted).

A. **This Court Should Defer Ruling on PSJVTA Issues Pending Proceedings in *Sokolow*, Which Will Yield Binding Appellate Authority on the PSJVTA.**

The jurisdictional fulcrum of the Amended Complaint is Plaintiffs' claim that Defendants are "deemed to have consented to personal jurisdiction" under the PJSVTA. *See* Am. Compl. ¶ 3. These allegations relate to the PLO's UN Mission in New York and ordinary-course conduct of the UN Mission and activities ancillary thereto, as well as alleged payments by Defendants having nothing to do with the Attack at issue here, which Plaintiffs claim give rise to jurisdiction under 18 U.S.C. § 2334(e)(1)(A).

There are significant constitutional and statutory-construction issues concerning the PSJVTA, which will soon be addressed by the Second Circuit. For the reasons set forth below, this Court should defer ruling on those issues pending the Second Circuit's consideration.

None of the factual issues Plaintiffs raise regarding the PJSVTA is unique to this case. As previously established, Defendants have not made any payments falling within 18 U.S.C. § 2334(e)(1)(A) with respect to the Attack. *See* the Declaration of Tareq Mustafa, ECF 17-2, ¶¶ 5-9.[3]  Instead, Plaintiffs rely substantially on the *Sokolow* record for their PSJVTA factual predicate allegations. *See*, *e.g.*, Am. Compl. ¶¶ 25-26, 33, 35-36, 41, 57-58, 60-61, 69, 72, 92. The remaining PSJVTA issues—statutory-construction and constitutional—also are not unique here, and will be resolved authoritatively and promptly by the Second Circuit in *Sokolow* following a limited remand to Judge Daniels. *See Sokolow*, No. 1:04-cv-0397-GBD, ECF 1006 at 3-4.

Defendants' most recent *Sokolow* brief in the Second Circuit (attached as Exhibit 1) makes a preliminary showing that the PSJVTA cannot provide personal jurisdiction over the PA and PLO for both statutory-construction and constitutional reasons. <u>First</u>, with regard to statutory construction, Defendants argued (Exhibit 1 at 28-33) as follows:  The PSJVTA cannot provide for personal jurisdiction under the record in *Sokolow*—on which Plaintiffs here largely rely—as the *Sokolow* record predates the PSJVTA's earliest effective date (January 2020). Further, the PSJVTA expressly allows the PLO's UN Mission to continue its customary and "ancillary" operations without jurisdictional consequences. The PSJVTA's refashioned "in the United States" language is without consequence, as the Second Circuit has repeatedly held the UN Mission is not in the United States

---

[3] When resolving a Rule 12(b)(2) motion, the Court "may consider materials outside the pleadings," including affidavits submitted by a defendant. *See Trisvan v. Heyman*, 305 F. Supp. 3d 381, 391 (E.D.N.Y. 2018). A court need not accept as true jurisdictional allegations that are contradicted by affidavit evidence. *See Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 228 (S.D.N.Y. 2015) ("[W]hen a defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence—the allegation may be deemed refuted.") (quotation and citation omitted).

for jurisdictional purposes.  *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019) ("*Waldman II*");
*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) ("the UN Headquarters is not
really United States territory at all").  The ordinary-course UN Mission conduct to which Plaintiffs
cite is exempted under the PSJVTA through its United Nations and "ancillary activities" exceptions.

Second, with regard to constitutional challenges, Defendants argued (Exhibit 1 at 34-40) as
follows:  There are serious constitutional barriers to Plaintiffs' efforts to deploy the PSJVTA to supply
jurisdiction based on Defendants' deemed "consent" when the attack from which Plaintiffs' claims
arise pre-dates the statute.  No statute can create jurisdiction where the Constitution forbids it.  *Livnat
v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017) ("Congress cannot wish away a constitutional
provision."), *cert. denied*, 139 S. Ct. 373 (2018).  The PSJVTA's "deemed consent" provisions violate
due process if applied to confect jurisdiction based on events not "connected to the wrongs for which
the plaintiffs here seek redress."  *Waldman I*, 835 F.3d at 342.  Using the PSJVTA to evade due
process through "deemed consent" must fail, as consent must be "free and voluntary" to comport with
due process.  *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016).  As the Second
Circuit has held, the "due process analysis … applies even when federal service-of-process statutes
are satisfied.  Simply put, the exercise of personal jurisdiction must comport with constitutional due
process principles."  *Waldman I*, 835 F.3d at 343 (quotation omitted).  Congress does not "have the
power to authorize violations of the Due Process Clause."  *Quill Corp. v. N. Dakota*, 504 U.S. 298,
305 (1992).  Nor can the PSJVTA compel reversal of the Second Circuit's prior due-process holding
without effectively "prescrib[ing] a rule for decision that [leaves] the court no adjudicatory function
to perform."  *United States v. Sioux Nation*, 448 U.S. 371, 392 (1980) (citation omitted).

However, this Court need not reach these issues and instead should await the Second
Circuit's authoritative resolution of them in *Sokolow*, where the Court of Appeals has directed Judge

Daniels to address <u>all</u> PSJVTA issues—including factual-predicate, statutory-construction, and constitutional questions—after which the Second Circuit will immediately resolve them.  *See Sokolow*, ECF 1006 at 3-4.  Full briefing of the PSJVTA issues before Judge Daniels in *Sokolow* will be completed by early February 2021.  *Id.*, ECF 1013.

Plaintiffs here have alleged PSJVTA theories that track almost verbatim the PSJVTA factual-predicate allegations in *Sokolow*.  *See, e.g.*, Am. Compl. ¶¶ 25-26, 33, 35-36, 41, 57-58, 60-61, 69, 72, 92.  Prudential considerations, and judicial and party efficiency, therefore weigh in favor of deferring adjudication of the PSJVTA issues in this case pending authoritative resolution by the Second Circuit in *Sokolow*.  It would be wasteful, and potentially create conflicting rulings, to duplicate the *Sokolow* process here—particularly without an interlocutory appeal of any determination by this Court in favor of PSJVTA jurisdiction.  That potential for conflicting rulings is further compounded by the fact that identical PSJVTA issues are pending in yet another case in this Court.  *See Shatsky v. PLO*, Case No. 1:18-cv-12355-MKV (S.D.N.Y.) ("*Shatsky II*"), ECF 40-43.[4]  The *Shatsky* plaintiffs also rely substantially on materials from the *Sokolow* record.  *Compare Shatsky II*, ECF 41 at 2-3, *with Sokolow*, ECF 1007 at 3-5.

Given those considerations, the Court should decline to adjudicate PSJVTA issues pending the Second Circuit's ruling in *Sokolow*.  The Court has several means at its disposal to do so.  First, Federal Rule of Civil Procedure 12(i) authorizes the Court to defer ruling on the 12(b)(2) jurisdiction component of Defendants' dispositive motion to conserve time, expense, and judicial resources.  *See Kregler v. City of New York*, 608 F. Supp. 2d 465, 475 (S.D.N.Y. 2009) (general Rule 12(i) authority); *Cooper, Robertson & Partners, LLP v. Vail*, 143 F. Supp. 2d 367, 370 (S.D.N.Y. 2001)

---

[4] Similar to *Sokolow*, the D.C. Circuit in *Shatsky* held that Defendants are not subject to personal jurisdiction.  *Shatsky v. PLO*, 955 F.3d 1016, 1036-37 (D.C. Cir. 2020).  To avoid the expiration of the statute of limitations on their ATA claims, Plaintiffs re-filed their case in the U.S. District Court for the Southern District of New York.  They have since alleged that the PSJVTA provides a basis for personal jurisdiction.  *Shatsky II*, ECF 41 and 42.

("[t]he court has broad discretion to hear and decide a motion to dismiss for lack of personal jurisdiction before trial or to defer the matter until trial.").  As particularly relevant here, Rule 12(i) authorizes deferral "when a related matter is pending in another tribunal"—such as *Sokolow*.  5C Wright & Miller, Fed. Prac. & Proc. § 1373 (3d ed.), citing *United States v. Cigarette Merchandisers Assoc.*, 18 F.R.D. 497 (S.D.N.Y. 1955).  After deferring the jurisdictional question, the Court can address Defendants' Rule 12(b)(6) arguments, applying the principle that: "when the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question."  4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.), quoted in *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 U.S. Dist. LEXIS 51190, at *112-13 n.8 (S.D.N.Y. Apr. 15, 2016); *Enter. Rent-A-Car Wage & Hour Emp't Practices Litig. v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 328-29 (W.D. Pa. 2010).  Alternatively, the Court could deny the Rule 12(b)(2) prong of Defendants' motion without prejudice to renewal following the Second Circuit's decision in *Sokolow*.  *EEOC v. Day & Zimmerman NPS, Inc.*, No. 15-cv-01416 (VAB), 2016 U.S. Dist. LEXIS 48800, at *18 (D. Conn. Apr. 12, 2016) (denying without prejudice pending Second Circuit determination).

These approaches would either satisfy or be excepted from the jurisdiction-first requirement, and allow the Court immediately to resolve Defendants' 12(b)(6) dismissal arguments.  Defendants are seeking the same deferral in the *Shatsky* case, for the same reasons.  With the Rule 12(b)(2) issue deferred here, the Court can immediately dismiss on the straightforward 12(b)(6) grounds addressed below.  If this case is not dismissed on those grounds, then the jurisdictional question would be ripe for decision following the Second Circuit's authoritative ruling in *Sokolow*.[5]

---

[5] If the Court nonetheless opts to address the PSJVTA issues now, then it should certify its PSJVTA ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) to allow appellate resolution alongside *Sokolow*.  *See Chavez v.*

Other than the PSJVTA, there are no colorable bases for general or specific jurisdiction over Defendants, given the Second Circuit's decision in *Waldman I*. 835 F.3d at 332-35 (the PA and PLO "are 'at home' in Palestine," and therefore "the district court could not properly exercise general personal jurisdiction over the defendants"); *id.* at 335-44 (rejecting specific jurisdiction over the PA and PLO because "mere knowledge that United States citizens might be wronged in a foreign country" is insufficient, and the "focal point of the torts alleged" was Israel, not the United States). The Amended Complaint itself forecloses specific jurisdiction under *Waldman I*, because it makes clear that the "focal point" of the defendant's suit-related conduct (and the harm suffered) was not the United States (*id.* at 340)[6], but rather that Jabarin's actions were both chaotic and random.[7]

Plaintiffs make the argumentative and speculative leap that "Jabarin had noticed that Ari [Fuld] had been wearing a skullcap with bold English lettering on it", such that Jabarin deduced that "Ari [Fuld] was a Jew and an American," and "[u]pon information and belief, . . . targeted [Mr. Fuld] because he was a Jewish American." *Id.* ¶ 107. The Court cannot credit such speculative and

---

*Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 537 (S.D.N.Y. 2018) ("28 U.S.C. § 1292(b) permits a district court, in its discretion, to certify an interlocutory appeal where the decision at issue (1) involves a controlling question of law (2) as to which there is substantial ground for a difference of opinion and (3) as to which an immediate appeal may materially advance the ultimate termination of the litigation."); *see In re A2P SMS Antitrust Litig.*, No. 12-CV-2656 (AJN) 2015 U.S. Dist. LEXIS 24909, at *10 (S.D.N.Y. Mar. 2, 2015) (the second prong "is met when … the issue is particularly difficult and of first impression for the Second Circuit.") (internal citations omitted).

[6] *See also Livnat*, 851 F.3d at 57-58 (rejecting specific jurisdiction over the PA for an indiscriminate overseas attack because there was no link between that attack and the PA's U.S. lobbying activities); *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1124-25 (D.C. Cir. 2019) (rejecting specific jurisdiction over the PA and PLO for an indiscriminate overseas attack because all of the alleged suit-related conduct took place in the occupied West Bank); *Shatsky v. PLO*, 955 F.3d at 1037 (rejecting specific jurisdiction over the PA and PLO for an indiscriminate overseas attack because defendants' alleged suit-related overseas conduct was not directed at the United States). The Supreme Court vacated and remanded *Klieman* to the D.C. Circuit "for further consideration in light of the [PSJVTA]," where it remains pending. *See Estate of Klieman v. Palestinian Auth.*, 140 S. Ct. 2713 (U.S., Apr. 27, 2020).

[7] Plaintiffs allege that Jabarin traveled to several different locations seeking to carry out a stabbing attack against IDF soldiers. Am. Compl. ¶¶ 103-105. Unable to fulfill his initial plan, Jabarin allegedly diverted to a "commercial compound mall" where he "planned to carry out his stabbing attack" outside a supermarket. *Id.* ¶ 106. Ultimately, Jabarin attacked Mr. Ari Fuld in the mall parking lot after he exited the mall. *Id.* ¶ 108.

implausible "information and belief" allegations.[8]  Even putting aside Plaintiffs' impermissible efforts at reading Jabarin's mind, those allegations in no way show that the <u>United States was the focal point</u> of the Attack, particularly when Plaintiffs' other allegations establish their contention that Jabarin intended to target <u>IDF soldiers</u>.  *See* Am. Compl. ¶¶ 103-105.

## II.  <u>PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE ATA, REQUIRING DISMISSAL OF THE "INTERNATIONAL TERRORISM" CLAIM.</u>

Despite Plaintiffs' amendment of their pleading, their claims remain legally insufficient under Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)); *Ahmad v. Christian Friends of Israeli Cmtys.*, 13 Civ. 3376 (JMF), 2014 U.S. Dist. LEXIS 62053, at *5 (S.D.N.Y. May 5, 2014) (same), *aff'd*, 600 F. App'x 800, 801 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *5.  The court may consider only well-pled factual allegations, *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014), and must ignore "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678 (citation omitted).

Plaintiffs' first claim for relief purports to be a claim for "International Terrorism Pursuant to 18 U.S.C. §2333."  Am. Compl. ¶¶ 116-124.  The ATA provides for both primary (or "material support") liability and secondary (aiding-and-abetting and conspiracy) liability.  Plaintiffs do not

---

[8] *See Rothbein v. City of New York*, 18-CV-5106 (VEC), 2019 U.S. Dist. LEXIS 32358, at *29 (S.D.N.Y. Feb. 28, 2019) (holding that information and belief allegations can be credited only "'where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible.'") (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

specify the provision(s) of the ATA they rely on for their claim.  Whether Plaintiffs intend to assert a claim for primary or secondary liability under the ATA, Plaintiffs' "international terrorism" claim fails fundamentally and must be dismissed because Plaintiffs have not plausibly alleged facts that would give rise to an ATA claim for the reasons set forth below.

### A.   Plaintiffs Do Not Plausibly Allege that Defendants Committed an "Act of International Terrorism."

For ATA primary liability, a plaintiff must plausibly allege (i) that defendant has violated a predicate criminal statute <u>and</u> (ii) the additional elements for the ATA civil cause of action established in 18 U.S.C. § 2333(a), including, *inter alia*, that a U.S. national was injured or killed "by reason of an act of international terrorism."  *See Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553 (E.D.N.Y. 2012) ("Like a civil RICO claim, a suit for damages under the ATA is akin to a Russian matryoshka doll, with statutes nested inside of statutes.") (quotation and citation omitted).

Section 2331 defines "international terrorism" to <u>require</u> that a defendant's own acts "involve violence or endanger human life" and "appear to be intended to intimidate or coerce a civilian population or to influence or affect a government."  *Linde v. Arab Bank PLC*, 882 F.3d 314, 326 (2d Cir. 2018).  To state a viable claim for primary liability, Plaintiffs must plausibly allege that Defendants <u>themselves</u> committed an act of "international terrorism."  *See*, *e.g.*, *Linde*, 882 F.3d at 320-22; *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).

### 1.   Plaintiffs Do Not Plausibly Allege that Defendants Acted with the Required Terroristic Intent.

Plaintiffs do not plausibly allege that Defendants' acts "appear[ed] to be intended to intimidate or coerce a civilian population or to influence or affect a government," *Linde*, 882 F.3d at 326.  This is an objective test that "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions."  *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014) (citation omitted).

Courts regularly dismiss ATA claims where, as here, plaintiffs have failed to plausibly allege that a defendant acted with terroristic intent, as required by Section 2331(1).  More particularly, courts hold that even payments made to those who may be generally engaged in violent activities do not satisfy the ATA's terroristic-intent requirement absent some plausible allegation that those payments reflected the defendant's own intentional involvement in a terrorist attack.

In *Brill v. Chevron Corp.,* No. 15-cv-04916, 2017 U.S. Dist. LEXIS 4132, at *9-10 (N.D. Cal. Jan. 9, 2017), Chevron allegedly paid illegal surcharges and "kickbacks" to Saddam Hussein's regime in Iraq in connection with oil contracts, which allegedly "contributed to the funds Hussein used to incentivize terrorist attacks."  Nonetheless, the court held that it was "impossible" to say that plaintiffs had sufficiently alleged Chevron's terroristic intent, in part because Chevron was "alleged at most to have made payments to third parties."  *Id.* at *18-20.  Similarly, in *Stansell v. BGP, Inc.*, No. 8:09-cv-2501-T-30AEP, 2011 U.S. Dist. LEXIS 39808, *26 (M.D. Fla. Mar. 31, 2011), defendants allegedly made payments directly to an FTO in exchange for the FTO's agreement that defendants would not be targeted by terrorist acts.  The court held that those payments "would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B)."  *Id.*  These holdings are consistent with the Second Circuit's decision in *Linde*, 882 F.3d at 326-27 and 332, which held that even the provision of material support to a terrorist organization does not, without more, satisfy the terroristic intent requirement of § 2331.

Here, Plaintiffs allege that Defendants (1) provide payments to Palestinians incarcerated in Israeli prisons or their families or designees (*see* Am. Compl. ¶¶ 33, 44, alleging that this program has been codified in Palestinian law since 2004), and (2) provided "at least one" post-attack payment pursuant to this policy to a third party—Jabarin's family—while he was in prison.  Am. Compl. ¶¶ 64, 113.  Another judge of this Court already has held that such payments cannot be taken as

evidence of PA or PLO support for a terrorist attack.  *Sokolow v. PLO*, 60 F. Supp. 3d at 517 n.11 ("[a] showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that [the remitter was] somehow responsible for the attacks.").

> ### 2. Plaintiffs Fail to Plausibly Allege that Defendants Engaged in "Violent Acts or Acts Dangerous to Human Life."

For similar reasons, Plaintiffs also fail to allege facts to support a reasonable inference that Defendants engaged in activities that "involve violent acts or acts dangerous to human life" sufficient to constitute an act of "international terrorism" under Section 2331(1).  In the paragraphs describing the Attack, Am. Compl. at ¶¶ 101-110, neither Defendant is even mentioned, much less alleged to have played any role whatsoever in planning or committing the Attack.  Instead, Plaintiffs fall back on their allegations that Jabarin's family received post-attack payments pursuant to Palestinian law.  *Id.* ¶¶ 64, 113.  But the Second Circuit has rejected the notion that even "the provision of material support to a terrorist organization"—not at issue here—"invariably equate[s] to an act of international terrorism."  *Linde*, 882 F.3d at 326.  Post-attack payments to third-parties who are not charged with wrongdoing, without more, cannot be an act that is violent or dangerous to human life.  No more is alleged here.

> ### B. Plaintiffs Do Not Plausibly Allege Defendants Provided Funds to an FTO, or Knew or Intended that Such Funds Would be Used for a Terrorist Act.

The ATA's primary-liability provision also requires Plaintiffs to plausibly allege that Defendants committed a predicate criminal act with the requisite *mens rea*.  18 U.S.C. § 2331(1)(A); *see Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 (2d Cir. 2014). Plaintiffs have not alleged the violation of <u>any</u> predicate criminal statute, with the exception of "criminal solicitation" statutes which, for the reasons set forth below, do not plausibly state a claim. Moreover, Plaintiffs could not plausibly allege a violation of the predicate statutes set forth in the ATA itself, 18 U.S.C. 2339A, 2339B, or 2339C.

Section 2339A requires Plaintiffs to plausibly allege that Defendants "provide[d] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out," the Attack.  18 U.S.C. § 2339A; *see United States v. Ghayth*, 709 F. App'x 718, 722-23 (2d Cir. 2017) (summary order) (quoting § 2339A); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *7-8 (for a § 2339A claim, "the defendant must have known or intended that the support would be used in preparation for, or in carrying out, violations of certain federal criminal statutes.") (citing *Gill*, 893 F. Supp. 2d at 504).  Section 2339C similarly requires Plaintiffs to plausibly allege that Defendants "provid[ed] or collect[ed] funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out" the Attack.  18 U.S.C. § 2339C; *see Ahmad,* 2014 U.S. Dist. LEXIS 62053, at *8 (for a § 2339C claim, "the defendant must have intended or known that such funds would be used to carry out terrorist attacks.") (citing *Gill*, 893 F. Supp. 2d at 504).

Plaintiffs have not alleged that Defendants had prior knowledge of the Attack or provided <u>any</u> support or resources to (or even had any contact whatsoever with) Jabarin.  Plaintiffs have alleged only that Defendants made a payment to Jabarin's family well <u>after</u> Jabarin allegedly carried out the Attack.  Given that the Attack had already occurred at the time of the alleged payment, Plaintiffs have not alleged—and could not plausibly allege—that Defendants made such payment to Jabarin knowing or intending that the funds would be used to prepare for, or carry out, the Attack.

Section 2339B, on the other hand, explicitly requires a showing that the defendant provide support or resources "to a foreign terrorist organization," 18 U.S.C. 2339B(a)(1).  Plaintiffs have not alleged that Jabarin was a member of, or affiliated with, any FTO, or that any FTO was involved in planning or committing the Attack.  *See Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *6 n.1 (disregarding § 2339B claim where complaint did not allege that attacks were committed by an FTO).

C.    **Plaintiffs Do Not Plausibly Allege Any Connection Between Purported Statements by President Abbas and the Attack by a Third-Party, Jabarin.**

Plaintiffs allege for the first time in their Amended Complaint that statements purportedly made by Palestinian President Mahmoud Abbas were somehow a "direct and proximate" cause of Plaintiffs' injuries.  *See* Am. Compl. ¶¶ 96-97, 122.  Specifically, Plaintiffs allege that President Abbas stated in July 2018 that payments to "the families of martyrs and prisoners" would continue. *Id.* ¶ 96.  Plaintiffs also allege that on September 15, 2018, President Abbas gave a private speech before the PLO Executive Committee in which he stated that "Israel was planning to establish special Jewish prayer zones inside the Al-Aqsa Mosque, and that Palestinians, together with Jordan, would be bringing the issue before the International Criminal Court and the International Court of Justice." *Id.* ¶ 97.  Plaintiffs then allege, without factual basis, that those statements "were incentives and catalysts that directly and proximately caused [Jabarin] to commit his terrorist attack and murder Ari Yoel Fuld," *id.* ¶ 98.  They also cite an online report for the unsupported allegation that after the Attack, two U.S.-designated terrorist groups, Palestinian Islamic Jihad and Hamas, "confirmed" the link between President Abbas's statement and the Attack.  *Id.* ¶ 99. Plaintiffs also allege that Defendants, presumably through these statements by President Abbas, engaged in "criminal solicitation" of Jabarin, *id.* ¶ 117.

These new allegations only serve to underscore the fatal flaws in Plaintiffs' claims:  that Defendants did not employ, control, direct, communicate with, or have any contact whatsoever with Jabarin, and did not have advance knowledge of the Attack or facilitate it in any way.  Nowhere in the Amended Complaint is it alleged that Jabarin was even <u>aware</u> of the alleged statements by President Abbas from July and September 2018, let alone that the statements motivated Jabarin to commit any act of violence.  Nor do Plaintiffs plausibly allege how President Abbas's purported statements could have constituted "solicitation" or "incitement" or "encouragement" of the Attack

when, by Plaintiffs' own allegations, President Abbas was advocating for a peaceful diplomatic response by Palestinians and Jordan before neutral international bodies.  *Id.* ¶ 97.  As to the rank hearsay by which Plaintiffs allege that Hamas and Islamic Jihad "confirmed" that the Attack committed by Jabarin was somehow linked to President Abbas's statements, Plaintiffs do not plausibly allege that Jabarin was affiliated with or had contact with either of those groups or their basis for asserting Jabarin's motivation for committing the Attack.  Put simply, Plaintiffs' last-ditch effort to tie the third-party attacker to Defendants through statements made by President Abbas are nothing more than baseless speculation that cannot be credited even on a Rule 12(b)(6) motion.[9]

### D.   The Complaint Fails to Plausibly Allege Proximate Cause.

To state a claim for ATA primary liability, Plaintiffs must also plausibly allege facts showing that their injuries occurred "by reason of" an act of international terrorism committed by Defendants. The Second Circuit has interpreted the "by reason of" language to require a showing that the defendant's acts proximately caused plaintiff's injury.  *See Rothstein*, 708 F.3d at 95; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123-24 (2d Cir. 2013); *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *12 ("It is well established that an ATA plaintiff must plead proximate causation.") (citations omitted), *aff'd*, 600 F. App'x at 801 ("We agree . . . that plaintiffs failed plausibly to allege the requisite proximate causation to state a claim for relief under the ATA.") (citations omitted).

Therefore, Plaintiffs must plausibly allege that each Defendant's purported conduct was "a substantial factor in the sequence of responsible causation," and that Plaintiffs' injuries were "reasonably foreseeable or anticipated as a natural consequence."  *Rothstein*, 708 F.3d at 91 (quoting

---

[9] Nor do President Abbas' remarks, calling for peaceful action before international bodies, constitute criminal solicitation under New York state or federal law.  18 U.S.C. § 373 "makes it a crime to 'solicit[], command[], induce[], or otherwise endeavor[] to persuade' another person to commit a crime of violence," *United States v. Rahman*, 189 F.3d 88, 117 (2d Cir. 1999) (emphasis added).  Those circumstances are absent here; President Abbas did not encourage any act of violence.

*Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)) (emphasis in original).  "In the context of an ATA action, proximate causation requires non-conclusory, plausible allegations of 'a proximate causal relationship between the cash transferred ... and the terrorist attacks ... that injured plaintiffs.'"  *Ahmad*, 2014 U.S. Dist. LEXIS 62053, at *12 (quoting *Rothstein*, 708 F.3d at 97).

Plaintiffs have not met and cannot meet this standard.  Plaintiffs do not allege that Defendants participated in the Attack or provided support or resources to Jabarin, the alleged perpetrator of the Attack.  Plaintiffs have not alleged, and cannot plausibly allege, that Defendants provided any funds that were used to commit the Attack, or that Jabarin would not have been able to carry out the Attack absent those funds.  Plaintiffs allege only that Defendants made payments to Jabarin's family, not Jabarin himself, after the Attack and while Jabarin was in prison.  Plaintiffs have not even alleged that any funds Defendants sent to Jabarin's family <u>after</u> the attack were ultimately provided to Jabarin.

Where, as here, a defendant's actions have an attenuated connection to the attacker himself, courts regularly hold that plaintiffs fail to plausibly allege proximate cause.  *See Atchley v. AstraZeneca UK Ltd.*, No. 17-2136, 2020 U.S. Dist. LEXIS 126469, at *27 (D.D.C. July 17, 2020) ("'[T]he presence of an independent intermediary' makes a defendant 'more than one step removed from a terrorist act or organization,'" and therefore "'create[s] a more attenuated chain of causation'" than one in which payments are made "'directly to a terrorist organization.'") (quoting *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018)); *see Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525, 533 (S.D.N.Y. 2019).

Nor do Plaintiffs' conclusory and speculative allegations as to Jabarin's motivation for carrying out the Attack cure Plaintiffs' deficient Amended Complaint.  Plaintiffs allege "[u]pon information and belief" that Jabarin "decided to become a 'shahid,' a 'martyr,'" Am. Compl. ¶ 101, and speculate that the Attack "was a natural by-product" of payments administered pursuant to

Palestinian law to "families of Palestinians who engage in acts of terrorism and to individuals incarcerated in Israeli prisons," *id.* ¶ 111.  But Plaintiffs' allegations as to Jabarin's motivations are speculative and conclusory, because the Complaint does not make any fact-based allegation that Jabarin knew his family would receive any payment after the Attack, much less that he was motivated by the prospect of such payments.  *See Shatsky v. PLO*, No. 02-2280 (RJL), 2017 U.S. Dist. LEXIS 94946, at *32 (D.D.C. June 20, 2017) ("plaintiffs have pointed to no evidence" that the assailant knew of or was motivated by the prospect of post-attack, posthumous payments to his family, and, "without more, these after-the-fact payments [to surviving families] are not sufficient for a reasonable jury to conclude that defendants proximately caused the" attack), *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020) (citing *Sokolow*, 60 F. Supp. 3d at 517 n.11).  Nor, for the reasons set forth above, have Plaintiffs plausibly alleged that any purported statements by President Abbas proximately caused the Attack.

Accordingly, at best Plaintiffs have alleged nothing more than post-attack financial support to Jabarin's family.  As a matter of law, these allegations are not sufficient to plausibly allege Defendants' legal responsibility for Jabarin's actions, much less a proximate-cause connection of Defendants' alleged payments to the Attack.  "A showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that [the remitter was] somehow responsible for the attacks."  *Sokolow*, 60 F. Supp. 3d at 517 n.11.

Plaintiffs also fail to plausibly allege that the Attack was "reasonably foreseeable or anticipated as a natural consequence" of Defendants' alleged post-Attack payment to Jabarin's family.  *Rothstein*, 708 F.3d at 91 (quoting *Lerner*, 318 F.3d at 123).  It defies logic that an attack could be "foreseeable" or "anticipated" as a result of a payment allegedly made <u>after</u> the attack and while the alleged attacker was in prison.  In sum, Plaintiffs' allegations are simply "too speculative [and]

attenuated to raise a plausible inference of proximate causation," and Plaintiffs' claim for "international terrorism" must be dismissed. *Fields v. Twitter*, 200 F. Supp. 3d 964, 974 n.4 (N.D. Cal. 2016) (citations omitted), *aff'd* 881 F.3d 739 (9th Cir. 2018).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING LIABILITY UNDER 18 U.S.C. § 2333(D).

To the extent Plaintiffs' "international terrorism" claim can be charitably read to assert a claim for JASTA aiding and abetting liability, Plaintiffs fail to plausibly allege the essential elements identified by the Second Circuit in *Linde* and *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019), for a JASTA secondary-liability claim.  First, and most obviously, Plaintiffs do not plausibly allege that that their injuries arise from "an act of international terrorism committed, planned, or authorized" by an FTO.  Second, Plaintiffs do not plausibly allege that either Defendant "knowingly and substantially assist[ed] the principal violation," namely the Attack.  *Siegel*, 933 F.3d at 223 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).  Third, Plaintiffs do not plausibly allege that either Defendant was "aware" that it was assuming a "role" in the Attack or in any other violent or life-endangering activity.

### A.   Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted an FTO.

JASTA is plain that, in order to state a claim for secondary liability, a plaintiff must plausibly allege (and later show) that his or her injury arises from "an act of international terrorism committed, planned, or authorized" <u>by an FTO</u>, and that the defendant "knowingly provid[ed] substantial assistance" to the "person who committed" the terrorist act.  18 U.S.C. § 2333(d)(2).  "The ATA does not provide for secondary liability unless the act of international terrorism in question was carried out by an entity formally designated as a foreign terrorist organization." *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 355 (E.D.N.Y. 2019) (citing § 2333(d)(2)), *aff'd*, 19-3355-cv, 2020 U.S. App. LEXIS 32730 (2d Cir. Oct. 16, 2020) (summary order); *see Atchley*, 2020 U.S. Dist. LEXIS 126469,

at *34-35 ("General support or encouragement is not enough. . . .  Congress opted for a more limited

statute, circumscribing aiding-and-abetting liability to situations where an FTO *itself* had a significant

role in a particular attack.") (emphasis in original, citation omitted).

To the extent Plaintiffs' "international terrorism" claim can be read as a JASTA claim—

for either aiding-and-abetting or conspiracy liability—it must be dismissed because the Complaint

does not allege that the Attack was "committed, planned, or authorized" by an FTO, as required

by the plain language of § 2333(d)(2).  This alone defeats any claim under JASTA.

### B.   Plaintiffs Have Not Alleged, And Could Not Plausibly Allege, that Defendants Knowingly and Substantially Assisted the Attack.

"Congress, in enacting JASTA, instructed that the 'proper legal framework for how [aiding

and abetting] liability should function' under the ATA is that identified in" *Halberstam v. Welch*,

705 F.2d 472 (D.C. Cir. 1983).  *Linde,* 882 F.3d at 329 (quoting 18 U.S.C. § 2333 Statutory Note)

(alterations in original).  In *Halberstam*, "the D.C. Circuit indicated that . . . the assistance given by

the defendant should play a 'major part in prompting the tort' or be 'integral' to the tort in order to

be considered substantial assistance." *Taamneh v. Twitter, Inc.*, 343 F. Supp. 3d 904, 918 (N.D. Cal.

2018) (internal citations and quotations omitted).

*Halberstam* identified six factors relevant to determining "how much encouragement or

assistance is substantial enough" to satisfy the requirement that the defendant "must knowingly and

substantially assist the principal violation"—that is, the Attack at issue here.  *Linde*, 882 F.3d at 329

(quoting *Halberstam*, 705 F.2d at 487).  Those six factors are: (1) the nature of the act encouraged;

(2) the amount of assistance given by defendant; (3) defendant's presence or absence at the time of

the tort; (4) defendant's relation to the principal; (5) defendant's state of mind; and (6) the period of

defendant's assistance.  *Id.* (citing *Halberstam*, 705 F.2d at 483-84); *see also Goldberg v. UBS AG*,

660 F. Supp. 2d 410, 425-26 (E.D.N.Y. 2009) ("It has long been recognized that 'substantial assistance' means more than just a little aid.") (internal quotation and citation omitted).

Plaintiffs have not alleged, and cannot plausibly allege, that either Defendant provided substantial assistance to the Attack or to Jabarin. The Complaint contains no allegations that either Defendant ever provided <u>any</u> assistance, or ever had any contact or "relation" <u>whatsoever</u> with, Jabarin. Defendants were not present during the Attack. There is no allegation that either Defendant provided <u>any</u> funds or any other assistance, for <u>any</u> period of time, to Jabarin. Plaintiffs allege only that Defendants made payments to Jabarin's <u>family</u>, <u>long after</u> the Attack. But Plaintiffs have not plausibly alleged facts that would establish that Jabarin was even aware of this program, much less that it motivated or incentivized him to commit the Attack. Finally, as explained *supra*, the Complaint does not plausibly allege that Defendants harbored terroristic intent, or indeed that either Defendant had any prior knowledge that Jabarin intended to commit the Attack or any other violent act.

It is axiomatic that a payment to Jabarin's family that allegedly occurred well <u>after</u> the Attack had already taken place could not logically have "substantially assisted" in the Attack. Just as alleged after-the-fact payments to the family of Jabarin are insufficient to establish <u>substantial</u>-factor proximate cause for a primary-liability ATA claim, *see Sokolow*, 60 F. Supp. 39 at 517 n.11, and *Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *32, such alleged payments also cannot establish the knowing and <u>substantial</u> assistance required for a JASTA aiding-and-abetting claim. Put another way, Defendants are too far "down the causal chain" for Plaintiffs to establish JASTA aiding-and-abetting liability for the Attack. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395-96 (7th Cir. 2018).

### C.   Plaintiffs Have Not Alleged, and Could Not Plausibly Allege, that Defendants Were "Aware" They Were "Assuming a Role" in Violent Terrorist Activity.

To state an aiding and abetting claim, Plaintiffs also must plausibly allege that "the secondary actor"—here, Defendants—is "'aware' that, by assisting the principal, it is itself assuming a 'role'

in terrorist activities." *Linde*, 882 F.3d at 329 (quoting *Halberstam*, 705 F.2d at 477); *see O'Sullivan v. Deutsche Bank AG*, Case No. 17 CV 8709, 2019 U.S. Dist. LEXIS 53134, at *39 (S.D.N.Y. Mar. 28, 2019) ("[T]he Complaint must allege plausibly that ... Defendants were 'generally aware' that they were ... playing a 'role' in an FTO's violent or life-endangering activities.").

Plaintiffs have failed to plausibly allege that Defendants were "aware" that they were playing a "role" in Jabarin's terrorist activities.  As noted above, Plaintiffs do not allege that either Defendant had any contact <u>whatsoever</u> with "the principal"—allegedly Jabarin.  And Defendants' alleged post-Attack payments to Jabarin's family do not support an inference that Defendants were "aware" that they were playing a "role" in that Attack.

## IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY OR FOR CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333(D).

"The crux of any conspiracy is an agreement between the co-conspirators."  *Kemper*, 911 F.3d at 395 (citing *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)).  "Although 'a conspirator [need] not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the <u>specific intent</u> that' the conspiratorial goal be completed."  *Id.* (emphasis and alteration in original).  Indeed, "one cannot join a conspiracy by apathy" even where one "knows that his or her actions might somehow be furthering that conspiracy."  *Id.* (quoting *United States v. Collins*, 966 F.2d 1214, 1219-20 (7th Cir. 1992)).

Further, JASTA requires Plaintiffs to link the alleged agreement to the "act of international terrorism" for which they sue.  *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at *35 (The "plain language of JASTA … suggests that JASTA liability lies where 'the secondary tortfeasor [conspired with] the principal tortfeasor in committing '<u>such an act</u> of international terrorism.'") (quoting *Taamneh*, 343 F. Supp. 3d at 916) (alteration and emphasis original).  Plaintiffs must therefore present evidence that the co-conspirators' activities were "so coordinated or monolithic that [they]

shared a common purpose or plan[.]" *O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, at \*37.  "[T]he further down the causal chain a defendant sits, the more diligent a plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement[.]" *Kemper*, 911 F.3d at 395-96.

Plaintiffs' "international terrorism" claim, to the extent it can be read as asserting a JASTA conspiracy claim, fails under these standards (as does Plaintiffs' non-federal civil conspiracy claim). The Complaint does not plausibly allege that Defendants agreed with Jabarin to commit any act of "international terrorism" as defined in the ATA, let alone the Attack at issue here.  *See O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, \*35 (for a JASTA conspiracy claim, "a defendant must have conspired to commit an act of international terrorism."); *Kaplan*, 405 F. Supp. 3d at 534 ("Plaintiffs must allege that Defendant and [an FTO] entered into an agreement to commit an act of international terrorism").

Plaintiffs also fail to plausibly allege that either Defendant "conspire[d] directly with the person or entity"—here, Jabarin—"that committed the act of international terrorism that injured the plaintiff." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 98 n.41 (E.D.N.Y. 2019). Indeed, Plaintiffs do not even allege <u>any</u> communications or contact whatsoever between either Defendant and Jabarin.  Plaintiffs now allege "solicitation" based on a public speech by President Abbas, but they do not plausibly allege that Jabarin was even aware of the speech or ever had any contact with Defendants.  For the same reasons that Plaintiffs have not plausibly alleged that Defendants knew or intended that a post-imprisonment payment to Jabarin's family would be used to fund, prepare for or commit the Attack or any other violent act (*supra* at II(B)), the Complaint does not plausibly allege that Defendants <u>agreed</u> with Jabarin or anyone else to perpetrate or facilitate the Attack or any other violent act.  Instead, as Plaintiffs concede, any payments made to Jabarin's family were made not pursuant to any agreement, but pursuant to a Palestinian law broadly applicable to Palestinians incarcerated in Israel.  Am. Compl. ¶¶ 36-37, 44.

## V.   PLAINTIFFS' NON-FEDERAL CLAIMS MUST BE DISMISSED BECAUSE DEFENDANTS LACK CAPACITY TO BE SUED.

"Courts that have considered this issue agree that" the PA and PLO "are most appropriately treated as unincorporated associations." *Sokolow*, 60 F. Supp. 3d at 523-24 (collecting cases); *see Waldman I*, 835 F.3d at 332 ("both [the PA and PLO] are unincorporated associations."); *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37, 48 (D.D.C. 2015) ("With respect to service of process and to amenability to suit, other district court judges have treated the Palestinian Authority as an unincorporated association.") (citing *Sokolow*, 60 F. Supp. 3d at 524, and *Estate of Klieman v. Palestinian Auth.*, 467 F. Supp. 2d 107, 113 (D.D.C. 2006)).

Under N.Y. C.P.L.R. § 1025, unincorporated associations lack the capacity to be sued. Accordingly, pursuant to § 1025 and Fed. R. Civ. P. 17(b)(3), "Defendants do not have the capacity to be sued on Plaintiffs' non-federal claims under New York law," and Plaintiffs' non-federal claims must be dismissed. *Sokolow*, 60 F. Supp. 3d at 523 (dismissing non-federal claims against PA and PLO); *see also Estate of Parsons v. Palestinian Auth.*, No. 07-cv-1847, 2008 U.S. Dist. LEXIS 124833, at *13-14 (D.D.C. Sept. 30, 2008) (holding that the PA and PLO are unincorporated associations and dismissing non-federal claims); *Shatsky*, 2017 U.S. Dist. LEXIS 94946, at *33-36, *vacated and remanded for dismissal on other grounds*, 955 F.3d 1016 (D.C. Cir. 2020).[10]

## VI.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED BUT-FOR CAUSATION, AS REQUIRED FOR A NEGLIGENCE CLAIM UNDER ISRAELI LAW.

To the extent that Israeli law applies, Plaintiffs' negligence claim must be dismissed because the Complaint does not allege, and could not plausibly allege, that Defendants' actions

---

[10] Seeking to avoid this result, Plaintiffs have lifted from *Sokolow* the baseless assertion that Defendants are properly considered "public bod[ies]" under New York law. Am. Compl. ¶¶ 9-10. But this specific argument was pressed against these same Defendants in *Sokolow*, and then on appeal to the Second Circuit in *Waldman I*. Both the district court and the Second Circuit firmly rejected this argument, and held—consistent with every other court to have decided this issue—that the PA and the PLO "are unincorporated associations." *Waldman I*, 835 F.3d at 332. The Second Circuit's holding in *Waldman I* is binding and requires rejection of Plaintiffs' argument here.

were the "but-for" cause of Plaintiffs' injuries.  "Israeli courts determine factual causation under the tort of negligence by applying a but-for causation test." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 63 (D.D.C. 2010) (citing CA 148/80 *Vaknin v. Beit Shemesh Local Council* 37(1) PD 113, 133 [1982] (Isr.)).  "'[T]he meaning of this test is that a breach of the duty is a factor *sine qua non*' resulting in injury, not merely a 'fundamental and substantial factor' contributing to injury." *Id.* (quoting *Vaknin*, 37(1) PD at 144).

## VII.   PLAINTIFFS' NINTH CAUSE OF ACTION MUST BE DISMISSED.

Plaintiffs' ninth cause of action, for "vicarious liability/respondeat superior," fails to plausibly state a claim for at least two reasons (independent of the flaws discussed *supra*).  First, Plaintiffs have not plausibly alleged that Jabarin was ever employed by, or indeed ever had any contact with, either Defendant.  *See De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387, 417 (S.D.N.Y. 2015) ("The key element of respondeat superior . . . is an employment relationship between the alleged tortfeasor and the party that the plaintiff is seeking to hold vicariously liable.") (quoting *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007)).  Second, as a matter of law, a vicarious liability claim cannot be sufficiently stated on the sole basis of post-attack payments by the Palestinian government.  Plaintiffs' fact-free, conclusory statement that Defendants "authorized or ratified, and condoned, encouraged, incentivized, and incited" Jabarin's acts, Am. Compl. ¶ 167, cannot be credited even on a Rule 12 motion.  As in *Sokolow*, "Plaintiffs seem to argue that Defendants' [alleged] post-attack 'ratification' of [Jabarin's] actions" is itself unlawful. 60 F. Supp. 3d at 517 n.11.  But "[a] showing of support—even post-attack financial support to the families of terrorists— is not sufficient to demonstrate that Defendants were somehow responsible for the attack[]." *Id.*[11]

---

[11] Likewise, Plaintiffs have not plausibly alleged that an independent cause of action for "inducement" exists, when Plaintiffs do not even allege that Defendants had any contact with Jabarin, or that he was ever an official, agent, or employee of either Defendant, nor that Defendants had any involvement whatsoever in the Attack.

## <u>CONCLUSION</u>

Plaintiffs' Amended Complaint should be dismissed with prejudice.

Dated: November 9, 2020                    Respectfully submitted,
                                           **SQUIRE PATTON BOGGS (US) LLP**


                                           /s/ *Gassan A. Baloul*
                                           Gassan A. Baloul (GB-4473)
                                           gassan.baloul@squirepb.com
                                           Mitchell R. Berger (MB-4112)
                                           mitchell.berger@squirepb.com
                                           2550 M Street, N.W.
                                           Washington, D.C. 20037
                                           Telephone: (202) 457-6000
                                           Facsimile:  (202) 457-6315

                                           Joseph S. Alonzo (JA-1378)
                                           joseph.alonzo@squirepb.com
                                           1211 Avenue of the Americas, 26th Floor
                                           New York, New York 10036
                                           Telephone: (212) 872-9800
                                           Facsimile:  (212) 872-9815

                                           *Attorneys for Defendants Palestine Liberation*
                                           *Organization and Palestinian Authority*