# EXHIBIT 1



Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C. 20037

O  +1 202 457 6000
F  +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T  +1 202 457 6155
gassan.baloul@squirepb.com

July 17, 2020

The Honorable Pierre N. Leval
The Honorable John G. Koeltl
c/o Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals
for the Second Circuit
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

**Re:** **Defendants' Letter Brief in *Sokolow v. Palestinian Authority*, Nos. 15-3135 & 15-3151 ("*Sokolow I*").**

Dear Judges Leval and Koeltl:

Defendants Palestinian Authority ("PA") and Palestine Liberation Organization ("PLO") respectfully submit this supplemental letter brief concerning the Supreme Court's recent order for further consideration in light of the Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No. 116-94, § 903, 18 U.S.C. § 2334 (Dec. 20, 2019) ("PSJVTA").

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities. Please visit squirepattonboggs.com for more information.

## Introduction

This Court should reinstate its denial of Plaintiffs' motion to recall the mandate. Deciding whether "extraordinary" circumstances justify recalling the mandate in this long-closed case (*Sokolow I*) is left to this Court's discretion. This Court previously decided that prudential and finality interests were best served by requiring Plaintiffs to use their fit-for-purpose re-filed lawsuit, *Sokolow v. PLO*, No. 18-cv-12213 (S.D.N.Y.) ("*Sokolow II*"), to develop new jurisdictional facts under a new statute. *Waldman v. PLO*, 925 F.3d 570, 575 (2d Cir. 2019) ("*Waldman II*"). Nothing about the PSJVTA alters this Court's original logic or forecloses the reinstatement of its decision not to recall the mandate.

Contrary to Plaintiffs' argument, a GVR does not nullify the antecedent appellate decision, nor does it decide the merits of any issue. All circuits agree that a GVR "does not make a decision on the merits of the case nor dictate a particular outcome." *Cole v. Carson*, 935 F.3d 444, 450 n.21 (5th Cir. 2019) (collecting cases). Rather, it requires only "further consideration" of the appellate *status quo ante* in light of subsequent developments. *Amara v. CIGNA Corp.*, 775 F.3d 510, 531 (2d Cir. 2014); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1473-74

(Fed. Cir. 1998) (a GVR "merely requires further consideration" of the antecedent appellate decision). Plaintiffs' claims to the contrary contradict decades of Supreme Court practice and precedent.

When, as here, the prior decision rests on matters within this Court's discretion—*i.e.*, the mandate-recall issue—this Court retains its discretion post-GVR to reinstate its original decision, so long as the reasons guiding the Court's original exercise of discretion are not foreclosed by the new law that prompted the GVR. *Amara*, 775 F.3d at 531. This Court regularly exercises its post-GVR discretion to "readopt" and "reinstate" its original decision when it sees "no reason to question" or "revisit" the soundness of that decision given "previous[] consider[ation]" of the same issue and prudential doctrines that subsequent developments do not impair. *Peterson v. Iran*, No. 15-0690, 2020 U.S. App. LEXIS 19747, *6-8 (2d Cir. June 22, 2020).

Nothing about the PSJVTA impairs this Court's antecedent decision not to recall the mandate or prevents this Court from re-adopting that decision. On the contrary, the driving prudential considerations for that decision remain fully intact. First, recalling the mandate is reserved for "extraordinary" and "grave" situations where

there is no effective alternative to prevent injustice, and no extraordinary circumstances are present here. *Calderon v. Thompson*, 523 U.S. 538, 566 (1998). <u>Second</u>, as this Court has already recognized, Plaintiffs' re-filed lawsuit provides a purpose-built and pending alternative for consideration of future fact developments that may bear on jurisdiction.

The PSJVTA itself does not give this Court reason to recall its mandate, as it would create jurisdiction over Defendants only upon the satisfaction of narrow factual constraints which Plaintiffs do not yet (and may never) satisfy. Plaintiffs make much of the need for district court fact-finding on whether the PSJVTA's jurisdictional predicates can be met. But that is not the issue. The issue is whether *Sokolow II* remains a better vehicle for fact-finding than recalling the *Sokolow I* mandate, as this Court originally decided. On that issue, nothing about the PSJVTA alters this Court's original decision that *Sokolow II* is the better vehicle for exploring jurisdictional developments post-dating *Sokolow I*.

Plaintiffs can hardly argue to the contrary. All parties agree that Congress cannot, and in the PSJVTA did not, divest this Court of its exclusive discretionary power to decide whether to reopen the long-closed case of *Sokolow I*.

This Court's original logic is reinforced by a recent decision of the D.C. Circuit that any post-decisional factual developments relevant under the PSJVTA are better addressed in a re-filed lawsuit than by way of remand in the original lawsuit. *See Shatsky v. PLO*, 955 F.3d 1016, 1038 (D.C. Cir. 2020). Indeed, in *Shatsky* as here, the plaintiffs already have, and are pursuing, a pending re-filed case that they purposefully designed as a vehicle to develop post-decisional jurisdictional facts.

Further, there is no reason to favor *Sokolow I* as the better vehicle for fact-development concerning the PSJVTA. Even if, in Plaintiffs' best-case scenario, they eventually show that PSJVTA factual predicates are met, that would not allow the district court to reinstate its prior judgment, which this Court vacated for lack of jurisdiction. Proceedings that are void for lack of jurisdiction cannot be rewound, and judgments voided for lack of jurisdiction cannot be reinstated, by a post-judgment acquisition of jurisdiction. Hence, there would be no saving of time or effort by dictating fact-development in *Sokolow I* contrary to this Court's original refusal to recall the *Sokolow I* mandate.

None of the PSJVTA's factual predicates has been met on the *Sokolow I* record—and Plaintiffs present only speculation they will be

met in the future—rendering all potentially relevant jurisdictional facts *prospective* only. The PSJVTA's focus on facts that post-date *Sokolow I* thus reinforces that *Sokolow II* is the more appropriate vehicle for developing Plaintiffs' new jurisdictional arguments. Plaintiffs' re-filed lawsuit also allows resolution of the statutory-predicate and construction issues before proceeding to the substantial constitutional questions raised by Congress' decision to retrospectively change the jurisdictional rules of the game through a "deemed consent" scheme. Constitutional issues specifically implicated by Congress retroactively contriving jurisdiction in a closed case would be avoided by declining to recall the mandate here, while other constitutional issues could be litigated in the normal course of a new lawsuit.

Ultimately, it is an entirely discretionary and prudential decision for this Court to determine the better way for the district court to develop post-PSJVTA facts. This Court previously decided that the interest of appellate finality would be best served by requiring Plaintiffs to use their fit-for-purpose re-filed lawsuit (*Sokolow II*) to develop new jurisdictional facts post-dating *Sokolow I*. Neither the GVR nor the PSJVTA requires a different result, or alters this Court's original logic.

## STATEMENT OF THE CASE

**A.    This Court Held That The Exercise Of Personal Jurisdiction Over The PA And PLO Does Not Satisfy Due Process.**

Plaintiffs alleged violations of the Anti-Terrorism Act ("ATA") for attacks committed in Israel by nonparties who Plaintiffs asserted were assisted by Defendants. *Waldman v. PLO*, 835 F.3d 317, 324 (2d Cir. 2016) ("*Waldman I*"). Defendants renewed their motion to dismiss for lack of personal jurisdiction after *Daimler AG v. Bauman*, 571 U.S. 117 (2014). During a seven-week trial in 2015, Plaintiffs failed to prove that the attackers targeted Americans. *Waldman I*, 835 F.3d at 337-38. Instead, their experts opined that the "killing was indeed random." *Id.*

This Court reversed, and directed dismissal, for lack of personal jurisdiction. *Waldman I*, 835 F.3d at 330, 332-344. It held that Defendants were persons under the Fifth Amendment entitled to due process. *Id.* Defendants were not subject to general jurisdiction under *Daimler*, 571 U.S. at 122, because they were not "essentially at home" in the United States. *Id.* This Court found no specific jurisdiction under *Walden v. Fiore*, 571 U.S. 277 (2014), because there was no evidence Defendants took actions in the United States relevant to the attacks, and

- 7 -

the attacks "were not expressly aimed at the United States." *Waldman I*, 835 F.3d at 337. The fact that Americans were injured was "'random [and] fortuitous.'" *Id.* This Court's mandate issued on November 28, 2016.

The Solicitor General recommended that the Supreme Court deny Plaintiffs' subsequent petition for *certiorari*, explaining that *Waldman I* did not "implicate any conflict among the courts of appeals, or otherwise warrant this Court's intervention." Br. of U.S. as Amicus Curiae ("CVSG Br.") at 1, *Sokolow v. PLO*, No. 16-1071 (Feb. 22, 2018). The Supreme Court denied *certiorari*. *Sokolow v. PLO*, 138 S. Ct. 1438 (2018).

**B.    This Court Declined To Recall Its Mandate After Congress Passed The ATCA And Plaintiffs Filed A New Case On The Same Facts.**

Plaintiffs moved to recall this Court's mandate based on the Anti-Terrorism Clarification Act, Pub. L. No. 115-253, 132 Stat. 3184 (Oct. 3, 2018) ("ATCA"), which purported to create personal jurisdiction if Defendants accepted certain types of foreign aid or had an office "within the jurisdiction of the United States" under an Executive Branch waiver. Plaintiffs also refiled their claims in a new action less than three months later. *See Sokolow v. PLO*, No. 18-cv-12213 (S.D.N.Y.) ("*Sokolow II*").

- 8 -

In a similar case before the D.C. Circuit, the United States filed two amicus briefs stating that the factual prerequisites for jurisdiction under the ATCA had not been met. U.S. Briefs, *Klieman v. Palestinian Auth.*, No. 15-7034 (D.C. Cir. Feb. 15, 2019 & Mar. 13, 2019). The briefs explained that the PLO's UN Mission does not "fall within the terms of the ATCA" as it is not within the jurisdiction of the United States. *Id.*

This Court denied Plaintiffs' motion, finding that "[t]he plaintiffs have not shown that either factual predicate of Section 4 of the ATCA has been satisfied." *Waldman II*, 925 F.3d at 574-76. The decision also held that the "[c]ourt's interest in finality … weighs against recalling the mandate," explaining that "[r]ecalling the mandate now would offend 'the need to preserve finality in judicial proceedings.'" *Id.* (citation omitted). It also noted that the ATCA "does not suggest that courts should reopen cases that are no longer pending." *Id.* As Plaintiffs had already filed a new case to take advantage of new jurisdictional facts, this Court further emphasized that "[t]o the extent that there are any developments in the activities of the PA or the PLO that may subject them to personal jurisdiction under the ATCA, they can be raised in that case." *Id.*, n.2.

## C.     The Supreme Court Issued A GVR Order So This Court Could Consider The PSJVTA.

Plaintiffs petitioned for *certiorari* from this Court's refusal to recall the mandate, and while the petition was pending, Congress passed the PSJVTA. The PSJVTA states that Defendants are "deemed" to consent to personal jurisdiction if they take any action while "physically present in the United States" after January 4, 2020. § 2334(e)(1)(B). But it exempts (1) any office or activities that are "exclusively for the purpose of conducting official business of the United Nations;" (2) activities "exclusively" for meeting with U.S. or foreign officials, or as approved by the Secretary of State; and (3) legal representation. § 2334(e)(3)(A)-(E). Importantly, the PSJVTA also exempts "any personal or official activities conducted ancillary to" those allowed acts. § 2334(e)(3)(F).

The PSJVTA also states that Defendants are "deemed to have consented to personal jurisdiction" if they make payments after April 18, 2020, to persons imprisoned for, or to families of those who died committing, terrorist acts against U.S. nationals. § 2334(e)(1)(A).

The Supreme Court issued a GVR order, stating: "The petition for a writ of certiorari is granted. The judgment is vacated, and the case is remanded … for further consideration in light of the [PSJVTA]." Order

List, 590 U.S. ___ (Apr. 27, 2020). The Court also issued a GVR with identical language in *Klieman v. Palestinian Auth.* (Sup. Ct. No. 19-741), a direct-appeal case against Defendants from the D.C. Circuit. *Id.*

## ARGUMENT

### I. This Court Retains Its Discretion To Reaffirm Its Prior Decision Not To Recall The Mandate.

This Court should reaffirm its original decision that passage of new legislation does not justify recalling the mandate, and that Plaintiffs' better course is to pursue new jurisdictional theories in their new case. Recall of a mandate is a matter left within the "discretion" of the courts of appeals. *Waldman II*, 925 F.3d at 574. This Court's "discretion" remains undisturbed: Neither the Supreme Court through its GVR order nor Congress through the PSJVTA has directed this Court to open this closed case, or otherwise required this Court to recall its mandate.

Rather than address the mandate-recall issue, Plaintiffs argue that the language in this GVR—which is nearly-identical to every other GVR this term—took the decision to recall the mandate out of this Court's hands. That argument ignores decades of established law and practice. The GVR was not a decision on the merits, explicitly or implicitly, and

requires nothing but for this Court to re-decide the motion to recall the mandate after considering the PSJVTA.

## A. Neither The Supreme Court Nor Congress Directed This Court To Recall Its Mandate.

The Supreme Court did not decide the mandate recall issue now before this Court. That issue remains within this Court's discretion because a GVR is not a decision on the merits. A GVR "has no precedential weight and does not dictate how the lower court should rule on remand." *Texas v. United States*, 798 F.3d 1108, 1116-17 (D.C. Cir. 2015). All circuits agree that "when the Supreme Court grants, vacates, and remands ('GVRs') a case, it does not make a decision on the merits of the case nor dictate a particular outcome." *Cole*, 935 F.3d at 450 n.21 (collecting cases).

Courts uniformly reject claims like Plaintiffs are now making that a GVR pre-decides the issues or requires the court of appeals to change its decision. In *Hughes Aircraft Co.*, 140 F.3d at 1473-74, one party argued that the remand "effectively vacated" the appellate court's prior decisions such that the court had to "review anew the trial court's judgment." *Id. Hughes* held instead that a GVR "merely requires further consideration in light of a new Supreme Court decision" and does not

"nullify all prior proceedings." *Id.* (quoting *United States v. M.C.C. of Florida, Inc.*, 967 F.2d 1559, 1561 (11th Cir. 1992)). Nor does a GVR "create an implication that the lower court should change its prior determination." *Id.*

Plaintiffs' argument that the GVR "implicitly" took away this Court's discretion over the mandate-recall issue, Pl. Br. 15-18, also contravenes the purpose of a GVR to allow the court of appeals to "further consider[]" issues that are "within the court's discretion," *Amara*, 775 F.3d at 531. And this Court has held that "reconsideration" occurring after a GVR "must be limited to the scope of the Supreme Court's remand." *Escalera v. Coombe*, 852 F.2d 45, 47 (2d Cir. 1988). Plaintiffs themselves admit that a GVR requires only a "redetermination," and only that this Court "seriously confront[]" the PSJVTA. Pl. Br. 15 (quoting *Cavazos v. Smith*, 565 U.S. 1, 9 (2011)). Thus, a GVR gives an appellate court the opportunity to reconsider for itself the appellate *status quo ante* in light of the PSJVTA.

As a result, this Court can reinstate its prior discretionary decision based on its original "logic" so long as that logic is consistent with the PSJVTA—the "new provision" at issue in the GVR order. *Amara,* 775

F.3d at 531; *Robinson v. Ariyoshi*, 854 F.2d 1189, 1189-90 (9th Cir. 1988) (a GVR requires review "in light of [the new law] and nothing more"). This Court regularly exercises its discretion to reinstate prior decisions after a GVR. In *Peterson*, 2020 U.S. App. LEXIS 19747, *6-8, this Court saw "no reason to question" those portions of its analysis unaffected by the new statute identified in the GVR and reinstated them in full. Even on remand after merits decisions, as in *Jander v. Ret. Plans Comm. of IBM*, No. 17-3518, 2020 U.S. App. LEXIS 20115, *3-4 (2d Cir. June 22, 2020), this Court has declined to "revisit" issues it had "previously considered" when new developments did not dictate a contrary result, particularly when prudential reasons supported the original decision.

Just as the Supreme Court did not decide whether to recall the mandate in light of the PSJVTA, Congress *did not* and *could not* instruct this Court to recall its mandate. Like the ATCA, the PSJVTA has no provision requiring the reopening of closed cases. As this Court has recognized and Plaintiffs have agreed, Congress could not direct the reopening of this case without violating separation of powers under *Plaut v. Spendthrift Farm*, 514 U.S. 211, 225-30 (1995); *see Waldman II*, 925 F.3d at 575 (citing same). That leaves Plaintiffs to claim that Congress

has impliedly "urged" the Court to reopen *Sokolow I* through the PSJVTA's effective date and the "sense of Congress"—but nowhere does the statutory text actually state this case "should" be reopened. Pl. Br. 21. Reading such a directive into the PSJVTA, furthermore, would trivialize *Plaut* by allowing Congress to do indirectly what it could not do directly. The decision whether to recall the mandate accordingly remains a matter left to this Court's discretion.

### B. The Only "Judgment" Vacated By The GVR Was The Mandate-Recall Decision Under Review.

Plaintiffs' argument that the term "judgment" in the GVR means that "the Supreme Court itself exercised jurisdiction to reopen the judgment" (Pl. Br. 10) and vacated this Court's 2016 merits decision turns established GVR practice and precedent on its head. The only "judgment" vacated by the GVR was the mandate-recall decision under review.

If the Supreme Court intended to depart from its established practice of remanding matters "within the court's discretion," for "only further reconsideration," *Amara,* 775 F.3d at 531, and intended to order this Court to recall its mandate, it would have said so explicitly—as it has done in the past. *See Calderon*, 523 U.S. at 566 ("the case is remanded

with instructions to reinstate the June 11, 1997, mandate denying habeas relief to Thompson"); *Wise v. Lipscomb*, 434 U.S. 1329, 1334 (1977) (order "recalling the mandate and staying the judgment of the Court of Appeals pending disposition of the petition for certiorari") (Powell, J.); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250-51 (1944) ("The judgment is reversed with directions to set aside the 1932 judgment of the Circuit Court of Appeals, recall the 1932 mandate …"). The Supreme Court can also remand with other specific instructions, *Blue Water Navy Vietnam Veterans v. Wilkie*, No. 17-1693, 588 U.S. ____ (2019) ("The judgment is vacated, and the case is remanded … with instruction to dismiss the case as moot."), but chose not do so here.

Instead, just like any other GVR, the GVR in this case only vacates the immediately antecedent decision that was the subject of the petition for *certiorari*. It is nearly identical to the other 80 GVRs issued during the 2019 term, each of which states that the "petition for *certiorari* is granted," the "judgment is vacated," and "the case is remanded." Like all other GVRs this term, the GVR in this case vacates the decision that was the subject of the petition for *certiorari* (the denial of the mandate-recall motion) and remands for reconsideration of *that* decision. Yet Plaintiffs

argue that the act of vacating the "judgment" in the GVR means that the Supreme Court effectively recalled the mandate because the mandate-recall decision was not a "judgment." Pl. Br. 15.

As is apparent from its consistent GVR practice, the Supreme Court uses "judgment" to refer to *all* court of appeals orders that decide an issue subject to direct *certiorari* review, whether or not the court below called it a judgment. That approach is reflected in the Court's rules. Sup. Ct. R. 12 governs petitions for *certiorari* from a "judgment," and Sup. Ct. R. 13 governs the time limits for petitions from a "judgment." In fact, Sup. Ct. R. 11 has special standards for petitions that are *not* from judgments. Plaintiffs' petition for *certiorari*, however, followed Rules 12 and 13, and does not mention the standards for Rule 11.

Plaintiffs argue that if the Supreme Court had meant to vacate only the antecedent decision, it would have used "order" in the GVR. Pl. Br. 12. But in each of the three case cited by Plaintiffs on this point, *the Court used "order" and "judgment" interchangeably*. *Id.* In two cases the Court vacated a "judgment," though it called the decision an "order" in the text of the decision. *PNC Bank Nat. Ass'n v. Secure Axcess, LLC*, 138 S. Ct. 1982 (2018) ("The judgment is vacated as moot"); *In re United States*, 138

S. Ct. 443, 444 (2017) ("The judgment … is vacated, and the case is remanded."). In the third case, the Supreme Court vacated an "en banc order," after calling the decision a "judgment" in the preceding paragraph. *Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018) (Plaintiff "took voluntary, unilateral action," "and thus retained the benefit ***of that favorable judgment*.") (emphasis added).

The Supreme Court's use of "judgment" in Plaintiffs' chosen cases is consistent with its practice of referring to the immediately antecedent decision as a judgment, regardless of what the court below called it. For example, *Knights of Columbus v. Trumbull*, 515 U.S. 1171 (1995), issued a GVR using "judgment" to refer to this Court's denial of an injunction and an injunction pending appeal. *Creatore v. Trumbull*, 68 F.3d 59, 60 (2d Cir. 1995). But the docket nowhere called that decision a judgment prior to the Supreme Court's order, only stating that "[t]his appeal is disposed by the *order* of the court dated 12.21.94 affirming the lower court order." *Id.*, Dkt No. 94-9297 (Dec. 21, 1994) (emphasis added).

Moreover, the definition of an appellate judgment as "the document that states the dispositive action taken by the court of appeals" (*see* Pl. Br. 11) undermines Plaintiffs' argument. Pl. Br. 11. The document

stating "dispositive action" at issue in their petition for *certiorari* was the denial of the mandate-recall motion, not the old 2016 merits judgment. When Plaintiffs filed for *certiorari* from the 2016 merits judgment, that petition was denied. *Sokolow v. PLO*, 138 S. Ct. 1438 (2018). Respect for the Supreme Court's mandates requires this Court to only vacate and reconsider its decision denying the mandate-recall motion—not its decision on the merits that was subject to the prior *certiorari* denial.

Plaintiffs argue that the briefing before the Supreme Court supports their reading of the GVR (Pl. Br. 4, 10, 16-19), but they admitted that Court should not decide the issues in the "first instance" and should instead remand for reconsideration, Pet. Suppl. Br., *Sokolow v. PLO*, No. 19-764, at 6 (Sup. Ct. Jan. 30, 2020). Defendants, in turn, only urged the Court not to reverse the mandate-recall decision. To the extent that Plaintiffs requested anything besides a standard GVR, their request was *rejected* and certainly cannot change the meaning of the GVR.

Finally, Plaintiffs rely on orders from other cases automatically recalling the mandate after a GVR. Pl. Br. 31-41. But the petitions for *certiorari* in those cases were from decisions on the merits and so the Supreme Court vacated those same merits decisions. Plaintiffs' reliance

on cases like *Meacham v. Knolls Atomic Power Lab.*, 358 F. App'x 233, 235-36 (2d Cir. 2009), to argue that the Supreme Court already decided the mandate recall issue is similarly misplaced. Pl. Br. 16. *Meacham* declined to consider certain issues on remand because the Supreme Court could not have reached its merits decision without rejecting them. 358 F. App'x at 235-36. Here, by contrast, a GVR is not a merits decision. The decision is about *whether* to recall the mandate—and there is no need to recall the mandate to determine whether to recall the mandate.

## II. The PSJVTA Reinforces The Finality And Prudential Grounds For This Court's Prior Decision Not To Reopen A Long-Closed Case.

Nothing about the PSJVTA impairs this Court's decision not to recall the mandate, particularly when the prudential considerations for that decision remain fully intact. Mandates are only recalled in "grave" situations when there is no alternative relief. That standard is not met here as Plaintiffs' re-filed case provides a purpose-built alternative for consideration of any factual developments. This Court has already held that any new facts that may establish jurisdiction under a new statute should be raised in the new case. *Waldman II*, 925 F.3d at 576 n.2. Similarly, the D.C. Circuit refused to remand a jurisdictional dismissal

for further development because facts relevant to the PSJVTA would be better addressed in a re-filed lawsuit. *Shatsky*, 955 F.3d at 1038. Reaffirming this Court's prior decision not to recall the mandate honors the "deep rooted policy in favor of the repose of judgments," *Calderon*, 523 U.S. at 551, while recognizing that the new case is a better vehicle for new jurisdictional claims, as this Court and the D.C. Circuit have already held.

## A. This Court Has Already Determined That Plaintiffs' New Jurisdictional Claims Are Better Litigated In Their New, Custom-Made Case.

The recall of a mandate is an "extraordinary" power "of ***last resort***, to be held in reserve against ***grave, unforeseen contingencies***." *Calderon*, 523 U.S. at 549-50 (emphasis added). Recalling a mandate undermines the federal courts' "profound interests in repose attaching to the mandate of a court of appeals." *Id. at* 550. This Circuit recognizes that "the sanctity of final judgments in our federal judicial system" compels "parsimony in the exercise of our power to recall a mandate." *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 89 (2d Cir. 1996). "[T]he presumption against the reopening of previously dismissed claims is at its heaviest where the mandate has issued." *Id.* at 91-92.

This Court's finality rationale for denying Plaintiffs' motion to recall the mandate is unaffected—and in fact reinforced—by the PSJVTA. This Court declined to reopen the mandate in part because "[r]ecalling the mandate now would offend 'the need to preserve finality in judicial proceedings.'" *Waldman II*, 925 F.3d at 575-76. It explained that "[t]he mandate in this case was issued two and a half years ago, and the Supreme Court denied the plaintiffs' petition for a writ of certiorari more than six months before the plaintiffs filed their motion to recall the mandate." *Id.* This substantial lapse in time has only increased; *three and a half years* have now elapsed since the original mandate.

Since the Court's prior decision, the extraordinary circumstances warranting recall of a mandate have remained absent: Plaintiffs' claims are preserved, as is their ability to explore future jurisdictional facts. Plaintiffs already have a pending, purpose-built case for developing new jurisdictional arguments based on new facts. Citing that case, this Court already determined that "[t]o the extent that there are any developments in the activities of the PA or the PLO that may subject them to personal jurisdiction under the ATCA, they can be raised in that case." *Waldman*

*II*, 925 F.3d at 576 n.2. That logic applies equally to the PSJVTA, which like the ATCA provides for jurisdiction based on post-*Sokolow I* events.

*By Plaintiffs' own design*, the new case is better suited to develop their arguments about the PSJVTA, including facts not yet in existence regarding unknown future actions. The district court will have a full toolkit for fact-based adjudication of jurisdictional questions in *Sokolow II*. The new case is a better vehicle for developing a record of future-arising facts and resolving Defendants' constitutional and other arguments concerning the application of the newly-enacted statute.

### B. The D.C. Circuit Recently Agreed That New Fact Finding Under The PSJVTA Should Occur In Plaintiffs' Newly-Filed Lawsuits.

The D.C. Circuit recently made the same choice in *Shatsky*: It refused to reopen the district court's pre-PSJVTA jurisdictional dismissal against these same Defendants, reasoning that any post-decisional fact developments relevant under the PSJVTA would be better addressed in a re-filed lawsuit than in a case that already went to judgment.

The D.C. Circuit held that "the mere prospect" that Defendants "*might* … in the future" take actions falling under the PSJVTA "does not create personal jurisdiction now." *Shatsky,* 955 F.3d at 1037-38

(emphasis in original); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"); *Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 937-39 (D.C. Cir. 2012) (ordering dismissal because the plaintiffs lacked standing to sue on behalf of their Tribe, despite pending litigation that might lead to their recognition as the Tribe's leadership, thereby creating standing).

The D.C. Circuit also rejected the plaintiffs' "request that this court remand the case to the district court to address the implications of this new statute in the first instance." *Shatsky,* 955 F.3d at 1037-38. Remand under the PSJVTA was unwarranted even though "the Defendants might make the type of payments covered by the [statute] and, in so doing, trigger retroactive consent to personal jurisdiction." *Id*. The proper course, *Shatsky* explained, was for plaintiffs "to refile if new facts establish personal jurisdiction." *Id*. at 1038.[1]

Notably, *Shatsky* held that remand was unwarranted to develop newly-arising facts on personal jurisdiction in a case that *remained open*

---

[1] The *Shatsky* plaintiffs now appear to agree, having recently chosen to pursue their PSJVTA claims in their refiled, new case rather than petition for *certiorari* from the D.C. Circuit's decision.

*on appeal*. Its logic applies with greater force to this long-closed case, where the mandate is protected by heightened interests of finality and repose. *See Sargent*, 75 F.3d at 91-92. The logic underlying this Court's original holding—that, "to the extent that there are any developments in the activities of the PA or the PLO that may subject them to personal jurisdiction" under a statute enacted after judgment "they can be raised in that case" (*Waldman II*, 925 F.3d at 576 n.2)—applies equally both to the ATCA and to the PSJVTA. Because this Court's original logic is unaltered by the PSJVTA, its original decision to require Plaintiffs to use *Sokolow II* to develop new jurisdictional theories remains sound and should be reinstated.

## C. The PSJVTA Cannot Rewind The Voided *Sokolow I* Judgment.

Plaintiffs protest that the new case requires them to start "from scratch." Pl. Br. 9. But the *Sokolow I* judgment was vacated for lack of jurisdiction, and thus is a nullity. Accordingly, the jury verdict could not be reinstated even on a remand in *Sokolow I*.

"A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity." *Covington Indus. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980). Decisions made without

jurisdiction are void after judgment, even if a court later acquires jurisdiction. As explained in *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 608-09 (1990), "the judgment of a court lacking jurisdiction is void," and therefore a final judgment "lacking personal jurisdiction" violates due process. "Personal jurisdiction" is "'an essential element of the jurisdiction' … without which the court is 'powerless to proceed to an adjudication.'" *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (citation omitted).

In other words, the trial court could not reinstate the *Sokolow I* judgment even if it found PSJVTA jurisdiction on remand. *Roman Cath. Archdiocese of San Juan v. Feliciano,* 140 S. Ct. 696, 700 (2020), recently held that even though a court later obtained jurisdiction, its "absolutely void" orders were not reinstated. *See also South Carolina v. Moore,* 447 F.2d 1067, 1073 (4th Cir. 1971) (decisions were void "despite subsequent determination that the removal petition was ineffective"); *G.L. v. D.L.,* 2017 Haw. App. Lexis 468, *13-14 (Nov. 22, 2017) (void judgment was not

"resurrected or reinstated" by post-judgment waiver of personal jurisdiction).[2]

Nor would the verdict survive in any case. While this Court did not need to resolve challenges to Plaintiffs' experts in the original appeal (*Waldman I*, 835 F.3d at 322), nearly identical testimony from the same experts has since been rejected by the D.C. Circuit. *See Gilmore v. Palestinian Auth.*, 843 F.3d 958, 972-73 (D.C. Cir. 2016). The only "advantage" this closed case has over Plaintiffs' active case is a complicated procedural history and the potential for additional legal challenges and delays.[3] In the end, the finality interest has already been determined by this Court to counsel against recalling the mandate—and

---

[2] In *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996), the lower court had jurisdiction at the time of judgment. And as Justice Ginsburg later pointed out, the "party line-up changes" in *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989), only trimmed the case to "an ever-present core that met the statutory requirement." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 591 (2004) (Ginsburg, J., dissenting).

[3] Plaintiffs' cases regarding remands for fact finding all involved a direct or interlocutory appeal and are inapposite. Ps.' Supp. Br. at 21-22, citing, *e.g.*, *New Eng. Merchants Nat'l Bank v. Iran Power Generation & Trans.*, 649 F.2d 779, 780-83 (2d Cir. 1981) (remand after interlocutory appeal); *O'Neill v. Asat Trust Reg.*, 714 F.3d 659 (2d Cir. 2012) (remand after direct appeal); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 189 (2d Cir. 2010) (affirming a district court's order enforcing a protective order).

Congress could not displace this Court's exercise of discretion on the finality issue in the PSJVTA.

## III. Because The PSJVTA Depends On Factual Developments That Long Post-Date The Closure Of This Case, Any Post-PSJVTA Fact-Finding Should Occur In Plaintiffs' New Case.

The PSJVTA's jurisdictional provisions do not change the calculus of this Court's antecedent decision. The long-closed record does not implicate new jurisdictional bases of the PSJVTA any more than under the ATCA. Plaintiffs cannot establish jurisdiction under the PSJVTA based on facts predating its earliest effective date (January 2020), and the post-PSJVTA jurisdictional "facts" proposed by Plaintiffs are entirely speculative. *See* Pl. Br. 2 (Plaintiffs "have not yet had the opportunity to conduct discovery and develop and evidentiary record."). As in *Waldman II* and *Shatsky*, Plaintiffs' re-filed lawsuit is the more logical vehicle for developing post-PSJVTA facts and is best-suited for exploring jurisdictional developments post-dating the closure of this case.

The PSJVTA's factual predicates are both forward looking and more demanding than those under the ATCA. Those predicates require either activities in the United States after January 2020 that are not part of, or "ancillary" to, the official business of the PLO's UN Mission (or

other allowed activities) or payments after April 2020 to prisoners, or their families, that committed terrorist acts that hurt U.S. nationals. The record here (as in *Shatsky*) suggests that Plaintiffs cannot establish jurisdiction under the PSJVTA based on factual circumstances predating the earliest PSJVTA effective date (January 2020), making a re-filed lawsuit the more logical vehicle for developing post-PSJVTA facts.

The PSJVTA expressly allows the PLO's UN Mission to continue its customary operations without jurisdictional consequences. As this Court held with respect to the ATCA, Plaintiffs "have not shown that the defendants have established or continued to maintain an office or other facility within the jurisdiction of the United States," *Waldman II*, 925 F.3d at 575. The PSJVTA's refashioned "in the United States" language has no bearing on the PLO's UN Mission, as it is not "in the United States" for jurisdictional purposes. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) ("the PLO's participation in the UN is dependent on the legal fiction that the UN Headquarters is not really United States territory at all, but is rather neutral ground over which the

- 29 -

United States has ceded control").[4] And regardless of whether "in the United States" includes the UN Mission, Sections 2334(e)(3)(A) and (B) of the statute specifically exempt the UN Mission itself, its official UN activities, and ancillary activities from the jurisdictional calculus.

With regard to the conduct of PLO UN Mission personnel, Plaintiffs rely on twenty-eight year-old district court findings that PLO personnel gave "public speeches" and distributed "informational materials." Pl. Br. 25-26 (citing *Klinghoffer v. SNC Achille Lauro*, 795 F. Supp. 112, 114 (S.D.N.Y. 1992)). These decades-old findings cannot possibly implicate the PSJVTA, which did not take effect until 2020. (Nor do Plaintiffs explain what they mean by calling the PLO's UN Mission a "mixed use" facility, especially since its exclusive "use" is as the UN Mission.)

More importantly, the ordinary-course conduct of a UN mission was exempted under the PSJVTA through its United Nations and "ancillary activities" exceptions. § 2334(e)(3)(A)-(F). Press conferences are classic

---

[4] The PSJVTA's "rule of construction" under § 2334(e)(4) also exempts the UN Mission. It provides that "any office ... within the territory of the United States *that is not specifically exempted* by paragraph (3)(A)"—in other words, an office *other than* a UN Mission—"shall be considered to be in the United States for purposes of paragraph (1)(B)." This provision carefully avoids overturning the decision that the UN Headquarters is "not really United States territory at all," *Klinghoffer*, 937 F.2d at 51.

conduct that is, at the least, "ancillary," "supplementary," "peripheral," or "connect[ed]" to Defendants' official UN business. *See* Black's Law Dictionary (11th ed. 2019) (ancillary means "supplementary"); Wolters Kluwer Bouvier Law Dictionary (Desk Ed. 2012) (ancillary means "incidental or peripheral to another thing"); *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 228-29 (1992) (distinguishing activities that are "essential" to an activity from those that are "ancillary" because they have a mere "connection" to an activity).[5]

This Court, supported by the views of the United States, already rejected Plaintiffs' claims about the jurisdictional significance of such activities under the ATCA. *Waldman II*, 925 F.3d at 575. Given that the PSJVTA now exempts conduct that is "ancillary" to official functions of the UN Mission, it is all the more clear that the same conduct fails to implicate "deemed-consent" to jurisdiction under that statute. As discussed below, furthermore, the PSJVTA should be interpreted to avoid

---

[5] The same reasoning excludes the humdrum items Plaintiffs complained about in prior briefing, such as the UN Mission having a checking account, telephone lines, a Twitter account, and a public relations employee.

constitutional issues if "fairly possible"—*i.e.*, to conclude its predicates are not satisfied. *Ashwander v. TVA*, 297 U.S. 288, 347 (1988).

Insofar as Plaintiffs argue that the UN Mission would trigger jurisdiction under the PSJVTA by issuing a press release (Pl. Br. 26), that overzealous reading rejects both the provision's plain language and legislative history. Defendants may "meet with advocates regarding relevant issues, make public statements, and otherwise engage in public advocacy and civil society activities that are ancillary to the conduct of official business without consenting to personal jurisdiction." Statement of Sen. Leahy, Cong. Rec.—Sen., S267 (Jan. 28, 2020). Senator Leahy negotiated the specific language at issue here, and so his views deserve "special weight." *Reynolds-Naughton v. Norwegian Cruise Line Ltd.*, 386 F.3d 1, 5 (1st Cir. 2004) ("the sponsors of the *language* [at issue] … would ordinarily get special weight"). This contrasts with Senator Lankford (*see* Pl. Br. 26) who did *not* support the inclusion of the "ancillary activities" exception and voted ***against*** the bill that contained the final PSJVTA. *See, e.g.*, *NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760*, 377 U.S. 58, 66 (1964) (discounting statements by a bill's opponents).

Finally, with respect to the payments provision, Plaintiffs cite claims of payments made many years before the PSJVTA's April 2020 effective date. Pl. Br. 24-25. Plaintiffs also cite a recent media report about future hopes to make some payments. *Id*. The report does *not* claim, much less provide actual evidence, that any payment has been made since April 2020 to those responsible for harm *to nationals of the United States*—a requirement for jurisdiction under the PSJVTA. (More recent media reports focus on Defendants' current financial crisis.[6]) Thus, Plaintiffs speculate that jurisdiction-triggering payments might be made in the future. That conjecture is insufficient to "create personal jurisdiction" so obviously and immediately that this Court should abandon its original logic that "[t]o the extent that there are any developments in the activities of the PA or the PLO that may subject them to personal jurisdiction" under a post-judgment statute "they can be raised in th[e] [Plaintiffs' new] case." *Waldman II*, 925 F.3d at 576 n.2. The D.C. Circuit applied precisely the same logic in *Shatsky*, 955 F.3d at 1038. This Court should apply that logic here once again.

---

[6] *See* M. Khabeisa, *Palestine cuts staff pay in half amid financial crisis*, Anadolu Agency (July 2, 2020), at: https://www.aa.com.tr/en/middle-east/palestine-cuts-staff-pay-in-half-amid-financial-crisis/1897364.

## IV.   The Substantial Constitutional Issues Raised By The PSJVTA Would Best Be Litigated In The New Case.

Developing post-PSJVTA facts in Plaintiffs' re-filed lawsuit allows both this Court and the district court to resolve the statutory-predicate and construction issues discussed above without having to decide substantial constitutional questions particular to reopening a long-closed case. Retroactive application of the PSJVTA's "deemed consent" provisions to resurrect a closed case raises heightened and separate due process, separation of powers, and other constitutional questions. Those specific to this closed case could be avoided by declining to recall the mandate here, while other constitutional questions could be litigated in the normal course of a new lawsuit.

### A.   Plaintiffs Concede This Court Should Avoid Substantial Questions Of Constitutional Law.

Plaintiffs acknowledge that courts should not pass upon questions of constitutional law "unless such adjudication is unavoidable." Pl. Br. 27 (quoting *DOC v. U.S. House of Rep.*, 525 U.S. 316, 343 (1999)). That prudential principle is "strictly followed where … difficult or far-reaching constitutional issues are raised…. If a court can decide a case on non-constitutional grounds, it should not stray into the field of constitutional

analysis." *Fed. Election Com. v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 52 (2d Cir. 1980). As Plaintiffs' own authority recognizes, this principle applies with greater force when "serious doubt" is raised over the constitutional application of a statute: "[I]t is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Ashwander*, 297 U.S. at 347.

Allowing PSJVTA-application issues to be addressed in the new case would avoid unnecessarily resolving now constitutional questions whether due process and separation of powers prohibit a retrospective change to jurisdictional rules in a closed case. Orderly litigation of the PSJVTA in *Sokolow II* will thus serve prudential interests not only of finality, but also of constitutional avoidance.

## B. The PSJVTA Raises Substantial Constitutional Questions Unique To Reopening A Closed Case.

There are serious constitutional barriers to Plaintiffs' effort to deploy the PSJVTA to retroactively deem that Defendants have "consented" to personal jurisdiction. Most plainly, a statute cannot create jurisdiction where the Constitution forbids it. *Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017) ("Congress cannot wish away a constitutional

provision."), *cert. denied*, 139 S. Ct. 373 (2018). The PSJVTA's "deemed consent" provisions violate Defendants' due process rights if applied to confect jurisdiction based on events neither "proscribed by the ATA" nor "connected to the wrongs for which the plaintiffs here seek redress." *Waldman I*, 835 F.3d at 342. Congress also cannot use "deemed consent" that is not "free and voluntary" as an end-run around due process. *Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 640 (2d Cir. 2016) (noting "purported 'consent,' may be limited by the Due Process clause").

Any court will need to grapple with these and other constitutional issues before applying the PSJVTA to find jurisdiction over Defendants in connection with the events at issue—but there are also substantial constitutional challenges unique to applying the PSJVTA's "deemed consent" provisions to contrive personal jurisdiction in a long-closed case.

First, dredging up this closed case through retroactive legislation would "compromise" Defendants' due process "interests in fair notice and repose" in the final judgment. *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994)); *see Bank Markazi*, 136 S. Ct. at 1325 (quoting same). The Supreme Court has recognized that retroactive application of a statute may be constitutionally barred when finality and repose are at

stake. *Opati v. Republic of Sudan* recently observed that there are "vital due process interests in ensuring that 'individuals … have an opportunity to know what the law is' before they act, and may rest assured after they act that their lawful conduct cannot be second-guessed later." 206 L.Ed.2d 904, 912 (2020) (quoting *Landgraf*, 511 U.S. at 265). *Plaut* likewise raised, but did not decide, whether Congress requiring courts to retroactively apply a statute to a closed case would violate the Due Process Clause of the Fifth Amendment, noting that separation of powers was a "narrower ground for adjudication." 514 U.S. at 217.

Application of the PSJVTA to Defendants in a closed case would raise precisely the kinds of due-process concerns contemplated by this authority. Reopening the judgment implicates "[t]he Legislature's unmatched powers [that] allow it to sweep away settled expectations suddenly." *Landgraf*, 511 U.S. at 266-67. And legislation reaching backwards to undo this Court's due-process holding would suggest a Congressional effort to single out "unpopular" foreign defendants for "retribution" long after the primary conduct at issue. *Id.* at 266-67; *see also Opati*, 206 L.Ed.2d at 912 ("If legislative majorities could too easily make new laws with retroactive application, disfavored groups could

become easy targets for discrimination, with their past actions visible and unalterable."). It would also jeopardize Defendants' vested rights in the judgment itself. *See Landgraf*, 511 U.S. at 269 (discussing "vested rights" impaired by retroactive legislation); *Hodges v. Snyder*, 261 U.S. 600, 603 (1923) (private rights "vested by the judgment of a court cannot be taken away by subsequent legislation"); *Johnson v. Cigna Corp.*, 14 F.3d 486, 490 (10th Cir. 1993) ("once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property").

Second, applying the PSJVTA to a closed case would be an "exorbitant exercise[] of all-purpose jurisdiction" denying Defendants any "'minimum assurance as to where that conduct will and will not render them liable to suit.'" *Daimler*, 571 U.S. at 139 (quoting *Burger King Corp.*, 471 U. S. at 472); *see also Metro. Life Ins. Co.*, 84 F.3d 560, 569-70 (2d Cir. 1996) (a court "should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed"). Using the PSJVTA to evade due-process limits through deemed "consent" is especially problematic in a closed case because the PSJVTA does not mandate reopening final

judgments. *See Brown*, 814 F.3d at 623, 641 (distinguishing jurisdictional import of a "carefully drawn state statute" from ones that "do not speak clearly"). Nor can the PSJVTA use conditions on Defendants' diplomatic activities to coerce "deemed consent" to personal jurisdiction in a closed case and thereby achieve indirectly what it cannot do directly without violating due process and separation of powers. *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 59-60 (2006). Challenges to the constitutionality of the PSJVTA's "deemed consent" provisions are better left for the newly-filed case, which would not require this Court to confront the added complication of deeming consent to reopen a closed case.

Finally, if the PSJVTA were applied to compel the exercise of personal jurisdiction over Defendants in this closed case despite these due-process problems, then it also would violate the separation of powers doctrine that safeguards judicial prerogatives. *Plaut*, 514 U.S. at 225-30. Nor can the PSJVTA be applied to compel reversal of this Court's due-process holding without effectively "prescrib[ing] a rule for decision that [leaves] the court no adjudicatory function to perform." *United States v. Sioux Nation of Indians*, 448 U.S. 371, 392 (1980). Congress does not

"have the power to authorize violations of the Due Process Clause" where this Court concludes that constitutional requirements have not been met. *Quill Corp. v. N. Dakota*, 504 U.S. 298, 305 (1992).

## Conclusion

The PSJVTA does not disrupt this Court's original prudential grounds for not recalling its mandate. As before, Plaintiffs' new jurisdictional theories under a new statute should be developed in their purpose-built, re-filed case. But if this Court does remand, it should limit the remand to resolving jurisdiction under the PSJVTA as allowed under *United States v. Jacobson*, 15 F.3d 19, 21 (2d Cir. 1994); *see also Rolling Greens MHP v. Comcast SCH Holdings*, 374 F.3d 1020, 1020-23 (11th Cir. 2004) (remanding for the "limited purpose of determining whether diversity jurisdiction exists," but still "retain[ing] jurisdiction to consider the merits of the appeal").

Respectfully submitted,

/s/ *Gassan A. Baloul*
Gassan A. Baloul

cc:    All Counsel by ECF