UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MIRIAM FULD, et. al.,                          :
                                               :
                    Plaintiffs,                :
                                               :     Case No.: 20-cv-3374 (JMF)
         - against -                           :
                                               :
THE PALESTINE LIBERATION ORGANIZATION and :
THE PALESTINIAN AUTHORITY,                     :
                                               :
                    Defendants.                :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

THE LAW OFFICE OF
JEFFREY FLEISCHMANN, P.C.
Jeffrey Fleischmann, Esq.
150 Broadway, Suite 900
New York, NY 10038
Tel: 646-657-9623
Email: jf@lawjf.com

THE SILVERMAN LAW FIRM
Samuel Silverman, Esq.
16 Squadron Blvd.
New City, NY 10956
Tel: 845-517-0351
Email: silvermans@silvermanlaw.net

*Counsel for Plaintiffs*

THE LAW OFFICE OF ALLEN SCHWARTZ, ESQ.
Allen Schwartz, Esq.
2635 Nostrand Ave
Brooklyn, NY 11210
Tel: 347-460-5379
Email: allen@allenschwartzlaw.com

*Of-Counsel to The Law Office of Jeffrey Fleischmann, P.C.*

Table of Contents

*PRELIMINARY STATEMENT* ................................................................................................... 1

*ARGUMENT* ............................................................................................................................ 4

   I.     STANDARD ON A MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION ..................................................................................................................... 4

   II.    THE COURT MUST DECIDE THE ISSUE OF PERSONAL JURISDICTION
BEFORE REACHING THE MERITS ...................................................................................... 5

   III.   THE COURT HAS PERSONAL JURSIDICTION OVER DEFENDANTS ................ 7
      A.   Plaintiffs Have Made a Prima Facie Showing Under 18 U.S.C. § 2334(e)(1)(A).......... 8
      B.   Plaintiffs Have Made a Prima Facie Showing Under 18 U.S.C § 2334(e)(1)(A)........... 9
      C.   The PJSTVA is Constitutional ................................................................................ 11

   III.   STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM..
…………………………………………............................................................................ 13

   IV.   PLAINTIFFS HAVE ADEQUATELY ALLEGED A PRIMARY VIOLATION OF 18
U.S.C. § 2333(a) ................................................................................................................ 14
      A.   Standard for Primary Liability Under 18 U.S.C. § 2333(a) .......................................... 14
      B.   Defendants' Actions Violated United States Federal and State Criminal Law ............ 16
      C.   Defendants' Actions Were Dangerous to Human Life ................................................. 18
      D.   Defendants' Actions Objectively Appear to Have Been Undertaken to Intimidate the
Israeli Civilian Population and Influence the Policy of The Israeli Government By
Intimidation And Assassination ........................................................................................ 19
      E.   Defendants' International Terrorism Was A 'Substantial Factor In The Sequence Of
Responsible Causation' Leading To The Plaintiff's Injury And Plaintiff's Injuries Were
'Reasonably Foreseeable' Or 'Anticipated As A Natural Consequence' Of Those Actions
…………………………………………………………………………………………21

   V.    PLAINTIFFS HAVE ADEQUATELY PLED THEIR NON-FEDERAL CLAIMS ....... 24

*CONCLUSION*.......................................................................................................................... 26

# CASES

*A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)
.................................................................................................................... 5

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)
.................................................................................................................... 5

*Anibal Del Cid v. Beloit Corp.*, 901 F. Supp. 539 (E.D.N.Y. 1995)
.................................................................................................................... 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)
.................................................................................................................... 13

*Atchley v. AstraZeneca UK Ltd.*, No. 17-2136 (RJL), 2020 U.S. Dist. LEXIS 126469 (D.D.C. July 17, 2020)
.................................................................................................................... 23

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990)
.................................................................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)
.................................................................................................................... 13

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008)
.................................................................................................................... 19

*Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020)
.................................................................................................................... 11

*BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790 (7th Cir. 2014)
.................................................................................................................... 12

*Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132 (N.D. Cal. Jan. 9, 2017)
.................................................................................................................... 20

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)
.................................................................................................................... 12

*Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78 (2d Cir. 2016)
.................................................................................................................... 10

*Chevron Corp. v. Naranjo*, 667 F.3d 232 (2d Cir. 2012)
.................................................................................................................... 6

*Comm'r v. Clark*, 489 U.S. 726 (1989)
.................................................................................................................... 10

ii

*Corley v. Vance*, 365 F. Supp. 3d 407, 430 (S.D.N.Y. 2019)
.................................................................................................................................. 5

*Edwards J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Counsel*, 485 U.S. 568
    (1988)
.................................................................................................................................. 11

*EEOC v. Day & Zimmerman NPS, Inc.*, No. 15-cv-01416 (VAB), 2016 U.S. Dist. LEXIS 48800
    (D. Conn. Apr. 12, 2016)
.................................................................................................................................. 7

*Freeman v. HSBC Hldgs. PLC*, 413 F. Supp. 3d 67 (E.D.N.Y. 2019)
.............................................................................................................................. 15, 21

*Gambe v. United States*, 139 S. Ct. 1960 (2019)
.................................................................................................................................. 13

*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542 (E.D.N.Y. 2012)
.............................................................................................................................. 16, 21

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009)
.................................................................................................................................. 14

*Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248 (10th Cir. 2012)
.................................................................................................................................. 8

*Heinert v. Bank of Am. N.A.*, No. 20-0691, 2020 U.S. App. LEXIS 35733 (2d Cir. Nov. 13, 2020)
.................................................................................................................................. 13

*Holder v. Humanitarian Law Project*, 561 U.S. 1  (2010)
.................................................................................................................................. 13

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)
.............................................................................................................................. 3, 12

*Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)
.................................................................................................................................. 4

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501 (D.C. Cir. 2018)
.................................................................................................................................. 6

*Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019)
.................................................................................................................................. 23

*Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114 (2d Cir. 2017)

................................................................................................................... 5

*Klinghoffer v. SNC Achille Lauro*, 795 F. Supp. 112, 114 (S.D.N.Y 1992)
...................................................................................................................... 11

*Klinghoffer v. SNC Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991)
...................................................................................................................... 11

*Krepps v. Reiner*, 2005 U.S. Dist. LEXIS 15185 (S.D.N.Y. July 27, 2005)
...................................................................................................................... 4

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012)
...................................................................................................................... 15

*Linde v. Arab Bank, PLC*, 882 F.3d 314  (2d Cir. 2018)
............................................................................................................... 16, 19

*Martin v. Curran*, 303 N.Y. 276, 101 N.E.2d 683 (N.Y. 1951)
...................................................................................................................... 24

*Meese v. Keene*, 481 U.S. 465 (1987)
...................................................................................................................... 11

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018)
...................................................................................................................... 22

*People v. Allen*, 681 N.Y.S.2d 216, 703 N.E.2d 1229 (1998)
...................................................................................................................... 17

*People v. Upshaw*, 741 N.Y.S.2d 664 (Crim. Ct. 2002)
...................................................................................................................... 17

*Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175 (S.D.N.Y. 1995)
...................................................................................................................... 5

*Roell v. Withrow*, 538 U.S. 580 (2003)
............................................................................................................... 3, 12

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013)
............................................................................................................... 15, 21

*S.E.C. v. Apuzzo*, 689 F.3d 204 (2d Cir. 2012)
...................................................................................................................... 14

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)
...................................................................................................................... 16

iv

*Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946 (D.D.C June 20, 2017)
............................................................................................................................ 24

*Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020 (JS)(ARL), 2020 U.S. Dist. LEXIS 165906
   (E.D.N.Y. Sep. 10, 2020)
........................................................................................................................ 4, 5

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007)
.............................................................................................................................. 6

*Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76 (D.D.C. 2006)
............................................................................................................................ 19

*Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509 (S.D.N.Y. 2014)
...................................................................................................................... 23, 25

*Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011)
............................................................................................................................ 21

*Steel Co.* v. *Citizens for Better Environment*, 523 U.S. 83 (1998)
.............................................................................................................................. 6

*Stone v. Patchett*, No. 08 CV 5171 (RPP), 2009 U.S. Dist. LEXIS 35049 (S.D.N.Y. Apr. 23,
   2009)
.............................................................................................................................. 6

*Sullivan v. Finkelstein*, 496 U.S. 617 (1990)
............................................................................................................................ 11

*Tucci v. Bossert,* 53 A.D.2d 291, 293, 385 N.Y.S.2d 328 (2d Dep't 1976)
............................................................................................................................ 22

*United States v. Smith,* 499 U.S. 160 (1991)
............................................................................................................................ 10

*Waite v. All Acquisition Corp.*, 901 F.3d 1307 (11th Cir. 2018)
............................................................................................................................ 12

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016)
............................................................................................................................ 25

*Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014)
.................................................................................................................. 15, 16, 19

*Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932 (2015)

................................................................................................................ 3, 12

*Zivojinovich v. Barner*, 525 F.3d 1059 (11th Cir. 2008)
................................................................................................................ 22


## STATUTES

18 U.S.C. § 2101
................................................................................................................ 18

18 U.S.C. § 2331
................................................................................................................ 15, 21

18 U.S.C. § 2333(a)
................................................................................................................ 1, 14

18 U.S.C. § 2334(e)(1)
................................................................................................................ 2, 8

18 U.S.C. § 2334(e)(1)(A)
................................................................................................................ 8

18 U.S.C. § 2334(e)(1)(B)
................................................................................................................ 9, 10

18 U.S.C. § 2334(e)(1)(B)(iii)
................................................................................................................ 10

18 U.S.C. § 2334(e)(3)(A)
................................................................................................................ 10

18 U.S.C. § 2334(e)(3)(B)
................................................................................................................ 10

18 U.S.C. § 2334(e)(3)(F)
................................................................................................................ 10

18 U.S.C. § 2334(e)(4)
................................................................................................................ 10

18 U.S.C. § 2339B
................................................................................................................ 19

18 U.S.C. § 373(a)
................................................................................................................ 18

Alabama Title 13A. Criminal Code § 13A-4-1
................................................................................................................ 18

CPLR 1023
................................................................................................................ 24

NY CLS Penal § 115.10(3)
................................................................................................................ 17

NY Penal L. § 100.00-15
................................................................................................................ 16

NY Penal L. § 115.00
................................................................................................................ 17

NY Penal L. § 125.10
................................................................................................................ 17

NY Penal L. § 125.15(1)
................................................................................................................ 17

NY Penal L. § 145.25
................................................................................................................ 17

NY Penal L. § 20.00
................................................................................................................ 17

NY Pub Off. L. § 102
................................................................................................................ 24

Taylor Force Act, Pub. L. No. 115-141, tit. X, div. S, § 1004(A)(1)(B), 132 Stat. 348, 114 (2018)
    (codified at 22 U.S.C. § 2378c-1
................................................................................................................ 13

Texas Title 2, Criminal Code Sec. 7.02(a)
................................................................................................................ 18

## OTHER AUTHORITIES

165 Cong. Rec. S7182 (Dec. 19, 2019)
................................................................................................................ 11

166 Cong. Rec. S627 (Jan 28, 2020)
................................................................................................................ 11

18 U.S.C. § 2333 note

.................................................................................................................. 11

Oxford English Dictionary (online ed. 2020)

.................................................................................................................. 10

Reported Roll-Call Vote on S. 2132, Senate Judiciary Committee (Oct. 17, 2019)

.................................................................................................................. 11

Restatement 2d of Conflict of Laws, § 174 (2nd 1988)

.................................................................................................................. 25

## RULES

Fed. R. Civ. P. 12(b)(2)

.............................................................................................................. 2, 4

Fed. R. Civ. P. 12(b)(6)

.................................................................................................................. 17

Fed. R. Civ. P. 12(h)(1)

.................................................................................................................. 3

Fed. R. Civ. P. 12(i)

.................................................................................................................. 8

## TREATISES

4 Wright & Miller's Fed. Prac. & Proc. (4th ed. 2008)

.................................................................................................................. 12

## PRELIMINARY STATEMENT

On September 16, 2018, Ari Fuld, a New York native, American citizen, and father of four, was brutally stabbed and murdered in the West Bank, by a Palestinian teenager heeding the call of his government. Defendants, the Palestine Liberation Organization ("PLO") and the Palestinian Authority ("PA"; and together with the PLO, the "Defendants") have created a policy and practice that incentivizes and encourages such acts by legislating legal entitlements that grant payment to the families and designees of those who commit such violent acts and either die while doing so or are imprisoned afterwards as a result.

Defendants have affirmed and reaffirmed this policy in practice and in speech and have regularly disseminated it through mass media. The day before Mr. Fuld's murder, PA President Mahmoud Abbas, after himself helping usher in this "policy," falsely and libelously proclaimed in the mass media that Israel was about to expropriate portions of the Al Aqsa Mosque, one of Islam's holiest sites. Heeding this, and other similar inciteful calls, the Palestinian teenager went looking to kill Jews, and finding Ari Fuld, a visibly Orthodox Jew wearing a Yarmulka with an English-language inscription, stabbed and killed him. Afterwards, per their longstanding practice, policy, and legislation, Defendants paid the teenager's family.

Plaintiffs, Ari Fuld's survivors, bring this action under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333(a), which allows U.S. terror victims to sue for acts of international terror in the United States courts. To constitute an ATA cause of action, Defendants' conduct, had it been done in the United States, must violate any state or federal criminal law, cause the death or injury of an American, be dangerous or violent, and done with the apparent goal of intimidating a civilian population or government. Had Defendants done this in the United States, their actions—enacting a policy and program to incentivize and financially reward violence against an

"enemy" on the basis of ethnicity and national origin, issuing statements in the mass media to incite violence against that "enemy," and paying the individual's family who attacked the "enemy"—would be chargeable criminal offenses under federal law and the laws of every State. These policies and practices are inherently dangerous, and objectively appear to be intended to intimidate the civilian Jewish population in Israel and the West Bank, and to influence Israeli and US government policy by intimidation. The killing of Ari Fuld was a foreseeable, indeed a desired, consequence of these actions.

This Court has jurisdiction over Defendants. Defendants briefly raise but improperly ask this Court to contravene Supreme Court and Second Circuit precedent against "hypothetical jurisdiction," and defer ruling on their Fed. R. Civ. P. 12(b)(2) motion, because they are litigating similar issues before another judge in this District. The law is clear that this Court must first establish jurisdiction here before it can rule on the merits.

Congress enacted the Promoting Security and Justice for Victims of Terrorism Act of 2019 (the "PJSTVA"), 18 U.S.C. § 2334(e)(1)(A), (B), by which Defendants consent to jurisdiction over any ATA claim if after April 18, 2020, they make even a single payment to the designee of any imprisoned terrorist who pled guilty to or was fairly convicted for killing or injuring an American, or to the family of any deceased terrorist who killed or injured an American, and they do because of such imprisonment or death. Defendants have made such payments.

Under the PJSTVA, Defendants also are deemed to consent to jurisdiction if after January 4, 2020, they continue to maintain any office or other facility in the United States or conduct any PA or PLO activity while physically present in the United States. United Nations facilities and activities are exempted if the facility is used exclusively to conduct United Nations business and

activities are exempt if exclusively for United Nations business. Defendants have engaged in

non-UN activities in the United States and use their office in New York for non-UN purposes.

Plaintiffs have made a prima facie showing of personal jurisdiction and, certainly, a "sufficient

start" to warrant jurisdictional discovery.

Defendants' constitutional challenge to the statute is meritless. A defendant may consent

to personal jurisdiction by, for example, "the voluntary use of certain state procedures." *Ins.*

*Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982).

Similarly, under Fed. R. Civ. P. 12(h)(1), a defendant's failure to raise its personal-jurisdiction

defense on a timely basis is a constructive consent to suit that satisfies due process. So long as a

defendant's conduct is "knowing and voluntary," the court's exercise of jurisdiction is consistent

with due process. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1948 (2015); *see Roell v.*

*Withrow*, 538 U.S. 580, 590 (2003).

Section 2334(e) easily meets this "fair warning" standard. It describes with precision

what actions would cause the PLO and PA to be deemed to have consented to personal

jurisdiction in civil cases under the ATA if those actions are taken after specified dates. Upon

enactment of the relevant provisions, the PLO and PA had fair warning and the opportunity to

choose whether to continue such actions and thereby consent to jurisdiction. *See* U.S. Br. at 10–

14, *Klieman v. Palestinian Auth.*, No. 15-7034 (D.C. Cir. Mar. 13, 2019), Doc. No. 1777372

("Section 4 [of the ATCA] operates similarly to other legal arrangements through which a

defendant may validly consent to personal jurisdiction."). Defendants were specifically informed

of the PSJVTA's passage on December 26, 2019. *See* Letter from Tejinder Singh to Hon. Mark

Langer, *Shatsky v. Palestine Liberation Org.*, No. 17-7168 (D.C. Cir. Dec. 26, 2019), Doc. No.

1821532. And on December 26, 2019, Defendants themselves expressly acknowledged that the

statute would apply to them if they acted (after April 18, 2020) to "make payments of the type specified in respect of attacks on U.S. nationals." Letter from Gassan Baloul to Hon. Mark Langer, *Shatsky v. Palestine Liberation Org.*, No. 17-7168 (D.C. Cir. Dec. 30, 2019), Doc. No. 1821944.

The Court should deny Defendants' motion to dismiss in its entirety and give Plaintiffs their day in Court.

## ARGUMENT

### I.   STANDARD ON A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

"Rule 12(b)(2) authorizes a party to seek dismissal on the ground that the Court lacks personal jurisdiction over her or it." *Sidik v. Royal Sovereign Int'l, Inc.*, No. 17-CV-7020 (JS)(ARL), 2020 U.S. Dist. LEXIS 165906, at *5-6 (E.D.N.Y. Sep. 10, 2020) (citation omitted). "Plaintiffs bear the burden of establishing that the court has jurisdiction over a defendant when served with a Rule 12(b)(2) motion to dismiss." *Krepps v. Reiner*, 2005 U.S. Dist. LEXIS 15185, at *7 (S.D.N.Y. July 27, 2005).

"If the defendant is content to challenge only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a *prima facie* showing of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("Our cases show that prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction, i.e., by making a '*prima facie* showing' of jurisdiction.") (citations and quotations omitted). Thus, "where, as here, the defendant challenges

4

only the legal sufficiency of the plaintiff's factual allegation by filing a Rule 12(b) motion, a plaintiff's obligation generally is easiest to fulfill, for it need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Pilates, Inc. v. Pilates Inst.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995). In determining whether Plaintiff has made a prima facie case, "[a]ll jurisdictional allegations 'are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]'" *Corley v. Vance*, 365 F. Supp. 3d 407, 430 (S.D.N.Y. 2019) (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

Even where plaintiff has not articulated a prima facie case for jurisdiction, "[a] court will permit jurisdictional discovery where a plaintiff has made a 'sufficient start' toward establishing personal jurisdiction." *Sidik*, 2020 U.S. Dist. LEXIS 165906, at *21 (citations omitted). A Plaintiff should receive such discovery "when the allegations are sufficient to articulate a colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194-95 (E.D.N.Y. 2014). Indeed, the Second Circuit "encourages district courts to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary." *Katz v. Donna Karan Co.*, L.L.C., 872 F.3d 114, 121 (2d Cir. 2017) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 149 (2d Cir. 2011).

## II.   THE COURT MUST DECIDE THE ISSUE OF PERSONAL JURISDICTION BEFORE REACHING THE MERITS

Defendants apparently contest, but then ask the Court to defer ruling on, personal jurisdiction; they ask the Court to instead go straight to the merits and issue a final judgment dismissing the action, either by outright engaging in "hypothetical jurisdiction" or by the ruse of denying their 12(b)(2) motion, with leave to renew only in the event their merits motion is

denied. They ask the Court to defer jurisdictional rulings to another member of this Court, Judge

Daniels in *Sokolow (Waldman) v. PLO*, No. 1:04-cv-0397-GBD, ECF 1006 at 3-4.

Before a court may reach the merits, it must first address jurisdictional challenges,

because without jurisdiction, the court is not authorized to rule on the merits. A court "may not

assume jurisdiction for the purpose of deciding the merits of the case." *Steel Co.* v. *Citizens for

Better Environment*, 523 U.S. 83, 94 (1998). The Supreme Court has explained that "a federal

court generally may not rule on the merits of a case without first determining that it has

jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties

(personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31

(2007). (citing *Steel*, 523 U.S. at 93 (1998)). "After *Sinochem*, it is clear that, when personal

jurisdiction is in question, a court must first determine that it possesses personal jurisdiction over

the defendants before it can address the merits of a claim." *Kaplan v. Cent. Bank of the Islamic

Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018); accord *Chevron Corp. v. Naranjo*, 667

F.3d 232, 247 n.17 (2d Cir. 2012) (Supreme Court's "repudiation of the so-called 'hypothetical

jurisdiction' doctrine" requires personal jurisdiction to be decided before the merits, unless the

court has "undisputed personal jurisdiction" over at least one defendant).

Defendants argue that Fed. R. Civ. P. 12(i), despite clear Supreme Court and Second

Circuit precedent, allows such deferral on a motion to dismiss. Fed. R. Civ. P. 12(i) allows

deferral of an evidentiary hearing, not a decision on the motion to dismiss. *See Stone v. Patchett*,

No. 08 CV 5171 (RPP), 2009 U.S. Dist. LEXIS 35049, at *26 n.2 (S.D.N.Y. Apr. 23, 2009)

("[E]ven if Plaintiff has put forth a *prima facie* showing of personal jurisdiction for the purposes

of this motion to dismiss, that does not mean that the issue of personal jurisdiction is settled.

Rather, at any point prior to trial Defendant can move this Court pursuant to Fed. R. Civ.

P. 12(i) to hold a hearing to determine the issue of personal jurisdiction.").

In the alternative, to bypass their hypothetical jurisdiction problem, Defendants ask the

Court to engage in hypothetical jurisdiction by ruse—the Court should rule on their 12(b)(6)

merits motion now, and in the event the Court grants it, the Court should deny their 12(b)(2)

jurisdictional motion, but if the Court denies the 12(b)(6) merits motion, the Court should deny

the 12(b)(2) jurisdiction motion "with leave to renew." Unsurprisingly, they cite no case

undertaking this stratagem, as it runs contrary to Supreme Court and Second Circuit rules against

hypothetical jurisdiction. *EEOC v. Day & Zimmerman NPS, Inc.*, No. 15-cv-01416 (VAB), 2016

U.S. Dist. LEXIS 48800, at *19 (D. Conn. Apr. 12, 2016), which they cite for support that courts

may defer issues, did not deal with jurisdictional issues, which, as discussed, are predicates to

ruling on the merits.

## III.   THE COURT HAS PERSONAL JURSIDICTION OVER DEFENDANTS

Plaintiffs have made a prima facie demonstration of personal jurisdiction under the

PJSTVA.[1] At a minimum, they have made a "sufficient start" to warrant jurisdictional discovery.

---

[1] Plaintiffs annex to the Declaration of Jeffrey Fleischmann, Esq. ("Fleischmann Declaration") the following testimony and evidentiary materials submitted by Plaintiffs in *Sokolow (Waldman) v. PLO*, No. 1:04-cv-0397-GBD: (1) as Ex. A, the Declaration of Arieh Spitzen ("Spitzen Decl.") D.E. 1020 (2) as Ex. B, the Declaration of Kent Yalowitz ("Yalowitz Decl."), D.E. 1018, (3) as Exhibit C, the Declaration of Nick Kaufman ("Kaufman Decl."), D.E. 1016. To the extent the Court considers the  Memorandum of Law filed by the Defendants in *Sokolow*, Plaintiffs annex, and ask the Court to consider, the corresponding *Sokolow* Plaintiffs' Memorandum of Law ("Sokolow Memo"), D.I. 1015, annexed as Ex D, and the United States' Amicus Curiae Brief in *Klieman v. Palestinian Authority*, D.I. 15-7034 (D.C. Cir. March 13, 2019), annexed as Ex. E.

### A.  Plaintiffs Have Made a Prima Facie Showing Under 18 U.S.C. § 2334(e)(1)(A)

The PJSTVA, codified at 18 U.S.C. § 2334(e)(1), provides that a party is deemed to consent to jurisdiction, "regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed[,]" if after April 18, 2020, it makes "any payment, directly or indirectly—

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment, or

> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual.

18 U.S.C. § 2334(e)(1)(A).

Since April 18, 2020, Defendants made payments to the families of deceased terrorists who killed and/or injured Americans, and to the designees of terrorists who pled guilty or were fairly convicted of killing and/or injuring Americans. AC ¶¶ 54, 55-57, 59, 60, 63-67, 114-115; Spitzen Decl. ¶¶ 29-41 & Exs. 4-12; Yalowitz Decl. ¶¶ 1-202; Kaufman Decl. ¶¶ 7-27. Defendants have a regular policy and practice of making such payments to those who commit such acts, AC ¶¶ 32-67, Spitzen Decl. ¶¶ 8-28, and where an organization has "'a need for regularity' evidence of their routine practice is 'particularly persuasive'" evidence that they followed their practice on a particular occasion. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (quoting 2-406 Weinstein's Federal Evidence § 406.03). Indeed, these payments are a legal entitlement under the PA Prisoners and Ex-Prisoners Law, under which "[t]he PA must give every prisoner a monthly salary . . . [p]risoners' family members shall receive a portion of the prisoners' salary" and "[t]he prisoner shall appoint an agent to collect his monthly salary or what remains of it." *See* Spitzen Decl., Ex. 1, Law No. 19 of 2004, Art. 7,

translated and admitted into evidence in *Sokolow (Waldman) v. PLO*, No. 1:04-cv-0397-GBD as Pls' Ex. 512 (D.E. 909).

Furthermore, Defendants' senior officials have made numerous statements affirming such payments either recorded on video or reported through Defendants' own official press service, AC ¶ 54, Spitzen Decl. ¶¶ 29-41, and these constitute party admissions under Fed. R. Evid. 801(d)(2)(A)-(D). In an October 4, 2020 State Department report submitted pursuant to the PLO Commitments Compliance Act of 1989 and related federal laws, the State Department stated that "the PA continued to make payments through the PLO to Palestinians connected to terrorism," and "the recipients of the payments included Palestinian terrorists in Israeli prison, released Palestinian terrorists, and the families of Palestinians who were wounded or died while committing terrorist acts or in connection with terrorism." Yalowitz Decl. Ex. 27.

These payments have been made because of the death or imprisonment of these terrorists. AC ¶¶ 62-63, 66-67; Spitzen Decl. ¶¶ 12, 17. Under the PJSTVA, by making even one such payment, Defendants are deemed to consent to this Court's jurisdiction for ATA claims. Plaintiffs have thus made a prima facie case of jurisdiction, or, at a minimum, have made a sufficient start to warrant jurisdictional discovery.

**B. Plaintiffs Have Made a Prima Facie Showing Under 18 U.S.C § 2334(e)(1)(A)**

Alternatively, 18 U.S.C. § 2334(e)(1)(B) deems a party to consent to personal jurisdiction who after January 4, 2020, "(i) continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States . . . or (iii) conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority." United Nations facilities are exempted only if, among other things, they are "used exclusively for the purpose of conducting official business of the United Nations," 18 U.S.C. §

2334(e)(3)(A), and activities are exempted if, "undertaken exclusively for the purpose of conducting official business of the United Nations." 18 U.S.C. § 2334(e)(3)(B).

18 U.S.C. § 2334(e)(3)(F) limits the scope of 18 U.S.C. § 2334(e)(1)(B)(iii), the "activities" prong, by exempting "personal or official *activities* conducted ancillary to *activities* listed under this paragraph." (emphasis added).  It does not limit 18 U.S.C. § 2334(e)(1)(B), the "facilities" prong, because it does not mention "facilities" and because 18 U.S.C. § 2334(e)(4) specifically provides that any "headquarters, premises, or other facility or establishment within the territory of the United States that is not specifically exempted by paragraph (3)(A) shall be considered to be in the United States for purposes of paragraph (1)(B)."  By enumerating paragraph (3)(A) in this provision, and not paragraph (3)(F), Congress limited the application of paragraph (3)(F) to "activities" and not to "facilities," and "additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *United States v. Smith*, 499 U.S. 160, 167 (1991).

Since January 4, 2020, Defendants have engaged in U.S. activities that fall within the scope of 18 U.S.C. § 2334(e)(1)(B)(iii) activities and are not exempt under 18 U.S.C. § 2334(e)(3)(B) or (F).  Specifically, Defendants have provided consular services in the United States, and have conducted press-conferences, distributed informational materials, and engaged the U.S. media in order to influence U.S. foreign policy and public opinion, none of which are UN activities or ancillary[2] to such activities. AC ¶¶ 68-90; Yalowitz Decl. ¶¶ 207-215, 223.

---

[2] Ancillary activities are "activities and services that provide essential support to the functioning of a central service." Oxford English Dictionary (online ed. 2020). A broader definition of "ancillary" would render Congress' use of the term "exclusive purpose" utterly superfluous. *See Comm'r v. Clark*, 489 U.S.  726, 739 (1989) (Courts read statutory exceptions "narrowly in order to preserve the primary operation of the [main] provision."); *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 91 (2d Cir. 2016). The PJSTVSA's lead sponsor, Senator Lankford explained that the "exception in the language for 'ancillary' activities is intended to permit only essential

Since January 4, 2020, Defendants have maintained offices not used exclusively for the purpose of conducting official UN business but has instead been used to publish "political material intended to influence the foreign policies of the United States." *Meese v. Keene*, 481 U.S. 465, 470 (1987); AC ¶¶ 75-95; Yalowitz Decl. ¶¶ 203-224. Such media activities are "not conducted in furtherance of the PLO's [UN] observer status." *Klinghoffer v. SNC Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991). Thus, "speeches" "interviews" "media appearances" and "informational pamphlets" are all "sufficiently separate from [UN] activities that they may be considered in determinizing" whether to exercise personal jurisdiction." *Klinghoffer v. SNC Achille Lauro*, 795 F. Supp. 112, 114 (S.D.N.Y 1992).

### C.  The PJSTVA is Constitutional

The PJSTVA gave Defendants a choice and a fair warning: cease non-UN activities in the United States, cease making payments to terrorist designees or their families, or, should they fail to do so, be deemed to consent to United States jurisdiction over ATA claims. Defendants could have ceased engaging in non-U.N. business within the United States after January 4, 2020 or

---

support or services that are absolutely necessary to facilitate the conduct of diplomatic activities expressly exempted in the bill." 165 Cong. Rec. S7182 (Dec. 19, 2019).

A counter-statement by Senator Leahy, 166 Cong. Rec. S627 (Jan 28, 2020), an opponent of the PJSTVA in committee, Reported Roll-Call Vote on S. 2132, Senate Judiciary Committee (Oct. 17, 2019), https://bit.ly/330H0JJ, was made five weeks after enactment, and at the behest of Defendants' counsel. *See* Yalowitz Decl. Ex. 60. Arguments based on "subsequent legislative history" "should not be taken seriously." *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1747 (2020) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990). Furthermore, "[t]he views of opponents of a bill with respect to its meaning . . . are not persuasive . . . . It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Edwards J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Counsel*, 485 U.S. 568, 585 (1988). Finally, Senator Leahy's statement is not in accord with the plain meaning of the word ancillary and runs contrary to the rule of construction require the statute to be "liberally construed to carry out of the purpose of Congress to provide relief for victims of terrorism." PJSTVA, § 903(d)(1)(A) (18 U.S.C. § 2333 note).

ceased paying the designees and families of terrorists after April 18, 2020—but they knowingly and voluntarily chose not to do so.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other rights, be waived." *Ins. Corp. of Ireland*, 456 U.S. at 703. So long as defendant's conduct is "knowing and voluntary," the court's exercise of jurisdiction is consistent with due process. *Wellness Int'l*, 135 S. Ct. at 1948; *Roell*, 538 U.S. at 590; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Even without minimum contacts, "personal jurisdiction can be based on the defendant's consent to have the case adjudicated in the forum." 4 Wright & Miller's Fed. Prac. & Proc. § 1067.3 (4th ed. 2008); s*ee Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) ("Even where neither the forum state's long arm statute nor the due process minimum contacts analysis is satisfied, a court may exercise personal jurisdiction over a party if the party consents."); *BouMatic, LLC v. Idento Operations*, *BV*, 759 F.3d 790, 793 (7th Cir. 2014); U.S. Br. at 10–14, *Klieman v. Palestinian Auth.*, No. 15-7034 (D.C. Cir. Mar. 13, 2019), Doc. No. 1777372 ("Section 4 [of the ATCA] operates similarly to other legal arrangements through which a defendant may validly consent to personal jurisdiction.").

Defendants were aware of the PJSTVA and, at a minimum, were specifically informed of the PSJVTA's passage on December 26, 2019. *See* Letter from Tejinder Singh to Hon. Mark Langer, *Shatsky v. Palestine Liberation Org.*, No. 17-7168 (D.C. Cir. Dec. 26, 2019), Doc. No. 1821532. And on December 26, 2019, Defendants themselves expressly acknowledged that the statute would apply to them if they acted (after April 18, 2020) to "make payments of the type specified in respect of attacks on U.S. nationals." Letter from Gassan Baloul to Hon. Mark Langer, *Shatsky v. Palestine Liberation Org.*, No. 17-7168 (D.C. Cir. Dec. 30, 2019), Doc. No. 1821944. Defendants by choosing to continue consented to jurisdiction.

The PJSTVA itself advances "critical U.S. interests by seeking to enable U.S victims of terrorism to vindicate their rights in U.S courts while simultaneously protecting our own national security interests and those of our close ally, Israel." Yalowitz Decl, Ex. 62, Letter from Sec. Michael R. Pompeo to Sen Charles E. Grassley (June 19, 2019). It reasonably advances the United States' interest in combating terrorism, which is "an urgent objective of the highest order." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010). It reasonably advances the United States' responsibility to protect U.S citizens wherever they travel, and Congress may reasonably determine that, even outside of U.S. territory, "special protection for U.S. nationals serves key national interests." *Gambe v. United States*, 139 S. Ct. 1960, 1967 (2019). It reasonably advances the United States' interest in supporting "fair compensation for American victims of terrorism from those responsible for their losses." Statement of Interest of the United States, *Sokolow (Waldman) v. PLO*, No. 1:04-cv-0397-GBD, D.E. 935-1 ¶ 12.  Finally, it reasonably advances the United States' interest in achieving Middle East peace by disrupting and deterring terrorism. *See* Taylor Force Act, Pub. L. No. 115-141, tit. X, div. S, § 1004(A)(1)(B), 132 Stat. 348, 114 (2018) (codified at 22 U.S.C. § 2378c-1).

## III.    STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "must accept as true all [factual] allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Heinert v. Bank of Am. N.A.*, No. 20-0691, 2020 U.S. App. LEXIS 35733, at *2-3 (2d Cir. Nov. 13, 2020) (quotation marks and citations omitted, brackets supplied by court). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *S.E.C. v. Apuzzo*, 689 F.3d 204, 207 (2d Cir. 2012) (quotation marks omitted).

## IV.   PLAINTIFFS HAVE ADEQUATELY ALLEGED A PRIMARY VIOLATION OF 18 U.S.C. § 2333(a)

Defendants incited, solicited and materially supported the murder of Ari Fuld, an American, by (1) systematically creating a policy of promoting terrorism through financial incentives and legal entitlements to terrorists; (2) repeatedly re-affirming that policy in the days leading up to the murder; (3) attempting to incite violence, and Fuld's murder, by falsely proclaiming the day before the murder that Israel was expropriating one of Islam's holiest sites, and then (4) paying the family of the murderer pursuant to PA and PLO law and policy. AC ¶¶ 31-67, 96-115. These actions objectively appear to have been undertaken with the purpose of intimidating the Israeli civilian population and influencing the policy of the Israeli government by intimidation and assassination. AC ¶¶ 118.

### A.  Standard for Primary Liability Under 18 U.S.C. § 2333(a)

"[T]he ATA was designed to give American nationals broad remedies in a procedurally privileged U.S. forum . . ." *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 422 (E.D.N.Y. 2009). 18 U.S.C. § 2333(a) provides that:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

*Id.*

"International terrorism" is defined in 18 U.S.C. § 2331 in relevant part as "activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State . . . ; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States . . . ."

So, "[f]or an act to constitute 'international terrorism' it must satisfy four separate

requirements:

> (1) it must involve violent acts or acts dangerous to human life; (2) it must qualify as a violation of the criminal laws of the United States or of any State if it were committed within a United States jurisdiction; (3) it must appear to be intended to intimidate a civilian population, influence government policy, or affect the conduct of government by certain specified means; and (4) it must occur primarily outside the United States or transcend national boundaries.

*Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) (quotations and

citations omitted).

"The requirement to "'appear to be intended . . .' does not depend on the actor's

beliefs, but imposes on the actor an objective standard to recognize the apparent

intentions of actions." *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d

Cir. 2014) (ellipses in original). The Second Circuit has also interpreted the language "by

reason of an act of international terrorism" to mean that plaintiffs also must allege that

the "activities" proximately caused the plaintiff's injury. *See Rothstein v. UBS AG*, 708

F.3d 82, 95 (2d Cir. 2013). Thus, "a plaintiff must plausibly allege that the defendant's

actions were a 'substantial factor in the sequence of responsible causation' leading to the

plaintiff's injury and that the plaintiff's injuries were 'reasonably foreseeable' or

'anticipated as a natural consequence' of those actions." *Freeman v. HSBC Hldgs. PLC*,

413 F. Supp. 3d 67, 84 (E.D.N.Y. 2019) (quoting *Rothstein*, 708 F.3d at 91).

**B.  Defendants' Actions Violated United States Federal and State Criminal Law**

"[F]or an act to constitute 'international terrorism,' it must violate federal or state law if committed within this country." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 325-26 (2d Cir. 2018). "For purposes of a civil claim, the predicate violation of a criminal provision is decided under a preponderance standard." *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553-54 (E.D.N.Y. 2012) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 491, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)). In this country, scores of laws would be violated by an individual or entity that creates (1) a general policy and system to incentivize murder and violence of "enemies" (defined by ethnicity, religion, or national origin) by paying all who commit such acts, or their families, upon their death or imprisonment, and (2) disseminates and reaffirms such policy in mass media, (3) regularly makes such payments under this policy, and (4) thereafter uses mass-media on specific occasions to incite by falsely claiming that those "enemies" are about to take a sacred site away, and then (5) actually pays the killer's family pursuant to this general policy.[3]

Among the many other crimes that would be committed had these actions been done in the United States are:[4]

1) NY Penal L. § 100.00-15, under which, inter alia, "[a] person is guilty of criminal solicitation . . . when, with intent that another person engage in conduct constituting a crime, he solicits, requests, commands, importunes or otherwise attempts to cause such other person to engage in such conduct." "It is no defense to a prosecution for criminal solicitation that the person solicited could not be guilty of the crime solicited owing to unawareness of . . . the defendant's criminal purpose or to other factors precluding the mental state required for the commission of the crime in question." *Id.* Plaintiffs plausibly allege that Defendants acted with intent and that their conduct constitutes "an affirmative solicitation, request, command or some other type of attempt aimed at causing such other

---

[3] Other than to argue that the ATA's material support statutes cannot here constitute ATA primary criminal law violations, Defendants fail to address any particular state and federal criminal laws.

[4] The *mens rea* is for the underlying criminal act, not a separate requirement under 18 U.S.C. § 2333. *See Weiss*, 768 F.3d at 207 (noting that while 18 U.S.C. § 2333 does not require a mental state, it incorporates the mental state of the qualifying criminal act alleged).

person to commit such crime." *People v. Allen*, 681 N.Y.S.2d 216, 218-19, 703 N.E.2d 1229, 1231-32 (1998).

2) NY Penal L. § 120.20 under which "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." *See also People v. Vizzini*, 359 N.Y.S.2d 143, 151 (Sup. Ct. 1974) (on motion to dismiss, striking firefighters could be criminally liable for reckless endangerment because of the substantial risk of danger posed to others by their strike even without "the performance of a physical act.").

3) NY Penal L. § 145.25 under which "[a] person is guilty of reckless endangerment of property when he recklessly engages in conduct which creates a substantial risk of damage to the property of another person in an amount exceeding two hundred fifty dollars."

4) NY Penal L. § 240.08 under which "[a] person is guilty of inciting to riot when he urges ten or more persons to engage in tumultuous and violent conduct of a kind likely to create public alarm." *People v. Upshaw*, 741 N.Y.S.2d 664, 666 (Crim. Ct. 2002) (valid claim where individual "shouted at a gathering crowd of approximately 50 people in praise of the [September 11, 2001] terrorist attack and the resulting deaths of police officers, firefighters, and civilians[.]").

5) NY Penal L. § 115.00 under which "A person is guilty of criminal facilitation . . . when, believing it probable that he is rendering aid: 1. to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony." "It is no defense to a prosecution for criminal facilitation that: . . . the defendant himself is not guilty of the felony which he facilitated because he did not act with the intent or other culpable mental state required for the commission thereof." NY CLS Penal § 115.10(3).

6) NY Penal L. § 20.00 under which "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

7) NY Penal L. § 125.15(1) under which "A person is guilty of manslaughter in the second degree when: . . .He recklessly causes the death of another person."

8) NY Penal L. § 125.10 under which "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

9) NY Penal L. § 125.25 by which a person is guilty of murder if "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

10) 18 U.S.C. § 373(a) which provides that "[w]hoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, solicits, commands, induces, or otherwise endeavors to persuade such other person to engage in such conduct, shall be imprisoned . . ."

11) 18 U.S.C. § 2101 which provides that "Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent—
    (1) to incite a riot; or
    (2) to organize, promote, encourage, participate in, or carry on a riot; or
    (3) to commit any act of violence in furtherance of a riot; or
    (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph [paragraph (1), (2), (3), or (4) of this subsection]—shall be fined . . . or imprisoned . . ."

Defendants' conduct was intentional and violated these and other similar criminal statutes in each of the fifty states.[5]

## C. Defendants' Actions Were Dangerous to Human Life

Defendants' actions were dangerous to human life. First, by enacting and legislating a "legal entitlement system" to those who commit violent acts against people appearing to be Jewish in the State of Israel or the West Bank, Defendants have created an inherently dangerous, indeed reckless, policy and practice that has resulted in grave loss of life. These acts are specifically dangerous to American life, as 15% of the Jewish population in the West Bank are

---

[5] *See also e.g.*, Alabama Title 13A. Criminal Code § 13A-4-1 ("A person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a crime, he solicits, requests, commands or importunes such other person to engage in such conduct."); Texas Title 2, Criminal Code Sec. 7.02(a) ("A person is criminally responsible for an offense committed by the conduct of another if . . . (2)  acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.").

American, *see* Haaretz, 60,000 American Jews Live in the West Bank, New Study Reveals, August 27, 2015,[6] and "Americans are frequent visitors to and sojourners in Israel … many U.S. citizens live in Israel." *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 694 (7th Cir. 2008); *See also Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 90 (D.D.C. 2006) ("The ripples of harm that flow from such barbarous acts rarely stop at the banks of the Mediterranean Sea or the Jordan River . . .").

Defendants' reliance on *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), is misplaced because that case merely held that "the provision of material support [under 18 U.S.C. § 2339B] to a terrorist organization does not invariably equate to an act of international terrorism" without an additional showing that the material support also involves danger and manifests the requisite apparent intent. *Id.* at 326. Plaintiffs here are not relying on § 2339B, and in addition to alleging the criminality of Defendants' actions under federal and state law, have plausibly alleged §§ 2331 and 2333's other elements.

### D. Defendants' Actions Objectively Appear to Have Been Undertaken to Intimidate the Israeli Civilian Population and Influence the Policy of The Israeli Government By Intimidation And Assassination

To state a primary ATA claim, Plaintiffs only need to allege that, objectively, Defendants' acts appear to be intended to intimidate a civilian population or influence government policy by intimidation.  This intent "does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss*, 768 F.3d at 207 n.6. "[I]t is not a state-of-mind requirement; it is a matter

---

[6] available at: https://www.haaretz.com/.premium-study-60k-u-s-jews-live-in-west-bank-1.5392253

of external appearance rather than subjective intent, which is internal to the intender."
*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 694 (7th Cir. 2008).

Defendants have enacted a policy of promoting terrorism through financial incentives and legal entitlements to terrorists, reaffirmed that policy, then incited violence, and Fuld's murder, by falsely proclaiming in the days before the murder that Israel was expropriating one of Islam's holiest sites, and paid the murderer's family pursuant to that policy. The objective of such a policy, and such actions, its intent, objectively appears to be to intimidate the Israeli civilian population and to influence Israeli and US government policy by intimidation. AC ¶¶ 118.

*Brill v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 4132, at *9 (N.D. Cal. Jan. 9, 2017), cited by Defendants to support their claim that their payments lack "terroristic intent," is inapposite. Def. Br. at 12. *Brill* merely stands for the proposition that an entity that purchases goods from an entity that pays terrorists families is not necessarily liable under the ATA. In that case, Chevron, in purchasing oil from Saddam Hussein's regime in Iraq under the Oil for Food program, allegedly paid kickbacks to Hussein through third parties. *Brill*, 2017 U.S. Dist. LEXIS 4132, at * 8. Terror victims in Israel thereafter sued Chevron because Hussein's regime paid terrorists' families. *Id.* The Court there dismissed the claim without prejudice to replead finding that "Chevron is alleged at most to have made payments to third parties," not Hussein directly (who then himself paid terrorists), *id.* at *18, and the complaint had merely alleged "that Chevron should have, but didn't, take a harder look at the consequences of its payments." *Id.* at *19.

Likewise, in *Stansell v. BGP, Inc.*, 2011 U.S. Dist. LEXIS 39808 (M.D. Fla. Mar. 31, 2011), captives of the Colombian terror organization FARC sued oil companies who

paid FARC "in exchange for the FARC's agreement to allow Defendants to conduct its oil exploration activities without fear of terrorist acts." *Id.* at * 4-5 The Court there dismissed the claim with leave to replead because "this allegation would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B)," i.e., to intimidate a civilian population and government. *Id.* at * 26. Here, in contrast, Defendants' policy of promoting terroristic killing through financial incentives and legal entitlements to terrorists, affirming it in the media, and inciting violence in the media, are plausibly alleged as appearing to have a § 2331(1)(B) purpose.

### E. Defendants' International Terrorism Was A 'Substantial Factor In The Sequence Of Responsible Causation' Leading To The Plaintiff's Injury And Plaintiff's Injuries Were 'Reasonably Foreseeable' Or 'Anticipated As A Natural Consequence' Of Those Actions

To state an ATA claim, a plaintiff must allege injury "by reason of an act of international terrorism," which means "a plaintiff must plausibly allege that the defendant's actions were a 'substantial factor in the sequence of responsible causation' leading to the plaintiff's injury and that the plaintiff's injuries were 'reasonably foreseeable' or 'anticipated as a natural consequence' of those actions." *Freeman*, 413 F. Supp. 3d at 84 (quoting *Rothstein*, 708 F.3d at 91). "*Rothstein*'s proximate causation requirement does not require a plaintiff to allege that the defendant's conduct was a 'but for' cause of his injuries." *Freeman*, 413 F. Supp. 3d at 84 n.24 (citing *Gill*, 893 F. Supp. 2d at 507 ("But for' cause cannot be required in the section 2333(a) context.")). "Temporal and factual issues will often be crucial, in particular cases, in proximate cause inquiries pursuant to section 2333(a)." *Id.* at 508.

Plaintiffs plausibly allege that Defendants' act of international terrorism was a substantial factor in the chain of causation of Plaintiffs' injuries, and that the injury was a

reasonably foreseeable consequence of Defendants' actions. "[F]oreseeability includes the probability of the occurrence of a general type of risk involving the loss, rather than the probability of the occurrence of the precise chain of events preceding the loss …" *Anibal Del Cid v. Beloit Corp.*, 901 F. Supp. 539, 544-45 (E.D.N.Y. 1995) (quoting *Tucci v. Bossert,* 53 A.D.2d 291, 293, 385 N.Y.S.2d 328, 331 (2d Dep't 1976). "If a reasonably prudent person could foresee that a harm like the one that the plaintiff suffered might result from his or her actions, then there is proximate causation." *Zivojinovich v. Barner*, 525 F.3d 1059, 1069 (11th Cir. 2008).

By enacting a policy and program to incentivize violent acts, publicizing it in the media and having regularly done so in the past, and by issuing libelous and inciteful "fighting words" in the mass media, it was reasonably foreseeable that someone would listen and act.  These actions, these policies, directly led the Palestinian youth to murder Mr. Fuld. AC ¶¶ 98, 100.[7]

Unlike here, where Plaintiff has plausibly alleged a direct causal connection between Defendants' incitement and terrorist-entitlement programs and the killing of Ari Fuld, in *Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018), cited by Defendants, Def. Br. at 17, the defendant bank was removed from the terrorist organization that committed the killing because it merely provided banking services to Sudanese banks who in turn provided banking services to Al Qaeda, who in turn killed Americans. *Owens*, 897 F.3d at 276. Likewise, in *Atchley v. AstraZeneca UK Ltd.*, No. 17-2136 (RJL), 2020 U.S. Dist. LEXIS 126469, at *6 (D.D.C. July 17, 2020), also cited

---

[7] These alleged facts also support a plausible allegation of "but-for" causation, that is but for Defendants' incitement in the mass-media and its terrorist entitlement programs publicized in the mass-media, the Palestinian youth would not have committed the killing.

by Defendants, Def. Br. at 17 , the defendant pharmaceutical company contracted with Iraqi government ministries to supply medical goods, and these government ministries were allegedly used by Shiite militias that killed Americans. *Atchley*, 2020 U.S. Dist. LEXIS 126469, at *28 (no causation because Astra Zeneca contracted with "a government agency responsible for Iraq's healthcare system."). Here, there is no such intermediary between Defendants' conduct and the individual who killed Mr. Fuld. Defendants themselves made the entitlement policy and inciting statements and paid the terrorist's family.

Defendants also disclaim responsibility, citing to a footnote in *Sokolow v. Palestine Liberation Org.*, 60 F. Supp. 3d 509, 517, n.11 (S.D.N.Y. 2014), that said on a motion for summary judgment, standing alone, "post-attack financial support . . . is not sufficient to demonstrate that Defendants were responsible for the attacks." *Id.*; Def. Br. at 12-13, 18. [8] But the court in *Sokolow* denied summary judgment, the case went to trial, and the jury was permitted to consider the payments in the context of all the facts of the case. Here, Plaintiffs plausibly allege far more than mere "post-attack financial support." Defendants have implemented a general policy and practice of entitlement programs and financial payments disseminated in the mass-media and widely known, combined with contemporaneous incitement, and post-attack financial support, all of which motivated the actions of the killer. AC ¶¶ 98, 100. In *Shatsky v. PLO*, 2017 U.S. Dist. LEXIS 94946 *33 (D.D.C June 20, 2017), the court there expressly noted that evidence suggesting that

---

[8] Likewise, *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 532 (S.D.N.Y. 2019), Def. Br. at 17, merely affirmed the uncontroversial proposition that simply and solely providing banking services to a terror group may be to attenuated from that group's killing to say such banking services were the proximate cause of the killing.

a terrorist knew his family would receive martyrdom payments, and that he was

motivated by such payments, could make "post-attack payments" a basis to deny a

defendant's summary judgment motion. *Id.* * 33.

Plaintiffs here allege much more than a mere post-attack payment to a terrorist—

they plausibly allege a widely disseminated practice, policy and legal entitlement system,

combined with direct incitement, that would have been criminal in the United States and

that foreseeably and actually led to the murder of Ari Fuld.  Plaintiffs have therefore

adequately pled a primary ATA claim.

## V.     PLAINTIFFS HAVE ADEQUATELY PLED THEIR NON-FEDERAL CLAIMS

First, Defendants are "public bodies" under CPLR 1023 which may be sued under New

York State law. Under New York Law '"Public body' means any entity, for which a quorum is

required in order to conduct public business and which consists of two or more members,

performing a governmental function for the state or for an agency or department thereof . . . or

committee or subcommittee or other similar body of such public body." NY Pub Off. L. § 102.

Defendants engage in all aspects of governance and "public business," including taxation,

judicial enforcement, security, policing, and foreign affairs, AC ¶ 21, and are more correctly

understood as a public body rather than an "unincorporated association" within the meaning of

CPLR 1025.

Even the Court in *Sokolow,* while incorrectly holding that Defendants were an

unincorporated association, acknowledged that "Plaintiffs are correct that Defendants do not fit

perfectly within the description of an unincorporated association as described in cases such

as *Martin v. Curran*, 303 N.Y. 276, 280-81, 101 N.E.2d 683 (N.Y. 1951)." *Sokolow*, 60 F. Supp.

3d 524 n.21. On appeal, the Second Circuit only evaluated jurisdictional issues, and found that

Defendants were unincorporated associations under federal law for jurisdictional purposes, without deciding their status under New York state law for purposes of substantive non-federal liability. *See Waldman v. PLO*, 835 F.3d 317, 328, 332 (2d Cir. 2016).

Second, Defendants do not argue that Israeli law applies to Plaintiffs' negligence claim, but merely argue that "to the extent" it does apply, it requires Plaintiffs to allege "but-for" causation. Def. Br. at 25. Plaintiffs have plausibly alleged facts that demonstrate "but-for" causation if proven after discovery: but for Defendants' incitement in mass-media, and its terrorist-supporting entitlement program publicized in the mass-media, the Palestinian youth would not have committed the killing.

Finally, vicarious liability (Count 9) is dependent on the nature of the relationship between the parties, and Plaintiff has plausibly alleged a sufficient relationship to make it fair and reasonable to impose such liability. *See* Restatement 2d of Conflict of Laws, § 174 (2nd 1988) ("It is enough that the forum believes that the relationship between the defendant and the other person affords a fair and reasonable basis for the imposition of such liability. In reaching its decision as to what is fair and reasonable, the forum will be influenced by rules of vicarious liability prevailing in other states.")

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motion to dismiss in its entirety.

Dated: December 22, 2020
     New York, New York

THE LAW OFFICE OF
JEFFREY FLEISCHMANN, P.C.

By: ___/s/_____
     Jeffrey Fleischmann, Esq.
150 Broadway, Suite 900
New York, NY 10038
Tel: 646-657-9623
Fax: 646-351-0694
Email: jf@lawjf.com

-and-

THE SILVERMAN LAW FIRM
Samuel Silverman, Esq.
16 Squadron Blvd.
New City, NY 10956
Tel: 845-517-0351
Email: silvermans@silvermanlaw.net

*Counsel for Plaintiffs*

THE LAW OFFICE OF ALLEN SCHWARTZ, ESQ.
Allen Schwartz, Esq.
2635 Nostrand Ave
Brooklyn, NY 11210
Tel: 347-460-5379
Email: allen@allenschwartzlaw.com

*Of-Counsel to The Law Office of Jeffrey Fleischmann, P.C.*

26