# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

MARK I. SOKOLOW, *et al.*,

                              Plaintiffs,

         vs.

THE PALESTINE LIBERATION
ORGANIZATION, *et al.*,

                              Defendants.

No. 04 Civ. 00397 (GBD) (RLE)

## <u>DECLARATION OF NICK KAUFMAN</u>

Nick Kaufman hereby declares pursuant to 28 U.S.C. § 1746, as follows:

1.       I am a registered member of the Bar of Israel. I gave expert testimony at trial in this case in January 2015. I respectfully submit this declaration to provide information and opinions to the Court that are germane to the convictions of specified individuals. This declaration has the following sections:

   a.   A description of my background.

   b.   A summary of the names of certain individuals who pled guilty to perpetrating acts of terrorism of relevance to the current phase of this case.

   c.   A summary of the names of certain individuals who were convicted of perpetrating acts of terrorism of relevance to the current phase of this case.

   d.   A summary of certain additional information contained in the convictions reviewed.

   e.   My expert opinion on the quality of justice dispensed by the Israeli courts.

1

**My Background**

2.     As the Court is aware, I provided expert testimony at the trial of this case in January 2015. Prior to providing such testimony, I submitted an expert report, a copy of which is annexed as Exhibit A.

3.     I reiterate and update my expertise here for the Court's convenience. I have been practising criminal law since 1991. Formerly a member of the Bar of England & Wales, I am currently a registered member of the Bar of Israel (from 1995). In 1993, I was enlisted into the Israel Defence Force ("IDF") where, as a new immigrant, I served for approximately 15 months in the International Law Department of the Office of the Military Advocate General. Upon release, I joined a Tel Aviv law firm (Herzog, Fox & Ne'eman), thereafter relocating to Jerusalem where I was employed for 16 years as an assistant district attorney in Jerusalem. In this role, I prosecuted crimes of all natures ranging from car thefts to murder and serious sexual offences. I acquired particular experience handling cases involving offences against the security of the State of Israel which were investigated by the Israel General Security Services (otherwise known as Sherut Ha-Bitachon Ha-Klali or Shabak).

4.     From 2003-2004 and from 2009-2010, on approved leaves of absence from the Office of the District Attorney of Jerusalem, I served as an assistant prosecutor at the International Criminal Tribunal for the Former Yugoslavia and the International Criminal Court respectively.

5.     After returning to Israel in 2010, and working for one more year in the Office of the District Attorney of Jerusalem, I left the civil service for private practice. Since then, I have handled many cases of both an international nature and of a domestic nature — primarily as criminal defence counsel. Among my international clients, both former and present, I include Jean-Pierre Bemba (the ex-Vice President of the Democratic Republic of the Congo), Callixte Mbarushimana

2

(the alleged General-Secretary of the FDLR operating out of the Democratic Republic of the Congo), Aisha and Saadi Gaddafi (the children of the former Libyan leader — Colonel Muammar Gaddafi), Kang Kek Iew a.k.a. "Duch" (the Commander of the Khmer Rouge prison — Tuol Sleng ("S-21"), and Charles Ble Goude (former Minister of Youth in Cote d'Ivoire).

6. In addition to the aforementioned, from 2002 onwards, as a requirement of my military reserve duty in the IDF, I was required to sit, from time-to-time, as a judge at the Judea Military Court (covering the southern West Bank). In this capacity, I presided over countless trials and detention remand applications — both contested and agreed. As a result of the aforementioned experience, I am extremely familiar with the workings of the military courts.

**Summary of Guilty Pleas**

7. I have reviewed court records concerning the individuals in the table below. The court records are available to the public. Each of the following individuals pled guilty to participating in a terror attack on the date and in the place indicated:

| No. | Date of Attack | Location | Individual Who Pled Guilty |
|-----|----------------|----------|----------------------------|
| 1. | 25 February 1996 | Jerusalem | Akram Ibrahim Mahmoud Qawasme |
| 2. | 25 February 1996 | Jerusalem | Ayman Mohammed Nazmi Abd al-Jalil al-Razim |
| 3. | 25 February 1996 | Jerusalem | Mohammed Atiya Mahmoud Abu Warda |
| 4. | 31 December 2000 | Ofra | Mustafa Mahmoud Mohamed Masalmani |
| 5. | 09 August 2001 | Jerusalem | Ahlam al-Tamini |
| 6. | 09 August 2001 | Jerusalem | Bilal Yaqub Ahmed Barghouti |
| 7. | 09 August 2001 | Jerusalem | Muhammad Waal Muhammad Daghlas |
| 8. | 17 January 2002 | Hadera | Ahmed Ali Mahmoud Abu-Khader |
| 9. | 22 January 2002 | Jerusalem (Jaffa Road) | Mohamed Sami Ibrahim Abdullah* |
| 10. | 22 January 2002 | Jerusalem (Jaffa Road) | Ahmed Taleb Mustafa Al-Barghouti* |
| 11. | 22 January 2002 | Jerusalem (Jaffa Road) | Ibrahim Adnan Najib Abdel Hai* |

---

* Indicates an individual whose case I reviewed in my Expert Report earlier in this case.

| 12. | 22 January 2002 | Jerusalem (Jaffa Road) | Mohamed Abdel Rahman Salem Mousleh[*] |
| 13. | 22 January 2002 | Jerusalem (Jaffa Road) | Bashar Barghouti[*] |
| 14. | 18 February 2002 | Kibbutz Kissufim | Nizar Khadar Mohammed Dahliz |
| 15. | 21 March 2002 | Jerusalem | Kahira Sa'id Al-Sa'di[*] |
| 16. | 21 March 2002 | Jerusalem | Abdel Karim Ratab Yunis Aweis[*] |
| 17. | 21 March 2002 | Jerusalem | Sana'a Mohamed Shehadeh[*] |
| 18. | 24 March 2002 | Umm Safah (Near) | Tamar Rassem Salim Rimawi |
| 19. | 24 March 2002 | Umm Safah (Near) | Hussam Abdul-Kader Ahmad Halabi |
| 20. | 24 March 2002 | Umm Safah (Near) | Ahmed Hamad Rushdie Hadib |
| 21. | 19 May 2002 | Netanya | Allam Ahmad Asad Kaabi |
| 22. | 19 May 2002 | Netanya | Du'a Ziyad Jamil Jayusi |
| 23. | 31 July 2002 | Jerusalem (Hebrew Univ.) | Abdullah Ghaleb Abdullah Barghouti[*] |
| 24. | 31 July 2002 | Jerusalem (Hebrew Univ.) | Ahmed Taleb Moustafa Barghouti[*] |
| 25. | 19 September 2002 | Tel Aviv | Mahmud Hamad Mahmud Sharitah |
| 26. | 29 January 2003 | Israeli Highway Route 60 (near Ein Yabrud) | Hisham Abd al-Qader Ibrahim Hijazi |
| 27. | 05 March 2003 | Haifa | Fadi al-Ja'aba |
| 28. | 05 March 2003 | Haifa | Munir Rajbi |
| 29. | 05 March 2003 | Haifa | Mu'az Waal Taleb-Abu Sharakh |
| 30. | 07 March 2003 | Kiryat Arba | Abdallah Ahmad Abd Abu Seif |
| 31. | 18 May 2003 | Jerusalem | Samer Atrash |
| 32. | 11 June 2003 | Jerusalem | Omar Salah Sharif |
| 33. | 20 June 2003 | Israeli Highway Route 60 | Hisham Abd al-Qader Ibrahim Hijazi |
| 34. | 20 June 2003 | Israeli Highway Route 60 | Khaled Abd al-Mua'z Zein al-Din Omar |
| 35. | 20 June 2003 | Israeli Highway Route 60 | Ahmad Khaled Dawud Hamed |
| 36. | 19 August 2003 | Jerusalem | Nasim Rashad Abd el-Wadud Za'tari |
| 37. | 19 August 2003 | Jerusalem | Abdallah Yihya Sharbati |
| 38. | 19 August 2003 | Jerusalem | Jalal Jamal Ya'mur |
| 39. | 29 January 2004 | Jerusalem | Mohamed Ma'ali[*] |
| 40. | 17 April 2006 | Tel Aviv | Muhammad Amoudi |
| 41. | 17 April 2006 | Tel Aviv | Fawaz Rajbi |

| 42. | 12 June 2014 | Halhul (kidnapped) | Ahmed Abrahim Mohamad Qawasme |
|-----|--------------|--------------------|-------------------------------|
| 43. | 12 June 2014 | Halhul (kidnapped) | Maher Mustpha Mohamad al-Qawasme |
| 44. | 12 June 2014 | Halhul (kidnapped) | Hasan Ali Qawasme |
| 45. | 12 June 2014 | Halhul (kidnapped) | Hisham Isa Ibd al-Rahman Qawasme |
| 46. | 01 October 2015 | Israeli Highway Route 60 | Karam Lutfi Fatahi Razek Al Masri |
| 47. | 19 November 2015 | Gush Etzion | Mohammed Abdel Basset al-Haroub |
| 48. | 08 March 2016 | Tel Aviv (Jaffa) | Muhammad Awieda |
| 49. | 08 March 2016 | Tel Aviv (Jaffa) | Bilal Sawan |
| 50. | 13 December 2018 | Ofra | Asem Umar Saleh al-Barghouti |
| 51. | 13 December 2018 | Ofra | Anees Ahmd Yosef Mashal |

**Summary of Convictions After Trial**

8.     I have reviewed court records concerning the individuals in the table below. The court records are available to the public. Each of the following individuals was convicted of participating in a terror attack on the date and in the place indicated:

| No. | Date of Attack | Location | Convicted Individual |
|-----|----------------|----------|----------------------|
| 1. | 14 May 1979 | Tiberias | Ziad Abu Ein Tripi |
| 2. | 02 May 1980 | Hebron | Yasser Hasin Mohammed al-Zaydat |
| 3. | 02 May 1980 | Hebron | Adnan Jabbar Mahmoud Jabbar |
| 4. | 02 May 1980 | Hebron | Tayseer Mahmoud Taha Tayseer |
| 5. | 02 May 1980 | Hebron | Mohammed Abdel Rahman Salah Shubaki |
| 6. | 10 October 1994 | Lod, Israel (abduction) | Jihad Ya'amur |
| 7. | 25 February 1996 | Jerusalem | Hassan Abdel Rahman Hassan Salameh |
| 8. | 09 June 1996 | Beit Shemesh | Raid Fakhri Abu Hamadiyah |
| 9. | 09 June 1996 | Beit Shemesh | Jamal Fatah Tzabich Al Hor |
| 10. | 09 June 1996 | Beit Shemesh | Rahman Ismai Abdel Rahman Ghaneimat |
| 11. | 30 July 1997 | Jerusalem (Mahane Yehuda) | Moaz Sa'id Ahmed Sa'id Bilal |
| 12. | 04 September 1997 | Jerusalem | Moaz Sa'id Ahmed Sa'id Bilal |
| 13. | 28 March 2001 | Neve Yamin | Tareq Muhammad Abd al-Latif Abu Mariam |
| 14. | 01 June 2001 | Tel Aviv (Dolphinarium) | Raed Al-Hutari |
| 15. | 17 January 2002 | Hadera | Nasser Mahmoud Ahmed Aweis |

5

| 16. | 22 January 2002 | Jerusalem (Jaffa Road) | Majed Isma'il Mohamed Al-Masri* |
| 17. | 22 January 2002 | Jerusalem (Jaffa Road) | Nasser Mahmoud Ahmed Aweis |
| 18. | 22 January 2002 | Jerusalem (Jaffa Road) | Fares Sadeq Mohamed Ghanem* |
| 19. | 27 January 2002 | Jerusalem (Jaffa Road) | Munzar Mahmoud Khalil Noor* |
| 20. | 18 February 2002 | Kibbutz Kissufim | Jihad Naim Mutzran |
| 21. | 21 March 2002 | Jerusalem | Nasser Jamal Mussa Shawish (aka Adham)* |
| 22. | 27 March 2002 | Netanya | Abbas al-Sayed |
| 23. | 07 May 2002 | Rishon Lezion | Muhammad Imran |
| 24. | 18 June 2002 | Gilo | Fahmi Id Ramdan Mashahara |
| 25. | 31 July 2002 | Jerusalem (Hebrew Univ.) | Ibrahim Jamil Abd al-Ghani Hamed* |
| 26. | 29 January 2003 | Israeli Highway Route 60 (near Ein Yabrud) | Jaser Isma'il Musa al-Barghuthi |
| 27. | 29 January 2003 | Israeli Highway Route 60 (near Ein Yabrud) | Muayad Hamad |
| 28. | 17 June 2003 | Israeli Highway Route 6 | Mohammed Mustafa Mohammed Abu Dura |
| 29. | 17 June 2003 | Israeli Highway Route 6 | Ibrahim Yusuf Ibrahim Atiya |
| 30. | 17 June 2003 | Israeli Highway Route 6 | Tarek Ahmed Abdel-Karim Hasayin |
| 31. | 17 June 2003 | Israeli Highway Route 6 | Samach Samir Mohammed Shubaki |
| 32. | 20 June 2003 | Israeli Highway Route 60 | Ahmad Mustafa Saleh Hamad |
| 33. | 29 January 2004 | Jerusalem | Ahmed Salah* |
| 34. | 29 January 2004 | Jerusalem | Ali Mohamed Abu Haliel* |
| 35. | 29 January 2004 | Jerusalem | Abdul Rahman Maqdad* |
| 36. | 29 January 2004 | Jerusalem | Hilmi Hamash* |
| 37. | 29 January 2004 | Jerusalem | Ahmed Sa'ad* |
| 38. | 22 February 2004 | Jerusalem | Izz al-din Halid Hussain al-Hamamra |
| 39. | 17 April 2006 | Tel Aviv | Fawzi Badriya |
| 40. | 18 December 2010 | Beit Shemesh | Ayad Fatafta |
| 41. | 12 June 2014 | Halhul | Hussam al-Qawasmeh |
| 42. | 12 June 2014 | Halhul | Ghassan Talal Salman Qawasme |
| 43. | 01 October 2015 | Israeli Highway Route 60 | Yahia Muhamad Naif Abdullah Hajj Hamed |

| 44. | 01 October 2015 | Israeli Highway Route 60 | Samir Zahir Ibrahim Kusa |
| 45. | 01 October 2015 | Israeli Highway Route 60 | Amjad Adel Muhamad Aliwi |
| 46. | 13 October 2015 | Jerusalem | Balal Abu-Ga'aanem |
| 47. | 01 July 2016 | S. Hebron Hills | Mohammed Abdel Mohammed al-Amarya |
| 48. | 01 July 2016 | S. Hebron Hills | Suhib Jabara Ahmed Alfakiyah |
| 49. | 01 July 2016 | S. Hebron Hills | Alaa Raed Salah Zajayer |

**Additional Information**

9.     In reviewing the aforementioned court documentation, I paid particular attention to the circumstances in which a guilty plea was entered. On at least one occasion, I noted, for example, that the accused person pled guilty and supplemented political justification for his criminal acts.

10.     In a number of instances, I noted the names of victims who lost their lives, as follows:

| No. | Date of Attack | Location of Attack | Name(s) of Victim(s) |
| --- | --- | --- | --- |
| 1. | 18 June 2002 | Gilo | Boaz Aluf, Moshe Gottlieb |
| 2. | 29 January 2003 | Israeli Highway Route 60 (near Ein Yabrud) | Jacob Steinmetz |
| 3. | 07 March 2003 | Kiryat Arba | Eli Horovitz and his spouse |
| 4. | 01 October 2015 | Israeli Highway Route 60 | Eitan Henkin |

**The Fairness of Justice Dispensed by the Criminal Courts in Israel**

11.     The documentation that I reviewed comprised convictions entered in both military and civilian courts. The procedural system of justice applied in the Israeli civilian courts is virtually identical to that applied in the military courts – which would include the Judea Military Court operating in the Southern West Bank, the Samaria Military Court operating in the Northern West Bank, the Gaza Military Court, and the Lod Military Court – the latter two of which have now ceased their operations.

12.     In my opinion and experience, the Israeli courts, both civilian and military have shown themselves to be fair and to provide due process. In examining the nature of justice dispensed by these  courts, I have taken, for my starting point, those notions of due process enshrined in the Universal Declaration of Human Rights which are of relevance to this opinion.[1] These include, inter alia, the right to equal protection of the law and equality before the law,[2] the right to a fair and public hearing by an independent and impartial tribunal,[3] the right to the presumption of innocence and a competent defence,[4] and the prohibition of torture (in so far as the defendants may claim that abusive practices may have been applied by Israeli investigating authorities in order to obtain a confession).[5]

13.     The right to a fair trial and the integrity of evidence have been protected over the course of many years by legislation both in Israel and the Occupied Territories. The laws safeguarding these rights include the Israel Judiciary Law of 1984, the Criminal Procedure Laws of 1965 (now repealed) and 1982 (currently applicable in the Israeli civilian courts) and Military Ordinance No. 378 of 1970 ("MO 378") (currently applicable in the Israeli military courts) and the Law of Evidence of 1971 (applicable in both civilian and military courts).

14.     With regard to the military courts, although the State of Israel does not recognize the *de jure* applicability of the 4th Geneva Convention of 1949 to the West Bank, it nevertheless, applies, *de facto*, such principles contained therein which do not conflict with its security interests.

---

[1] http://www.un.org/en/documents/udhr/index.shtml.

[2] UDHR, Article 7.

[3] UDHR, Article 10.

[4] UDHR, Article 11.

[5] UDHR, Article 5.

Among those principles is the obligation to be found at Article 66 which permits the military commander of an occupied territory to establish criminal courts which sit in the occupied territory itself, as do the Judea Military Court and the Samaria Military Court. By virtue of MO 378 and similar provisions applicable to other areas, the IDF established just such a system of justice in the West Bank which, over the years, has evolved to the extent that, as I mentioned above, it almost parallels the system of justice in force in the State of Israel. Indeed, as an ultimate recourse, defendants at the military courts may, in certain circumstances, petition the Israel Supreme Court for judicial review of decisions pertaining to their fundamental human rights. It should also be noted that the existence of the military courts does not prevent a defendant from being tried in Israel's civilian courts in the ordinary course.

*The Right to a Fair and Public Hearing*

15.     All trials in civilian courts in Israel are presumptively public proceedings. (*c.f.*; the Judiciary Law of 1984, Art. 3). The same is true for the military courts. For example, Article 11 of MO 378 mandates that hearings at the military courts be public unless the trial judge/s should order otherwise. Should the Prosecution desire to hold a hearing *in camera*, an opportunity is given to defence counsel to oppose such an application:

> "The military court shall hold cases brought before it in public. However, a military court may order that a case brought before it shall be conducted wholly or in part behind closed doors if it considers it appropriate to do so in the interests of the security of the Israeli Defence Forces, justice, or for public safety."

16.     Speaking from experience, I have noted, on occasion, the desire of an accused to request a hearing in camera so that he may communicate information of a sensitive nature; whether it pertains to his own medical condition or to the fact that he believes himself to be suspected of being a General Security Service collaborator. It is, furthermore, my experience that human-rights

9

NGOs — both Israeli and international — visit the military courts on a frequent basis in order to monitor the conduct of proceedings. The IDF is sensitive to criticism and the President of the Judea Military Court has, on occasion, met with foreign dignitaries and senior human rights officers to hear and address concerns.

17.    It goes without saying that the right to a fair hearing also includes the right to understand the nature of the proceedings. As a consequence, if the defendant does not understand the Hebrew language, he will be provided with simultaneous translation. *See* Criminal Procedure Law of 1982 at Arts. 140, 141. In the military courts, translation is generally effected by a native Arabic speaker — a Druze or Bedouin soldier. In this respect, I note Article 12 of MO 378:

> "If the accused does not understand Hebrew the military court shall appoint him an interpreter who will translate for him the statements made during the course of the hearing and the decisions of the court, unless the accused willingly renounces his right to have the proceedings translated wholly or in part. The accused has the right to object to a particular translator and to request that he/she be replaced."

18.    I should add that most counsel practising before the military courts, save a few exceptions, understand and speak both Arabic and Hebrew.

*Independent and Impartial Tribunals*

19.    Article 2 of the Judiciary Law and similar provisions applicable in the military courts, such as Article 7 of MO 378, each set out the principle of judicial independence. Article 2 of the Judiciary Law states that "A person vested with judicial power shall not, in judicial matters, be subject to any authority but that of the Law." Article 7 of MO 378 states that with respect to matters of jurisdiction, there is no authority other than the law and security legislation enacted by the Military Commander of the West Bank.

20.    In civilian courts, a judge presides. Such judges are appointed after selection by a committee and serve until retirement, resignation, or removal for cause. Judiciary Law, Arts. 4, 7.

Judges in Israel "enjoy public confidence, are highly regarded in society, and generally maintain an elevated social status" and "moral authority." *See* Shimon Shitrit, *Judicial Independence and Accountability in Israel*, 33 I.C.L.Q. 979, 979 (1984). In the military courts, at least one of the three members of the court is usually a career judge. The quality of the judiciary is maintained by regular mandatory continuing legal education.

*The Presumption of Innocence*

21. Article 156 of the Criminal Procedure Law of 1982 states as follows:

> "If the defendant has not admitted facts sufficient to convict him of the charge or one of the charges contained in the indictment, or if he has made an admission as stipulated but the court has not accepted it, the prosecution will present its evidence of the facts in respect of which no admission has been accepted, and it is entitled, before doing so, to make an opening statement."

22. Similarly, Article 29 of MO 378 states as follows:

> "If the accused does not admit the truth of any charge, or the court refuses to accept a plea of guilt, the court shall proceed to hear the case brought by the military prosecutor and his witnesses and any other evidence which it deems fit."

23. Additionally, the Israeli Law of Evidence of 1971, which applies in both civilian and military courts, assumes that a defendant is innocent until proved otherwise and obliges the Prosecution to make out its case beyond a reasonable doubt.

*The Right to Counsel*

24. Under Article 15 of the Israeli Criminal Procedure Law of 1982, if a defendant has no defence attorney and is facing a custodial sentence, the court must seek to appoint a defence attorney including cases where the defendant is charged with murder or an offence punishable by imprisonment of ten years or more. Similarly, Article 8 of MO 378 states as follows:

> "Every case for the prosecution which is to be tried before a military court shall be conducted by a military prosecutor appointed by the Area Commander. The accused may be defended by an advocate."

An accused has the right to appoint a legal representative to protect his interests although he cannot be obliged to accept such legal representation against his will. As was seen in some of the cases that I examined, an accused may, from time to time, choose to dispense with counsel for ideological reasons.

*The Prohibition of Improperly Obtained Confessions*

25.    As mentioned above, the laws of evidence of the State of Israel and the safeguards accruing to a suspect or accused contained therein have been incorporated into the legislation of the West Bank by virtue of Article 9 of MO 378 as amended on 23 December 1992:

> "Military courts shall conduct themselves in accordance with the same laws of evidence which apply in the Courts of the State of Israel."

26.    Where it is alleged that an accused's confession has been obtained as a result of illegal inducements, threats or, worse, torture, the law as applied by the civilian and military courts recognize the "suppression hearing" concept familiar to practitioners in the United States. Before a statement containing such a confession is introduced to the detriment of an accused, the judge will hold a "trial within a trial" during which the police officer or the General Security Service agent who registered the confession statement is cross-examined by counsel for the defence. The judge will then decide upon the admissibility of the statement. The criminal procedure applied in the civilian courts and in the military courts is, in this respect identical and offers defence counsel a valuable tool to tackle what they might perceive to be unlawfully obtained evidence. The same rationale applies to the statements of co-perpetrators or other hostile witnesses, the introduction of

12

whose testimony is sought by the Prosecution in order to incriminate an accused. Although a previous out-of-court statement may be admitted into evidence as an exception to the hearsay rule, it is a necessary pre-condition for such that both the witness and the person who registered the latter's statement be present for cross-examination in court. The latter requirement gives defence counsel the opportunity to cross-examine the police-officer or the security agent who took the statement and to put to him any allegation of unlawful inducement. Furthermore, the out-of-court statement will not be preferred to the evidence heard in court unless the judge/s hearing the case is/are satisfied that other evidence admitted during the trial corroborates it.

*The Sokolow Cases*

27.　In my expert report attached as Exhibit A, I summarized the proceedings in cases involving terror attacks of relevance to the merits of the above-captioned action. I readopt that report as if it were set out in full in this declaration.

28.　I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 11, 2020

_____
Nick Kaufman