# EXHIBIT 1

### *Fuld* Plaintiffs' PSJVTA Arguments Borrowed from *Sokolow* Plaintiffs' PSJVTA Brief

| *Fuld* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF #29) ("Opposition") | *Sokolow* Plaintiffs' Opening Brief on PSJVTA, No. 04-cv-397, ECF #1015 (S.D.N.Y. Nov. 12, 2020) ("Opening Brief") |
|---|---|
| "Defendants have a regular policy and practice of making such payments to those who commit such acts … and where an organization has "'a need for regularity' evidence of their routine practice is 'particularly persuasive'" evidence that they followed their practice on a particular occasion. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (quoting 2-406 Weinstein's Federal Evidence § 406.03)." Opposition at 8. | "Defendants' longstanding practice—enacted into PA law—of making monthly and other payments to designees of all individuals imprisoned for terror crimes and families of all suicide terrorists is, in itself, powerful evidence that Defendants have continued to make them after April 18, 2020. Where, as here, organizations have a particular "'need for regularity,' evidence of their routine practice is 'particularly persuasive'" evidence that they followed their practice on a particular occasion. *Hancock v. Am. Tel. & Tel. Co.,* 701 F.3d 1248, 1262 (10th Cir. 2012) (quoting 2-406 Weinstein's Federal Evidence § 406.03)." Opening Brief at 9. |
| "[T]hese payments are a legal entitlement under the PA Prisoners and Ex-Prisoners Law, under which "[t]he PA must give every prisoner a monthly salary . . . [p]risoners' family members shall receive a portion of the prisoners' salary" and "[t]he prisoner shall appoint an agent to collect his monthly salary or what remains of it." *See* Spitzen Decl., Ex. 1, Law No. 19 of 2004, Art. 7, translated and admitted into evidence in *Sokolow (Waldman) v. PLO,* No. 1:04-cv-0397-GBD as Pls' Ex. 512 (D.E. 909)." Opposition at 8-9. | "These salaries are a legal entitlement, according to the PA's Prisoners and Ex-Prisoners Law, which states:<br>1. The [PA] must give every prisoner a monthly salary . . . .<br>2. Prisoners' family members shall receive a portion of the prisoners' salary based on the standard of legal expenditure in effect.<br>3. The prisoner shall appoint an agent to collect his monthly salary or what remains of it.<br>Law No. 19 of 2004, Art. 7, translated and admitted in evidence as Pls.' Ex. 512 (D.E. 909) and attached to the Spitzen Declaration as Exhibit 1". Opening Brief at 10. |
| "Defendants' senior officials have made numerous statements affirming such payments either recorded on video or reported through Defendants' own official press service, AC ¶ 54, Spitzen Decl. ¶¶ 29-41". Opposition at 9. | "Defendants repeatedly admitted that they continued the prisoner and martyr payments without interruption. Spitzen Decl. ¶ 29–41." Opening Brief at 12. |
| "In an October 4, 2020 State Department report submitted pursuant to the PLO Commitments Compliance Act of 1989 and related federal laws, the State Department | "The most recent report covers the six months ending October 4, 2020. Yalowitz Decl. Ex. 27. It states that "the PA continued to make payments through the PLO to Palestinians |

| | |
|---|---|
| stated that "the PA continued to make payments through the PLO to Palestinians connected to terrorism," and "the recipients of the payments included Palestinian terrorists in Israeli prison, released Palestinian terrorists, and the families of Palestinians who were wounded or died while committing terrorist acts or in connection with terrorism." Yalowitz Decl. Ex. 27." Opposition at 9. | connected to terrorism," and specifies that "[t]he recipients of the payments included Palestinian terrorists in Israeli prison, released Palestinian terrorists, and the families of Palestinians who were wounded or died while committing terrorist acts or in connection with terrorism." *Id.*" Opening Brief at 14. |
| "18 U.S.C. § 2334(e)(3)(F) … does not limit 18 U.S.C. § 2334(e)(1)(B), the "facilities" prong, because it does not mention "facilities" and because 18 U.S.C. § 2334(e)(4) specifically provides that any "headquarters, premises, or other facility or establishment within the territory of the United States that is not specifically exempted by paragraph (3)(A) shall be considered to be in the United States for purposes of paragraph (1)(B)." By enumerating paragraph (3)(A) in this provision, and not paragraph (3)(F), Congress limited the application of paragraph (3)(F) to "activities" and not to "facilities," and "additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *United States v. Smith,* 499 U.S. 160, 167 (1991)." Opposition at 10. | "As a threshold matter, the "ancillary" activities exception does not apply at all to the "maintain[s] any office" prong. Under paragraph (4) of § 2334(e), "any office … premises, or other facility or establishment within the territory of the United States that is not *specifically exempted by paragraph (3)(A)* shall be considered to be in the United States for purposes of paragraph (1)(B)." 18 U.S.C. § 2334(e)(4) (emphasis added). Had Congress intended the catch-all (paragraph (3)(F)) to apply to Defendants' office, paragraph (4) would have said so. It does not. That omission indicates that Congress did not deem Exception (F) available for the "maintain[s] any office" prong. *See United States v. Smith,* 499 U.S. 160, 167 (1991) ("Where Congress explicitly enumerates certain exceptions … additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.")." Opening Brief at 21. |
| "Ancillary activities are "activities and services that provide essential support to the functioning of a central service." Oxford English Dictionary (online ed. 2020). A broader definition of "ancillary" would render Congress' use of the term "exclusive purpose" utterly superfluous. *See Comm'r v. Clark,* 489 U.S. 726, 739 (1989) (Courts read statutory exceptions "narrowly in order to preservice the primary operation of the [main] provision."); *Capitol Recs., LLC v. Vimeo, LLC,* 826 F.3d 78, 91 (2d Cir. 2016). Opposition at 10-11 n.2. | "The word "ancillary" is defined as "activities and services that provide essential support to the functioning of a central service." *Oxford English Dictionary* (online ed. 2020)." Opening Brief at 21.<br>"Courts read statutory exceptions "narrowly in order to preserve the primary operation of the [main] provision." *Comm'r v. Clark,* 489 U.S. 726, 739 (1989). "When a statute sets forth a general principle, coupled with an exception to it, it is logical to assume, in the face of ambiguity in the exception, that the legislature did not intend the exception to be so broad as to leave nothing of the general |

|  | principle." *Capitol Recs., LLC v. Vimeo, LLC,* 826 F.3d 78, 91 (2d Cir. 2016). … In addition, it would make no sense for Congress to have tightly focused Exceptions (A) and (B) on facilities used and activities undertaken for the "*exclusive* purpose" of "official business of the United Nations," only then to add a catch-all exception that makes the term "exclusively" superfluous." Opening Brief at 22. |
|---|---|
| Reference to Senator Lankford's statement that the ancillary exception is intended to "permit only essential support or services that are absolutely necessary"; Discussion of Senator Leahy's statement and argument that since Leahy was an opponent of the PSJVTA in committee and only made the statement after enactment at the behest of Defendants' counsel, that Leahy's statement should not be taken seriously. Opposition at 10-11 n.2. | Reference to Senator Lankford's statement that the ancillary exception is intended to "permit only essential support or services that are absolutely necessary"; Discussion of Senator Leahy's statement and argument that since Leahy was an opponent of the PSJVTA in committee and only made the statement after enactment at the behest of Defendants' counsel, that Leahy's statement should not be taken seriously. Opening Brief at 23. |
| Argument for consent to the PSJVTA via consular services, press conferences, distribution of informational materials, engagement with U.S. media to influence U.S. foreign policy. Opposition at 10. | Argument for consent to the PSJVTA via consular services, a February 2020 press conference, social media and website postings intended to influence U.S. foreign policy. Opening Brief at 17-18. |
| "Defendants have maintained offices not used exclusively for the purpose of conducting official UN business but has instead been used to publish "political material intended to influence the foreign policies of the United States." *Meese v. Keene,* 481 U.S. 465, 470 (1987); AC ¶¶ 75-95; Yalowitz Decl. ¶¶ 203-224. Such media activities are "not conducted in furtherance of the PLO's [UN] observer status." *Klinghoffer v. SNC Achille Lauro,* 937 F.2d 44, 51 (2d Cir. 1991)." Opposition at 11. | "Defendants cannot reasonably contend that their East 65th Street office is used "*exclusively* for the purpose of conducting official business of the United Nations." 18 U.S.C. § 2334(e)(3)(A) (emphasis added). … Defendants' "public relations" activities—their press conferences and media releases discussed immediately above—are not official business of the United Nations. To the contrary, such materials are propaganda—that is, "political material intended to influence the foreign policies of the United States." *Meese v. Keene,* 481 U.S. 465, 470 (1987). As the Second Circuit held nearly thirty years ago, "media" appearances and "other proselytizing" "may properly be considered as a basis for jurisdiction" precisely because such activities simply are "*not* conducted in furtherance of the PLO's [U.N.] observer status." *Klinghoffer v. SNC Achille Lauro,* |

| | |
|---|---|
| | 937 F.2d 44, 51 (2d Cir. 1991) (emphasis added)." Opening Brief at 19-20. |
| "Thus, "speeches" "interviews" "media appearances" and "informational pamphlets" are all "sufficiently separate from [UN] activities that they may be considered in determinizing" whether to exercise personal jurisdiction." *Klinghoffer v. SNC Achille Lauro,* 795 F. Supp. 112, 114 (S.D.N.Y 1992)." Opposition at 11. | "On remand in the *Klinghoffer* case, Judge Stanton of this Court exercised personal jurisdiction, holding that "speeches," "interviews," "media appearances," and distribution of "informational pamphlets" were all "sufficiently separate from [PLO's] UN activities that they may be considered in determining" whether to exercise personal jurisdiction. 795 F. Supp. 112, 114 (S.D.N.Y. 1992)." Opening Brief at 20. |
| ""Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other rights, be waived." *Ins. Corp. of Ireland,* 456 U.S. at 703. So long as defendant's conduct is "knowing and voluntary," the court's exercise of jurisdiction is consistent with due process. *Wellness Int'l,* 135 S. Ct. at 1948; *Roell,* 538 U.S. at 590; *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)." Opposition at 12. | ""Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 703 (1982). … So long as a defendant's conduct is "knowing and voluntary," the court's exercise of jurisdiction is consistent with due process. *Wellness Int'l Network v. Sharif,* 135 S. Ct. 1932, 1948 (2015); *see Roell v. Withrow,* 538 U.S. 580, 590 (2003); *Burger King Corp.,* 471 U.S. at 472 n.14." Opening Brief at 26. |
| "Defendants were aware of the PJSTVA and, at a minimum, were specifically informed of the PSJVTA's passage on December 26, 2019. *See* Letter from Tejinder Singh to Hon. Mark Langer, *Shatsky v. Palestine Liberation Org.,* No. 17-7168 (D.C. Cir. Dec. 26, 2019), Doc. No. 1821532." Opposition at 12. | "Defendants were specifically informed of the PSJVTA's passage on December 26, 2019. *See* Letter from Tejinder Singh to Hon. Mark Langer, *Shatsky v. Palestine Liberation Org.,* No. 17-7168 (D.C. Cir. Dec. 26, 2019), Doc. No. 1821532." Opening Brief at 27. |
| "The PJSTVA itself advances "critical U.S. interests by seeking to enable U.S victims of terrorism to vindicate their rights in U.S courts while simultaneously protecting our own national security interests and those of our close ally, Israel." Yalowitz Decl, Ex. 62, Letter from Sec. Michael R. Pompeo to Sen Charles E. Grassley (June 19, 2019). It reasonably advances the United States' interest in combating terrorism, which is "an urgent objective of the highest order." *Holder v. Humanitarian Law Project,* 561 U.S. 1, 33- | "As the Secretary of State put it, the PSJVTA advances "critical U.S. interests by seeking to enable U.S. victims of terrorism to vindicate their rights in U.S. courts while simultaneously protecting our own national security interests and those of our close ally, Israel." Letter from Sec. Michael R. Pompeo to Sen. Charles E. Grassley (June 19, 2019) (Yalowitz Decl. Ex. 62). Indeed, the PSJVTA reasonably advances at least *four* important federal interests: the nation's determination to combat international terrorism, the duty of the |

| | |
|---|---|
| 34 (2010). It reasonably advances the United States' responsibility to protect U.S citizens wherever they travel, and Congress may reasonably determine that, even outside of U.S. territory, "special protection for U.S. nationals serves key national interests." *Gambe v. United States,* 139 S. Ct. 1960, 1967 (2019). It reasonably advances the United States' interest in supporting "fair compensation for American victims of terrorism from those responsible for their losses." Statement of Interest of the United States, *Sokolow (Waldman) v. PLO,* No. 1:04-cv-0397-GBD, D.E. 935-1 ¶ 12. Finally, it reasonably advances the United States' interest in achieving Middle East peace by disrupting and deterring terrorism. *See* Taylor Force Act, Pub. L. No. 115-141, tit. X, div. S, § 1004(A)(1)(B), 132 Stat. 348, 114 (2018) (codified at 22 U.S.C. § 2378c-1)." Opposition at 13. | United States to protect its citizens, the national interest in compensating victims of terrorism, and the United States' specific objective of advancing the Middle East peace process in an atmosphere of stability." Opening Brief at 30; *see id.* at 31-33 (citing *Holder v. Humanitarian Law Project*; *Gamble v. United States*; Statement of Interest of the United States, DE 935-1 ¶ 12; and the Taylor Force Act). |