**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MIRIAM FULD, *et al.*, | ) |
| Plaintiffs, | ) Case No. 20-cv-3374 (JMF) |
| v. | ) **PROOF OF SERVICE** |
| THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY, | ) |
| Defendants. | ) |

    I hereby certify that I am one of the attorneys of record for Defendants in this action and that on July 19, 2021, I caused the attached Defendants' Reply Brief on the PSJVTA to be served via certified mail, tracking number 7015 0640 0007 6224 0679, on the U.S. Attorney General at the following address:

> U.S. Department of Justice
> Office of the Attorney General
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001

/s/ *Gassan A. Baloul*
Gassan A. Baloul

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MIRIAM FULD, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 20-cv-3374 (JMF) |
| v. | ) ) ) | |
| THE PALESTINE LIBERATION ORGANIZATION and THE PALESTINIAN AUTHORITY, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' REPLY BRIEF ON THE PSJVTA

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

**SQUIRE PATTON BOGGS (US) LLP**

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... ii
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
    I.    Exercising Personal Jurisdiction in this Case Would Be Unconstitutional. ........... 2
         A.    The Activities Specified in the PSJVTA Do Not Evince Any Intent to Consent to Personal Jurisdiction in the United States. .......................... 2
         B.    Plaintiffs' Proposed Test for Congressional Deemed Consent Would Undermine Due Process Standards and Violate Separation of Powers. ........................................................................................................ 5
    II.    The PSJVTA's U.S. Activities Prong Has Not Been Met. .................................... 7
         A.    U.S. Notaries Representing Private Clients under State Law Without Any Legal Obligation to Defendants Are Not Acting "On Behalf of" Defendants................................................................................. 8
         B.    The Social Media and Other Speech of Palestine's UN Mission Does Not Trigger the U.S. Activities Factual Predicate. ........................... 9
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Armstrong v. Pomerance*, 423 A.2d 174 (Del. 1980) ................................................................... 2

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ............................................ 1, 2, 5

*Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492 (2d Cir. 2020) ......................................................... 1

*Enron Power Mktg. v. Luzenac Am.*, 2006 U.S. Dist. LEXIS 62922 (S.D.N.Y. Aug. 31, 2006)... 9

*Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115 (D.C. Cir. 2019)....................................... 5

*Gilmore v. Palestinian Auth.*, 843 F.3d 958 (D.C. Cir. 2016) ....................................................... 2

*Hess v. Pawloski*, 274 U.S. 352 (1927) ..................................................................................... 1, 2

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ................... 2, 3

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44 (2d Cir. 1991) ................................................... 9

*Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353 (Fed. Cir. 2008) .............................................. 6

*Livnat v. Palestinian Auth.*, 851 F.3d 45 (D.C. Cir. 2017) ........................................................... 1

*Machleder v. Diaz*, 801 F.2d 46 (2d Cir. 1986) ............................................................................ 3

*Mendelsohn v. Meese*, 695 F. Supp. 1474 (S.D.N.Y. 1988) .......................................................... 5

*Sanchez-Ramirez v. Consulate Gen. of Mexico*, No. 12-3485, 2013 U.S. Dist. LEXIS 109888 (N.D. Cal. Aug. 5, 2013) ......................................................................................................... 8

*Shatsky v. PLO*, 955 F.3d 1016 (D.C. Cir. 2020) ......................................................................... 7

*Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191 (2d Cir. 2015) ........................... 3

*Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367 (S.D.N.Y. 2001) ............................................... 2

*TWA v. Franklin Mint*, 466 U.S. 243 (1984) ................................................................................. 9

*U.S. ex rel. Cimino v. IBM*, No. 19-7139, 2021 U.S. App. LEXIS 19955 (D.C. Cir. July 6, 2021) .................................................................................................................................................. 8

*United States v. Gomez*, 877 F.3d 76 (2d Cir. 2017) .................................................................... 3

*United States v. PLO*, 695 F. Supp. 1456 (S.D.N.Y. 1988) ........................................................... 4

*Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241 (S.D.N.Y. 2020) ......... 7

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016) .................................................................. 1, 5, 6, 7

*Waldman v. PLO*, 925 F.3d 570 (2d Cir. 2018) ............................................................................. 5

*Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015) ..................................................... 3

*Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992) ................................. 10

**Statutes**

18 U.S.C. §2334(e)(3) .................................................................................................................. 10

22 U.S.C. § 5201(b) ...................................................................................................................... 4

**Other Authorities**

Meetings Coverage, GA/12325 (May 20, 2021) ............................................................................ 9

S7182, 116th Cong. (Dec. 19, 2019) ........................................................................................... 10

UN Doc. No. A/73/L.32 (Nov. 23, 2010) ...................................................................................... 9

UN Doc. No. A/C.4/73/L.18 (Nov. 14, 2018) ............................................................................... 9

UN G.A. Res 67/19, *State of Palestine in the United Nations*, A/RES/67/19 (Nov. 29, 2012) ... 10

UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in General Assembly* (Oct. 16, 2018) ............................................................................................................. 10

**INTRODUCTION**

The PSJVTA cannot be constitutionally squared with Second Circuit authority that due process requires something more for personal jurisdiction than just fair warning of jurisdictional consequences and a rational government interest.[1] In *Waldman*, that *something more* was compliance with the minimum-contacts requirement, which the Anti-Terrorism Act could not legislatively supplant.[2] Under Second Circuit precedent, when legislation seeks to elide the minimum-contacts requirement by relying instead on "consent" to jurisdiction, that *something more* is compliance with the "free and voluntary" consent requirement.[3] *Brown* examined "free and voluntary" consent in the context of a defendant accepting the benefit of doing business in the forum, which evidences an implied agreement to submit to jurisdiction in exchange for that benefit.[4] If due process required *nothing more* than fair warning and a reasonable government interest, there would be no need for *Brown*'s extended constitutional analysis, and no limit to the types of constitutionally-inadequate contacts that Congress could use to impose jurisdiction by statute. Plaintiffs offer no case law supporting the PSJVTA's consent-by-legislative-fiat approach to personal jurisdiction, because there is none. The PSJVTA does not provide the constitutionally required *something more*, and cannot constitutionally support jurisdiction.

---

[1] *Waldman v. PLO*, 835 F.3d 317, 337, 343 (2d Cir. 2016) ("*Waldman I*") (rejecting plaintiffs' "argu[ment] that the defendants consented to personal jurisdiction under the ATA by appointing an agent to accept service," and holding that "the statute does not answer the constitutional question of whether due process is satisfied"); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640-41 (2d Cir. 2016) (concluding *Daimler* would be "robbed of meaning" if "every corporation would be subject to general jurisdiction in every state in which it registered" including where corporation had not actually exercised the privilege of doing business); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498-99 (2d Cir. 2020) (noting same constitutional problems despite "the state's longstanding interpretation" of the business registration statute as constituting consent).

[2] *Waldman I*, 835 F.3d at 335-44; *accord Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017) ("Congress cannot wish away a constitutional provision.").

[3] *Brown*, 814 F.3d at 640.

[4] *Id.* at 641 (jurisdiction "exercised pursuant to a corporation's purported 'consent' may be limited by the Due Process clause"); *see also id.* at 640 (leaving open the possibility of consent by registration "as a condition on a foreign corporation's doing business in the state"); *Hess v. Pawloski*, 274 U.S. 352, 354-57 (1927) (affirming implied consent statute under which nonresidents submitted to jurisdiction in exchange for the privilege of driving on public roads).

**ARGUMENT**

**I.     Exercising Personal Jurisdiction in this Case Would Be Unconstitutional.**

    **A.     The Activities Specified in the PSJVTA Do Not Evince Any Intent to Consent to Personal Jurisdiction in the United States.**

To establish Defendants' "consent" to personal jurisdiction, Plaintiffs bear the burden of demonstrating some "actions of the defendant" that "amount to a legal submission to the jurisdiction of the court." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982). In the absence of express consent (e.g., in a forum-selection clause) or some action in the litigation itself (e.g., filing an answer without objecting to jurisdiction),[5] a court may find implied consent to jurisdiction when a defendant accepts a benefit from the forum conditioned on such consent. Beginning with *Hess v. Pawloski*, 274 U.S. 352 (1927), courts consistently hold that acceptance of a government "benefit" conditioned by the forum on agreement to personal jurisdiction may constitute valid "consent."[6] This line of "implied consent" cases provides the appropriate framework for gauging the PSJVTA's constitutionality. *See* Def. Br. at 6-14.

Aside from proposing their own novel (and unsupported) test for "deemed consent" jurisdiction (addressed separately in Part B below), Plaintiffs do not meaningfully engage in the "implied consent" inquiry illustrated by *Hess* and its progeny. Instead, Plaintiffs present three superficial criticisms of Defendants' arguments, none of which withstands scrutiny.

*First*, Plaintiffs argue that other forms of "consent" do not require a "bargain with the state" or "reciprocity." Pl. Br. at 17-18. That argument is a *non sequitur* when applied to express consent

---

[5] Plaintiffs rely on several such cases. Pl. Br. at 17-18, citing *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 379-80 & n.21 (S.D.N.Y. 2001) (finding voluntary "consent" via a forum-selection clause); *Gilmore v. Palestinian Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) (finding waiver of personal jurisdiction by failing to raise it in motion).

[6] *See, e.g., Hess*, 274 U.S. at 354-57 (holding "acceptance by a non-resident of the rights and privileges [to drive on public roads]" constituted "signification of his agreement" to consent to jurisdiction); *Brown*, 814 F.3d at 632-33 (explaining business registration statutes condition the benefit of doing business in the state on consent to jurisdiction in state court); *Armstrong v. Pomerance*, 423 A.2d 174, 175-76 & nn.1, 4 (Del. 1980) (holding corporate directors may be "deemed" to consent to jurisdiction by accepting the "benefits" of directorships conferred by state law).

2

to jurisdiction via a forum-selection clause or submission by failing to object to jurisdiction. There, no "bargain with the state" or "reciprocity" is necessary because the defendant itself has plainly demonstrated its agreement to jurisdiction. But where, as here, a statute provides that a court shall infer (or "deem") consent to jurisdiction based on a defendant's conduct, the proper inquiry under *Hess* is whether the legislatively-specified conduct reflects an implicit agreement to submit to jurisdiction in exchange for the benefit of engaging in the specified activity.[7] The defendant's choice to engage in that activity constitutes knowing and voluntary consent to jurisdiction only if the forum has the authority to prohibit the defendant from engaging in that conduct unless it consents to jurisdiction. *See* Def. Br. at 6-14. Notably, Plaintiffs fail to cite a single case finding implied (or "deemed") jurisdictional consent under a statute absent a corresponding benefit.[8]

*Second*, Plaintiffs inaccurately assert that Defendants base their implied consent framework on "snippets" from two "anomalous" district court decisions. Pl. Br. at 18-19. That assertion overlooks Defendants' reliance on *Hess*—a case which Plaintiffs notably fail to address—as well extensive authority applying *Hess* to similar implied consent statutes. *See* Def.

---

[7] This rule is also reflected in the Supreme Court's subsequent decision in *Bauxites*, as the Court again focused on whether the specific conduct at issue—defendant's failure to produce court-ordered jurisdictional discovery—supported the presumption that defendant had impliedly submitted to jurisdiction. *Bauxites*, 456 U.S. at 705-07 (due process satisfied because "refusal to produce evidence" was "an admission of the want of merit in the asserted [jurisdictional] defense"). Plaintiffs misread *Bauxites*, asserting that a defendant impliedly consents to jurisdiction merely by "engaging in disfavored conduct that satisfies a rational standard, clearly established in advance." Pl. Br. at 17. That reading ignores not only the Court's careful discussion of the required nexus between the conduct at issue and the presumed absence of a jurisdictional defense, but also its instruction that "our holding today does not alter the requirement that there be 'minimum contacts' between [the defendant and the forum]. Rather, our holding deals with how the facts needed to show those 'minimum contacts' can be established." 456 U.S. at 702, 705-07 & n.10. Nothing in *Bauxites* suggests that merely engaging in "disfavored conduct" constitutes consent to jurisdiction.

[8] Plaintiffs rely primarily on several "consent" cases from other contexts, which—unlike the binding precedent of *Waldman I* and *Brown*—have nothing to do with the requirements for establishing purported consent *to personal jurisdiction*. *See United States v. Gomez*, 877 F.3d 76, 98 (2d Cir. 2017) (verbal consent to car search for narcotics); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1942-44 (2015) (consent to adjudication of legal claims by bankruptcy judge); *Machleder v. Diaz*, 801 F.2d 46, 59 (2d Cir. 1986) ("express invitation to come on to the property" negates trespass claim); *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 199-202 (2d Cir. 2015) (consent to publication of defamatory statement may preclude defamation claim). Plaintiffs fail to explain how these scenarios refute Defendants' argument that Congress cannot simply declare that constitutionally-inadequate contacts with a forum shall be "deemed" consent *to personal jurisdiction*, over a defendant's express objection.

Br. at 5-11 (collecting cases). Plaintiffs claim that this line of cases "ha[s] not gained traction," but they do not identify a single case applying a different framework to an implied consent statute.

Plaintiffs wrongly accuse Defendants of "misrepresenting" the Government's brief in *Klieman* (*see* Pl. Br. at 19), which defended the constitutionality of the ATCA (the PSJVTA's predecessor statute) in part by noting that: "[a]s a matter of historical practice, the political branches have long imposed ***conditions*** on [the] ***benefits***" that gave rise to "deemed" consent jurisdiction under the ATCA (foreign aid or a waiver allowing Defendants to operate in the United States).[9] The Government did so only *after* arguing ATCA provided Defendants fair notice and advanced U.S. policy, highlighting the independent significance of those "benefits." The primary constitutional difference between ATCA and the PSJVTA is the lack of any equivalent benefit provided to Defendants under the PSJVTA. This difference removed the due process anchor for consent to jurisdiction via "acceptance" of a benefit conditioned upon such consent.

*Third*, Plaintiffs grudgingly argue that if Defendants' implied consent framework is correct, the PSJVTA satisfies that standard because Defendants "did receive a 'benefit' by engaging with the society and economy of the United States." Pl. Br. at 20. This argument cannot be squared with Congress' persistent actions to block Defendants from any such benefit or engagement. Congress enacted the 1987 Act for the express purpose of denying Defendants the "benefit" of "operating in the United States." 22 U.S.C. § 5201(b). Courts likewise have long interpreted the 1987 Act as a "wide gauged restriction of PLO activity within the United States," *United States v. PLO*, 695 F. Supp. 1456, 1471 (S.D.N.Y. 1988), that deprives Defendants of the "many benefits which accrue to organizations operating in the United States, including political stability, access

---

[9] U.S. Br. at 12-13 (emphasis added); *see also id.* at 1 (arguing the Court need not reach the constitutionality of the ATCA because "defendants have declined to '*accept*' the foreign assistance specified in the ATCA and do not currently '***benefit***' from a waiver of section 1003 of the Anti-Terrorism Act of 1987" (emphasis added)).

4

to our press and capital infrastructure, and … the patina of legitimacy." *Mendelsohn v. Meese*, 695 F. Supp. 1474, 1484 (S.D.N.Y. 1988). Indeed, Plaintiffs concede earlier in their brief that Defendants "have no right to operate in the United States." Pl. Br. at 16.

The PSJVTA does not authorize Defendants to engage in any activities in the United States, nor does it premise "deemed" consent on the acceptance of a benefit (e.g., foreign aid or a waiver of ATA prohibitions) as ATCA did, or remove long-standing prohibitions on Defendants' non-UN-related activities in the United States. *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1130-31 (D.C. Cir. 2019) (requiring express waiver of ATA restrictions); *Waldman v. PLO*, 925 F.3d 570, 574-75 (2d Cir. 2018) (same). Rather, the PSJVTA baldly attempts to transform the same activities courts have previously held insufficient for personal jurisdiction into the basis for legislatively-imposed "deemed" consent jurisdiction. Plaintiffs' inability to identify a single case supporting consent-by-fiat is perhaps the clearest evidence of its unconstitutionality.

### B. Plaintiffs' Proposed Test for Congressional Deemed Consent Would Undermine Due Process Standards and Violate Separation of Powers.

The Due Process Clause forecloses Plaintiffs' argument that any statute providing only "fair warning" and serving a "legitimate government objective" may constitutionally impose consent to jurisdiction. *See Brown*, 814 F.3d at 640 ("*Daimler*'s ruling would be robbed of meaning by a back-door thief" if defendants were deemed to "consent" to personal jurisdiction in every state in which they were registered, regardless of the State's objective to "protect their citizens and levy taxes");[10] *Waldman I*, 835 F.3d at 343 (rejecting plaintiffs' jurisdiction-by-consent argument because "due process is not satisfied in this case… regardless of the service-of-

---

[10] Plaintiffs claim that *Brown* only requires fair warning and state interests. Pl. Br. at 19. But *Brown* worried that a legislatively-deemed consent regime would "risk unravelling the jurisdictional structure envisioned in *Daimler* and *Goodyear*," and run afoul of the Supreme Court's "strong admonition against the expansive exercise of general jurisdiction." *Brown*, 814 F.3d at 639-40. Plaintiffs' position would do just that, subjecting Defendants to personal jurisdiction despite the absence of U.S. contacts sufficient to satisfy due process.

5

process statute"). The Second and D.C. Circuits rightly rejected this proposed "test" in other cases with these Defendants because it provides no limit on Congress' ability to establish personal jurisdiction by decree. *See* Def. Br. at 3-4. Under Plaintiffs' test, Congress similarly could override due process in any number of scenarios where the courts have held personal jurisdiction was lacking. *See* Def. Br. at 17 (discussing *Daimler* example). Certainly, due process requires "fair warning," and legislation cannot be arbitrary. Pl. Br. at 13-16. But these *necessary* requirements are not alone *sufficient* to satisfy due process requirements for personal jurisdiction.

Urging a boundless view of Congressional power to manufacture consent jurisdiction, Plaintiffs maintain that personal jurisdiction is satisfied whenever a federal statute says so. Pl. Br. at 22. Plaintiffs recycle past claims that Fifth Amendment due process is different than Fourteenth Amendment due process, arguing that special federal interests require judicial deference to Congressional pronouncements on jurisdiction. The Second Circuit, however, has already held that the "fairness analysis is the same under the Fifth Amendment and the Fourteenth Amendment," and thus rejected personal jurisdiction over these Defendants. *Waldman I*, 835 F.3d at 330-31 (reaffirming that the court's "precedents clearly establish the congruence of due process analysis under both the Fourteenth and Fifth Amendments").

Plaintiffs insist that courts have personal jurisdiction whenever Congress so legislates because Congress' power to legislate and the courts' jurisdiction to adjudicate supposedly are coterminous. Pls. Br. at 23. But this contradicts settled law that "Congressional authority to regulate extraterritorial behavior" is "distinct from a court's 'jurisdiction to adjudicate.'" *Litecubes, LLC v. N. Light Prods.*, 523 F.3d 1353, 1363-64 & n.10 (Fed. Cir. 2008); *see* Def. Br. at 15-16. Plaintiffs' anemic notion of due process would give Congress a blank check to legislate jurisdiction by "consent" based on the same factual predicates that courts already have held were

6

constitutionally insufficient to support jurisdiction. *See id.* at 11-13. Plaintiffs' congressional-fiat approach clashes with the Second Circuit's holding that, while Congress can legislate an Anti-Terrorism Act remedy for overseas attacks, "th[at] statute does not answer the constitutional question of whether due process is satisfied." *Waldman I*, 835 F.3d at 343. Legislative authority to proscribe conduct thus does not strip litigants of their jurisdictional due process protections.

Allowing Congress to change the jurisdictional calculus in a way that contradicts settled judicial interpretations of the Due Process Clause also violates separation of powers. Def. Br. at 19-21. Despite conceding that Congress cannot "replace constitutional standards" established by the federal courts (Pl. Br. at 25), Plaintiffs admit that Congress passed the PSJVTA because it believed "the courts had 'wrongly' concluded 'that the district court lacked personal jurisdiction.'" Pl. Br. at 1 (quoting legislative history). The courts have already held that jurisdiction cannot be based on Defendants' social-media activities, or on making payments in Palestine. *See Waldman I*, 835 F.3d at 335-44 (allegations of "lobbying activities" and "inten[t] to influence United States policy" do not confer personal jurisdiction); *id.* at 337 (terror attacks did not target the United States given their "random and fortuitous nature"); *Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) (allegations of "'martyr payments'" and "a public relations campaign designed to influence the United States' policy toward Israel" do not establish jurisdiction). The PSJVTA's transparent attempt to override that precedent violates separation of powers.

## II. The PSJVTA's U.S. Activities Prong Has Not Been Met.

Plaintiffs fail to present facts that "establish jurisdiction over the defendant" under the U.S.-activities prong of the PSJVTA, which is *their* burden, particularly when they rely on jurisdictional discovery as here. *See Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 250 (S.D.N.Y. 2020). Plaintiffs cannot satisfy this burden by asking for a "liberal interpretation"

7

of the PSJVTA, because that would constitute "judicial lawmaking." *U.S. ex rel. Cimino v. IBM*, No. 19-7139, 2021 U.S. App. LEXIS 19955, at *18 (D.C. Cir. July 6, 2021) (cleaned up).

### A. U.S. Notaries Representing Private Clients under State Law Without Any Legal Obligation to Defendants Are Not Acting "On Behalf of" Defendants.

This Court should reject Plaintiffs' claim that the U.S. notaries deposed in *Shatsky* work for Defendants. Plaintiffs base their "consular services" argument on the following facts:

- until 2018, the PLO's Washington consulate certified/authenticated documents;
- until 2018, the consulate's website (ECF 47-3) listed Arabic-speaking U.S. notaries that frequently worked for Palestinian-Americans (ECF 42-1 at 115-17), though Plaintiffs far overstate the evidence regarding the list (*see id*. at 144-46; ECF 42-2 at 40-43);
- in 2012, the PLO Washington consul Mr. Takash worked for the PLO (ECF 47-2);
- in 2014, the PLO's Washington mission sent a contract to a U.S. notary to make him an "Authorized Notary" (ECF 47-15 at 2), if he agreed to certain restrictions and conditions, but which the U.S. notary refused to sign (ECF 42-1 at 128-29);
- in November 2018, the PLO promised to continue to provide consular services after the Washington mission shut down; and
- after January 2020, Palestinian-Americans sometimes hire U.S. notaries to send notarized documents to non-U.S. Palestinian consulates for authentication, which documents might ultimately be used in Palestine (*see* Notary Depositions, ECF 42-1 & ECF 42-2).

These facts do not show that the U.S. notaries work for Defendants, and the notaries denied having authority to notarize on behalf of Defendants or receiving any compensation from Defendants. ECF 42-1 at 92-93, 119; ECF 42-2 at 43, 66. They testified that, since the PSJVTA relevant date of January 2020, they had not performed *any* service "on behalf of" either the PA or PLO. ECF 42-1 at 155; ECF 42-2 at 22-24, 69. Plaintiffs' "instructive" cases (Pl. Br. at 6) further belie their claim that U.S. notaries are Defendants' agents.[11] None of Plaintiffs' cases apply to people over whom Defendants have no control, and have neither authorized nor paid.

---

[11] For example, the notary in *Sanchez-Ramirez v. Consulate Gen. of Mexico*, No. 12-3485, 2013 U.S. Dist. LEXIS 109888 (N.D. Cal. Aug. 5, 2013), was "employed by defendant Consulate General of Mexico," and received "life insurance, an annual bonus[,] … thirty days' vacation," "health benefits and relief from … taxes." *Id*. at *2, 29. He held an A-2 visa, which applies to travel "on behalf of [a] national government to engage solely in official activities for that government." *Id*. at *16 n.2 (citation omitted).

8

### B. The Social Media and Other Speech of Palestine's UN Mission Does Not Trigger the U.S. Activities Factual Predicate.

Plaintiffs argue that UN and ancillary activities cannot involve "political," "self-promoting" speech, "grievances" against Israel, or "poverty." Pl. Br. at 7-8. Plaintiffs ignore the reality that the same speech they seek to prevent, namely criticism of Israel, is an ***omnipresent*** topic for UN organs[12] and UN Missions.[13] Every UN body constantly communicates via official social media accounts.[14] Plaintiffs would turn the PSJVTA into a gag order, leaving Palestine's mission the only one unable to use social media or a website (even when the speeches and letters in the complaint are excerpts of UN documents). Further belying Plaintiffs' argument, the U.S. has not complained that the speech and social media activities of Palestine's UN Mission personnel should have been reported under the Foreign Agents Registration Act ("FARA") as necessary for "propaganda," or alleged any violations of the 1987 Act for such communications.[15]

Modes of communication have changed significantly since the 1991 PLO TV interviews that were not "in furtherance" of its UN "status" in *Klinghoffer*. The modern reality is that the UN

---

[12] *See, e.g.,* Meetings Coverage, GA/12325 (António Guterres: "If there is a hell on earth, it is the lives of children in Gaza") (May 20, 2021), UN Doc. No. A/C.4/73/L.18 (Nov. 14, 2018) (condemning "the excessive use of force by the Israeli occupying forces against Palestinian civilians, resulting in the death and injury of civilians"); UN Doc. No. A/73/L.32 (Nov. 23, 2010) (condemning "acts of violence, intimidation and provocation by Israeli settlers against Palestinian civilians … settlement construction and expansion, home demolitions, evictions ...").

[13] *See, e.g.,* Twitter: @UKUN_NewYork ("What hope is there for 2-state solution when communities are simply removed from the map?") (Oct 14, 2016), @FranceONU (Feb. 24, 2020) ("No further settlements. No colonization."); @Turkey_UN (Apr. 23, 2020) ("All illegal settlement and demolition activities must stop.").

[14] For example, when Palestine's mission tweeted about surfing in Gaza on April 6th, the UN International Day of Sport, it joined other UN bodies like UNICEF and the U.S. UN Mission that celebrate that day.

[15] Plaintiffs' reasoning on the PSJVTA rule of construction is circular: they claim the Mission is "in the United States" because activities "in the United States" create jurisdiction. Pls. Br. at 12. They assume Congress "would have said so" if it intended to preserve the UNHQA's longstanding protections. *Id.* at 13. But the opposite is true: Congress would have said so if it intended "any radical departures from past practice," and does not abrogate binding treaty obligations with ambiguous language. *Enron Power Mktg. v. Luzenac Am.*, 2006 U.S. Dist. LEXIS 62922, *36 (S.D.N.Y. Aug. 31, 2006); *TWA v. Franklin Mint*, 466 U.S. 243, 252 (1984) (discussing "canon of construction against finding implicit repeal of a treaty in ambiguous congressional action"). In any case, the only possible purpose of the exemption is to assure the preservation of the UNHQA's "legal fiction that the UN Headquarters is not really United States territory at all." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991). Plaintiffs also claim that Congress simply changed "within the jurisdiction of" to "in the United States"—but what Congress actually did was replace one statute (ATCA) with another (PSJVTA) containing specific exemptions for Palestine's UN Mission.

and all UN Missions now communicate about official business through social media. Palestine's UN status also has changed since then, having gained "Observer State" status in 2012 allowing it to chair the Group of 77, and participate in the General Assembly and Security Council debates.[16]

Plaintiffs also attempt to eliminate the PSJVTA's safe harbor for "ancillary" activities by limiting it to "necessary" activities. Pl. Br. at 9. But the statutory language exempts "any personal or official activities" ancillary to UN business or meetings with government officials. 18 U.S.C. §2334(e)(3). The word "any" is broad and few "personal" activities would be "necessary." Indeed, Plaintiffs' dictionaries suggest "ancillary" means "subordinate" or "supplementary," which easily embraces press conferences and social media that are a critical function of every modern UN mission. Plaintiffs also rely on comments issued by Senator Lankford right before he ***voted against the bill*** after the "ancillary" language was added. *See* S7182, 116th Cong. (Dec. 19, 2019).[17]

While Plaintiffs rely heavily on *Wrigley*, that case did not interpret the word "ancillary" in a statute—it was the Court's own description of the "independent business function" test under a tax statute with language nothing like the PSJVTA. *See Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 228-34 (1992). In any case, *Wrigley* and cases interpreting *Wrigley* take broad views of what is "entirely ancillary," treating advertising and consumer education as "ancillary" to sales. If education and advertising are ancillary to selling gum, they are at least equally ancillary to Palestine's agenda at the UN.

## CONCLUSION

The Court should dismiss this case for lack of personal jurisdiction.

---

[16] UN G.A. Res 67/19, *State of Palestine in the United Nations*, A/RES/67/19 (Nov. 29, 2012); UN Press Release, *State of Palestine to Gain Enhanced Rights, Privileges in General Assembly* (Oct. 16, 2018).

[17] Plaintiffs point to Defendants' lobbying, but ironically omit the lobbying by plaintiffs in the other cases on the same subjects. *See, e.g.,* https://www.opensecrets.org/federal-lobbying/clients/reports?cycle=2018&id=F219414 & https://www.opensecrets.org/federal-lobbying/clients/reports?cycle=2016&id=F199569.

Respectfully Submitted,

July 16, 2021

**SQUIRE PATTON BOGGS (US) LLP**

/s/ *Gassan A. Baloul*
Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com

1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2021, a true and correct copy of the foregoing was served through the Court's CM/ECF System on all counsel of record in this action.

/s/ *Gassan A. Baloul*
Gassan A. Baloul