UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MIRIAM FULD, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | Case No. 20-cv-3374 (JMF) |
| ) | |
| v.  ) | |
| ) | |
| THE PALESTINE LIBERATION  ) | |
| ORGANIZATION and  ) | |
| THE PALESTINIAN AUTHORITY,  ) | |
| ) | |
| Defendants.  ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE TO
THE GOVERNMENT'S DEFENSE OF THE PROMOTING SECURITY
AND JUSTICE FOR VICTIMS OF TERRORISM ACT OF 2019**

**SQUIRE PATTON BOGGS (US) LLP**

Mitchell R. Berger (MB-4112)
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Gassan A. Baloul (GB-4473)
gassan.baloul@squirepb.com
Joseph S. Alonzo (JA-1378)
joseph.alonzo@squirepb.com
1211 Avenue of the Americas
26th Floor
New York, NY 10036
Telephone: (212) 872-9800
Facsimile: (212) 872-9815

The United States concedes that "knowing and voluntary" is the appropriate standard for determining if consent satisfies due process. ECF 53 at 13. But legislative "fair warning" alone cannot establish "voluntary" consent. Otherwise, Congress rather than the courts would become the sole arbiters of due process. Because Defendants have not expressly consented to jurisdiction, nor submitted to it by any step in this lawsuit, due process requires some benefit offered by legislation on which consent to jurisdiction is conditioned. The PSJVTA fails this reciprocity test.

The Government lumps the PSJVTA in with a "variety of legal arrangements" allowing consent to personal jurisdiction based solely on "fair warning." ECF 53, at 8–9. Every case it cites where "fair warning" suffices instead involves either express consent (as in a forum selection clause) or litigation activity submitting to jurisdiction. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982) (listing as examples of consent express contracts, stipulations, and voluntarily using state procedures). Neither is present here. The Government concedes that *Bauxites*—its flagship case—did not require "voluntary" consent, and that no case rejects "defendants' argument regarding the need for reciprocity in consent cases." ECF 53 at 14.

Those problems aside, if through "fair warning" alone Congress could prescribe what non-litigation conduct is always "voluntary" consent, there would be no limit on Congressional power over personal jurisdiction. As the Supreme Court held in *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Brd*, 527 U.S. 666, 680–83 (1999), "voluntary" consent means nothing if Congress can "exact constructive waivers of" jurisdictional protections (there, sovereign immunity) simply "through the exercise of Article I powers." The Court further explained:

> For example, imagine if Congress amended the securities laws to provide with unmistakable clarity that anyone committing fraud in connection with the buying or selling of securities in interstate commerce would not be entitled to a jury in any federal criminal prosecution of such fraud. Would persons engaging in securities fraud after the adoption of such an amendment be deemed to have 'constructively waived' their constitutionally protected rights to trial by jury in criminal cases? …. The answer, of course, is no.

1

*Id*. at 681–82. The same analysis—that Congress cannot "abrogate[e]" jurisdictional protections by disguising it as a "[f]orced waiver" upon engaging in non-litigation activity (*id.* at 683–84)—applies equally to the constitutional right of jurisdictional due process.

The Government purports to find a limiting principle in PSJVTA's "nexus" to the purposes of the Anti-Terrorism Act ("ATA"). ECF 53 at 18–19. But that "nexus" does not satisfy due process for the same reason the ATA could not prescribe jurisdiction based simply on service of process: "the statute does not answer the constitutional question of whether due process is satisfied." *Waldman v. PLO*, 835 F.3d 317, 343 (2d Cir. 2016). The nexus required by due process is "minimum contacts" with the *forum*—not some connection to the *activity* underlying an ATA claim, as the Government proposes. *Id.* When legislation replaces minimum contacts with deemed jurisdictional "consent," that consent must be voluntary. Otherwise, Congress could deem consent based on any activity with some "link" to a cause of action, regardless of the connection to the forum, transforming activities that fail the minimum contacts test into the basis for "deemed" consent jurisdiction. The Government's meager "fair warning" test would eviscerate "voluntary" consent, and take the assessment of voluntariness entirely out of judicial hands. Something more is required, and that something more is reciprocity.

The Government does not directly respond to *Hess v. Pawloski*, 274 U.S. 352 (1927), or the other implied-consent cases holding that acceptance of a "benefit" conditioned on agreement to personal jurisdiction is "consent."[1]  *See Brown v. Lockheed Martin*, 814 F.3d 619, 632–33 (2d

---

[1] As it concedes, the Government itself defended the PSJVTA's predecessor (ATCA) on the ground that "it is reasonable to deem an exchange of benefits for conditions as valid consent to personal jurisdiction." (ECF 53 at 15 n.7). The Government's discussion of the ATCA mirrors its prior statements in *Klieman*: under the ATCA, Defendants were "deemed" to consent to jurisdiction *only* if they accepted either of two government "benefits" that Congress had long conditioned on compliance with US foreign policy goals. *See id.* That interpretation, of course, is consistent with *Coll. Savings Bank*, which held that although Congress cannot simply decree the circumstances under which a state consents to federal jurisdiction, the acceptance of a federal benefit or "gratuity" conditioned upon consent may constitute a voluntary waiver of jurisdictional defenses. *See* 527 U.S. at 679–87.

2

Cir. 2016) (business registration statutes condition doing business on consent to jurisdiction in state court); *Am. Dairy Queen v. W.B. Mason Co.*, No. 18-cv-693, 2019 U.S. Dist. LEXIS 3314, \*7 (D. Minn. Jan. 8, 2019) ("Consent to personal jurisdiction may be established ... as a condition of performing some activity in the state."). The Government identifies no case upholding an implied consent *absent* some benefit conferred in exchange for the defendant's consent.

Instead, the Government analogizes to criminal cases involving the waiver of *Miranda* rights to argue that the PSJVTA's "deemed" consent framework satisfies the "knowing and voluntary" standard. *See* ECF 53 at 14. But the Supreme Court strongly disfavors implied waiver of Constitutional rights. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) ("courts indulge in every reasonable presumption against waiver").

*College Savings Bank* provides the more apt analogy for implied waivers of constitutional protections against jurisdiction dictated by Congress. There, the Court rejected the same implied "waiver" theory the Government advances here, holding that a statute could not "deem" that a State consented to federal jurisdiction by voluntarily engaging in interstate marketing. 527 U.S. at 681–82. The Government argued that deemed consent only required Congress to "provide unambiguously that the State will be subject to suit if it engages in certain specified conduct governed by federal regulation" and then "the State must voluntarily elect to engage in the federally regulated conduct." *Id.* at 679. The Court found a "fundamental difference between a State's expressing unequivocally that it waives its immunity, and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity." *Id.* at 680–81. The Court explained: "In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals. That is very far from concluding that *the State* made an 'altogether

3

voluntary' decision to waive its immunity." *Id.* at 680–81. "[T]here is little reason to assume actual consent based upon the State's mere presence in a field subject to congressional regulation." *Id.*

Holding that mere "notice" does not establish voluntariness, the Court recognized that more is required to show that the defendant "in fact consents to suit." *Id.* at 680. Indeed, the Court made the very distinction Defendants urge here: "Congress may ... condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that *acceptance of the funds entails an agreement to the actions*. These cases seem to us *fundamentally different* from the present one." *Id.* at 686 (emphasis added); *see AT&T Communs. v. BellSouth Telecomms.*, 238 F.3d 636, 646 (5th Cir. 2001) (contrasting "forced waiver" with "[a] state's voluntary waiver of immunity, inferred from the state's acceptance of a Congressional gratuity that it was free to decline without loss of any sovereign prerogative"). The PSJVTA similarly cannot create consent by simply deeming that Defendants have waived their rights based on nothing but advance notice of the statute, while offering nothing in return.

The Government ultimately falls back on the shibboleth of deference to Congress's "particular authority" over "foreign policy." ECF 53 at 1–2, 10. But courts owe no deference to legislation affecting foreign policy when it comes to statutory provisions establishing jurisdiction without regard to "minimum contacts" or voluntary consent. *See Waldman*, 835 F.3d at 343 (rejecting plaintiffs' jurisdiction-by-consent argument because "due process is not satisfied in this case…regardless of the service-of-process statute"). The "voluntary" standard for due process consent to personal jurisdiction is a constitutional question on which this Court owes no deference. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 34 (2010) ("[C]oncerns of national security and foreign relations do not warrant abdication of the judicial role. We do not defer to the Government's reading of the First Amendment, even when such interests are at stake."); *Nat'l*

4

*Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) ("Our respect for Congress's policy judgments" cannot "disavow restraints on federal power that the Constitution carefully constructed" because courts "enforce the limits on federal power by striking down acts of Congress that transgress those limits."); *Open Soc'y Just. Initiative v. DOD*, 2021 U.S. Dist. LEXIS 132445, *20-21 (S.D.N.Y. July 15, 2021) (Furman, J.) ("[D]eference in the area of national security is certainly warranted. But 'deference is not equivalent to acquiescence.'") (citation omitted).

The PSJVTA attempts to commandeer the judiciary's power to determine what conduct waives due process rights, yet the Government offers only a footnote on separation of powers. *See* ECF 53 at 19 n.12.  "[T]he question of waiver [is] not a question of historical fact, but one which ... requires 'application of constitutional principles to the facts as found.'" *Brewer*, 430 U.S. at 403.  Congress cannot redefine those standards. *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1324 (2016) ("attempt[s] to direct the result without altering the legal standards governing the effect of [the specified activity]" violate separation of powers); *id.* at 1323 ("Congress, no doubt, 'may not usurp a court's power to interpret and apply the law to the circumstances before it.'").  While Congress may legislate *liability* standards, it may not dictate *constitutional due-process standards*, a task assigned exclusively to the judiciary. *Laker Airways v. Sabena*, 731 F.2d 909, 923 (D.C. Cir. 1984) (contrasting Congress's "prescriptive jurisdiction" with "personal jurisdiction, often referred to as 'jurisdiction to adjudicate'").[2] The PSJVTA unconstitutionally strips Defendants of due process protections, subjecting them to jurisdiction for activities that the judiciary have already found to be constitutionally insufficient under the Due Process Clause.

---

[2] The Government's claim that the PSJVTA applies to only a "limited class of cases" and a "narrow" set of defendants exacerbates the constitutional violation. ECF 53 at 17, 19, 21. If Congress could define the scope of constitutional protections for individual groups, "it is difficult to conceive of a principle that would limit congressional power. Shifting legislative majorities could change the Constitution and effectively circumvent the difficult and detailed amendment process…." *City of Boerne v. Flores,* 521 U.S. 507, 529 (1997) (cleaned up).  "The Framers vested the executive, legislative, and judicial powers in separate branches" precisely to protect "the rights of one person" from the dangerous "tyranny of shifting majorities." *INS v. Chadha*, 462 U.S. 919, 961-62 (1983) (Powell, J., concurring).

<table>
<tr><td>August 27, 2021</td><td>Respectfully Submitted,<br><br>**SQUIRE PATTON BOGGS (US) LLP**<br><br>/s/ *Gassan A. Baloul*<br>Gassan A. Baloul (DC Bar 1034245)<br>gassan.baloul@squirepb.com<br>Mitchell R. Berger (DC Bar 385467)<br>mitchell.berger@squirepb.com<br>2550 M Street, N.W.<br>Washington, D.C. 20037<br>Telephone: (202) 457-6000<br>Facsimile:  (202) 457-6315<br><br>*Attorneys for Defendants*</td></tr>
</table>

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2021, a true and correct copy of the foregoing was served through the Court's CM/ECF System on all counsel of record in this action.

/s/ *Gassan A. Baloul*
Gassan A. Baloul