UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MIRIAM FULD, individually, as personal representative :     Case No.: 20-cv-03374-JMF
and administrator of the Estate of Ari Yoel Fuld, deceased, :
and as natural guardian of plaintiff Natan Shai Fuld,       :
NATAN SHAI FULD, minor, by his next friend and    :
guardian Miriam Fuld, NAOMI FULD, TAMAR GILA   :
FULD, and ELIEZER YAKIR FULD,            :     **NOTICE OF APPEAL**
                                             :

              Plaintiffs,         :

       vs.                      :

THE PALESTINE LIBERATION ORGANIZATION and :
THE PALESTINIAN AUTHORITY (a/k/a "The     :
Palestinian Interim Self-Government Authority," and/or   :
"The Palestinian Council," and/or "The Palestinian    :
National Authority"),                    :

            Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

      Notice is hereby given that Plaintiffs Miriam Fuld, individually, as personal

representative and administrator of the Estate of Ari Yoel Fuld, deceased, and as natural

guardian of plaintiff Natan Shai Fuld, Natan Shai Fuld, minor, by his next friend and guardian

Miriam Fuld, Naomi Fuld, Tamar Gila Fuld, and Eliezer Yakir Fuld ("plaintiffs" or "Fuld"),

hereby appeal to the United States Court of Appeals for the Second Circuit from the Opinion

and Order, dated January 6, 2022 dismissing the complaint (Docket No. 61), annexed hereto as

Exhibit A, and from the Judgment, dated January 7, 2022 (Docket No. 62), annexed hereto as

Exhibit B.

Dated: New York, New York
      January 13, 2022              LAW OFFICE OF JEFFREY FLEISCHMANN, P.C.
                                     By: /s/ Jeffrey Fleischmann
                                         Jeffrey Fleischmann, Esq.
                                 *Attorneys for Plaintiffs*
                                 150 Broadway, Suite 900
                                 New York, New York 10038
                                 Tel. (646) 657-9623
                                 Fax (646) 351-0694
                                 jf@lawjf.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                        :

MIRIAM FULD et al.,                :

                      :

            Plaintiffs,       :

                      :              20-CV-3374 (JMF)

      -v-              :

                      :         <u>OPINION AND ORDER</u>

THE PALESTINE LIBERATION ORGANIZATION  :
et al.,

                      :

           Defendants.     :

                      :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The Due Process Clauses of the Fifth and Fourteenth Amendments have long been

interpreted to mean that a party cannot be subjected to the jurisdiction of a forum's courts unless

the party has certain minimum contacts with the forum.  Courts have recognized three

independent bases for such "personal jurisdiction": first, general jurisdiction, when the

defendant's affiliations with the forum in which suit is brought are so constant and pervasive as

to render it essentially at home in the forum; second, specific jurisdiction, when there is a

sufficient connection between the underlying controversy and the forum; and third, a defendant's

knowing and voluntary consent, whether express or implied, to suit in the forum.

       To date, courts have held that these bases are insufficient to sustain lawsuits brought by

family members of American victims of terrorist attacks in Israel and the occupied territories

under the Anti-Terrorism Act of 1992 ("ATA"), 18 U.S.C. § 2331 *et seq.*, against the Palestine

Liberation Organization ("PLO") and the Palestinian Authority ("PA").  In 2019, Congress

responded to these rulings by enacting the Promoting Security and Justice for Victims of

Terrorism Act ("PSJVTA"), Pub. L. No. 116-94, div. J, tit. IX, § 903, 133 Stat. 3082, which

includes innovative provisions intended to ensure that such lawsuits are not dismissed for want of personal jurisdiction.  Specifically, the statute provides that the PLO and PA would be "deemed to have consented to personal jurisdiction" in any case brought under the ATA if, after a date certain, they engaged in specified conduct — conduct in which they had long engaged.

The novel question presented in this case — brought by the family members of a Jewish American killed in a 2018 terrorist attack in Gush Etzion, a settlement located in the West Bank, against the PLO and the PA for their alleged roles in encouraging and supporting the attack — is whether this "deemed consent" jurisdiction is consistent with the requirements of due process. For the reasons that follow, the Court concludes that it is not.  In brief, Congress cannot, consistent with the Constitution, simply decree that any conduct, without regard for its connections to the United States generally or to litigation in the United States specifically, signals a party's intent to submit to the jurisdiction of a United States court.  To hold otherwise would effectively mean that there are no constitutional limitations on the exercise of personal jurisdiction as a legislature could simply create such jurisdiction out of whole cloth by deeming any conduct — even, for example, the conduct that gives rise to the cause of action itself — to be "consent."  The Court cannot and will not acquiesce in what amounts to a legislative sleight of hand at the expense of a fundamental constitutional right and, thus, is compelled to grant the PLO's and PA's motion to dismiss for lack of personal jurisdiction.

## BACKGROUND

Plaintiffs in this case are the wife and four children of Ari Yoel Fuld, an American citizen who, on September 16, 2018, was brutally stabbed to death outside a mall in Gush Etzion, a settlement located in the West Bank.  *See* ECF No. 21 ("Am. Compl."), ¶¶ 106-110.  Plaintiffs allege, on information and belief, that Khalil Yousef Ali Jabarin, the murderer, targeted Fuld

because he was a Jewish American.  *See id.* ¶ 107; *see also id.* ¶ 101 (alleging, on information

and belief, that Jabarin "decided to become . . . a 'martyr[]' and kill Jews").  In this suit,

however, they do not seek relief from Jabarin (who was apprehended by Israeli authorities after

the murder).  Instead, they seek hundreds of millions of dollars in damages from the PA, which

was established by the 1993 Oslo Accords to exercise interim governance authority for the

Palestinian people in Gaza and the West Bank, and the PLO, which has been recognized by the

United Nations as the representative of the Palestinian people, on the ground that they

"encouraged, incentivized, and assisted" the attack on Fuld.  *Id.* ¶ 4.  They do so principally

pursuant to the ATA, as amended by the PSJVTA.  *See id.* ¶ 1.

Congress enacted the ATA in 1992 in an effort "to develop a comprehensive legal

response to international terrorism."  H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House

Report"); *see* Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521-24 (1992) (adding 18 U.S.C.

§§ 2331, 2333-2338).  The statute created a civil damages remedy for United States nationals

harmed by an act of international terrorism committed by a foreign terrorist organization.  *See* 18

U.S.C. § 2333(a).  To the extent relevant here, it permits such United States nationals to sue "any

person who aids and abets, by knowingly providing substantial assistance, or who conspires [to

commit] an act of international terrorism."  *Id.* § 2333(d)(2).  Among other things, it provides for

treble damages plus attorney's fees and costs.  *See id.* § 2333(a).

In 2004, a group of eleven American families (the "*Sokolow* plaintiffs") sued the PA and

PLO under the ATA for various terrorist attacks in Israel.  *See Waldman v. Palestine Liberation

Org.*, 835 F.3d 317, 322, 324 (2d Cir. 2016) ("*Waldman I*").  The PA and PLO moved repeatedly

to dismiss the *Sokolow* plaintiffs' claims for lack of personal jurisdiction, but the district court

denied their motions, reasoning that "the totality of activities in the United States by the PLO and

the PA justifies the exercise of general personal jurisdiction." *Sokolow v. Palestine Liberation Org.*, No. 04-CV-397 (GBD), 2011 WL 1345086, at *3 (S.D.N.Y. Mar. 30, 2011), *vacated sub nom. Waldman I*, 835 F.3d 317.  After more than a decade of litigation and a seven-week trial, a jury returned a verdict in favor of the *Sokolow* plaintiffs and awarded them more than $650 million pursuant to the ATA's treble damages provision.  *See Waldman I*, 835 F.3d at 322, 326.

In the meantime, in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court clarified that "general" personal jurisdiction is appropriate only in a forum where the defendant is "essentially at home," which, in the case of a non-natural person, is usually limited to its place of incorporation or principal place of business, *see id.* at 136-39.  In the wake of *Daimler*, the Second Circuit vacated the judgment in *Sokolow*, holding in *Waldman I* that the district court's exercise of personal jurisdiction over the PA and PLO had violated the Due Process Clause of the Fifth Amendment because neither defendant was "at home" in the United States and the terrorist attacks at issue "were not sufficiently connected to the United States" to support "specific personal jurisdiction."  835 F.3d at 337.  In a trio of similar cases against the PA and PLO, the D.C. Circuit reached the same conclusions.  *See Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1036-37 (D.C. Cir. 2020); *Est. of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1123-24 (D.C. Cir. 2019), *cert. granted, judgment vacated*, 140 S. Ct. 2713 (2020), *and opinion reinstated in part*, No. 15-7034, 2020 WL 5361653 (D.C. Cir. Aug. 18, 2020); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56-57 (D.C. Cir. 2017).

In 2018, Congress responded to these decisions by enacting the Anti-Terrorism Clarification Act ("ATCA"), Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (adding 18 U.S.C. § 2334(e)).  Section 4 of the ATCA provided that, "for purposes of any civil action under [the ATA], a defendant shall be deemed to have consented to personal jurisdiction in such civil action

if," after January 31, 2019, the defendant "accepts" certain "form[s] of assistance" from the United States or maintains an office within the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202 (which otherwise prohibits the PLO from maintaining an office in the United States). *Id.* Within days of the ATCA's enactment, the *Sokolow* plaintiffs filed a motion asking the Second Circuit to recall the mandate in *Waldman I*, arguing that Section 4 of the ATCA provided personal jurisdiction over the PA and PLO. *See Waldman v. Palestine Liberation Org.*, 925 F.3d 570, 574 (2d Cir. 2019) (per curiam) ("*Waldman II*"), *cert. granted, judgment vacated sub nom. Sokolow v. Palestine Liberation Org.*, 140 S. Ct. 2714 (2020). The Second Circuit denied their motion, finding that the plaintiffs had failed to show "that either factual predicate of Section 4 of the ACTA ha[d] been satisfied." *Id.* Once again, the D.C. Circuit reached the same conclusions. *See Klieman*, 923 F.3d at 1128.

The plaintiffs in these cases filed petitions for certiorari in the Supreme Court. On December 20, 2019, while their petitions were pending, Congress intervened again by passing the PSJVTA. To the extent relevant here, the PSJVTA superseded the personal jurisdiction provisions in the ATCA. It amended the definition of "defendant" to specifically include the PA, the PLO, and their affiliates and successors. Pub. L. No. 116-94, div. J, tit. IX, § 903(b)(5), 133 Stat. 3082, 3083. And it provided two new factual predicates for conduct that will be "deemed" consent to personal jurisdiction for civil actions under the ATA. As amended by the PSJVTA, the ATA now provides, first, that a defendant "shall be deemed to have consented to personal jurisdiction" in ATA cases if, after April 18, 2020, it "makes any payment, directly or indirectly," to either (i) a payee designated by someone imprisoned for an act of terrorism that injured or killed an American national "if such payment is made by reason of such imprisonment" or (ii) to a family member of an individual who died while committing an act of

terrorism that injured or killed an American national "if such payment is made by reason of the death of such individual." 18 U.S.C. § 2334(e)(1)(A). Second, the Act states that a defendant will be "deemed to have consented to personal jurisdiction" if, after January 4, 2020, it "establishes," "procures," or "continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States," or "conducts any activity while physically present in the United States on behalf of" the PLO or the PA. *Id.* § 2334(e)(1)(B). That subsection is subject to several exceptions, including, most notably, offices or facilities used "exclusively for the purpose of conducting official business of the United Nations" and "ancillary" activities. *Id.* § 2334(e)(3).

On April 27, 2020, the Supreme Court granted certiorari to both the *Sokolow* plaintiffs and the plaintiffs in the D.C. Circuit litigation, vacated the lower court judgments, and remanded the cases "for further consideration in light of the [PSJVTA]." *Sokolow*, 140 S. Ct. at 2714; *see Klieman*, 140 S. Ct. at 2713. Thereafter, the Second Circuit remanded *Sokolow* to the district court "for the limited purpose of determining the applicability of the PSJVTA to [that] case, and, if the PSJVTA is determined to apply, any issues regarding its application to [that] case including its constitutionality." Mandate, *Waldman v. Palestine Liberation Org.*, No. 15-3135 (2d Cir. Sept. 8, 2020), ECF No. 369. On remand, the parties (and the United States) have briefed both issues. *See Sokolow v. Palestinian Liberation Org.*, No. 04-CV-397 (GBD) (S.D.N.Y. May 13, 2015), ECF Nos. 1015, 1021, 1022, 1043.[1]

---

[1]      The *Shatsky* and *Klieman* plaintiffs are also still pursuing their claims in light of the PSJVTA. In conjunction with their litigation in the D.C. Circuit, the *Shatsky* plaintiffs also filed a "protective action" in this Court. *See Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV) (S.D.N.Y. Jan. 30, 2020), ECF No. 21, at 1. In that proceeding, Defendants have also moved to dismiss for lack of personal jurisdiction, and their motion remains pending. *See Shatsky v. Palestine Liberation Org.*, No. 18-CV-12355 (MKV) (S.D.N.Y. Aug. 20, 2021), ECF No. 116. Meanwhile, the *Klieman* plaintiffs are seeking jurisdictional discovery before the

In the meantime, Plaintiffs filed this suit on April 30, 2020, three days after the Supreme
Court vacated and remanded in *Sokolow*.  *See* ECF No. 1.  In their Amended Complaint,
Plaintiffs allege that both prongs of the PSJVTA's personal jurisdiction provisions are satisfied.
First, they allege that, after April 18, 2020, Defendants made payments to the families of
deceased terrorists who killed or injured Americans and to the designees of terrorists who
pleaded guilty or were fairly convicted of killing or injuring Americans.  *See* Am. Compl. ¶¶ 54-
57, 59, 60, 62-67, 114-115.[2]  Second, they allege that, after January 4, 2020, Defendants
provided consular services in the United States, and conducted press-conferences, distributed
informational materials, and engaged the United States media in order to influence American
foreign policy and public opinion.  *See id.* ¶¶ 68-90.  They further allege that, after January 4,
2020, Defendants maintained offices in the United States that were not used exclusively for the
purpose of conducting official United Nations business.  *See id.* ¶¶ 75-95.

After Plaintiffs filed their Amended Complaint, the PA and PLO moved to dismiss for
lack of personal jurisdiction and for failure to state a claim.  *See* ECF No. 24.  For reasons not
relevant here, the Court directed the parties to file supplemental briefs as to the "application and
constitutionality of the PSJVTA."  ECF No. 34.  Additionally, after confirming that the PA and
PLO sought to challenge the constitutionality of the PSJVTA, the Court, pursuant to 28 U.S.C.

---

United States District Court for the District of Columbia. *See Est. of Klieman v. Palestinian
Auth.*, No. 04-CV-1173 (PLF) (D.D.C. Dec. 2, 2020), ECF No. 298.

[2]      In fact, Plaintiffs allege, albeit not in the Amended Complaint, that such payments "are a
legal entitlement under the PA Prisoners and Ex-Prisoners Law, under which '[t]he PA must give
every prisoner a monthly salary . . . [p]risoners' family members shall receive a portion of the
prisoners' salary' and '[t]he prisoner shall appoint an agent to collect his monthly salary or what
remains of it.'"  ECF No. 29, at 8-9 (quoting Law No. 19 of 2004, Art. 7, as translated and
admitted into evidence in *Sokolow v. Palestinian Liberation Org.*, No. 04-CV-397 (GBD)
(S.D.N.Y. May 13, 2015), ECF No. 909-90).

§ 2403(a) and Rule 5.1(b) of the Federal Rules of Civil Procedure, certified the constitutional challenge to the Attorney General of the United States and invited him to intervene.  ECF No. 36.  The United States subsequently intervened and filed a brief defending the constitutionality of the PSJVTA.  ECF No. 52; *see* ECF No. 53 ("U.S. Mem.").  Thereafter, both sides submitted supplemental briefs responding to the submission of the United States.  ECF No. 58 ("Defs.' Supp. Mem."); ECF No. 59 ("Pls.' Supp. Mem.").

## RULE 12(B)(2) STANDARDS

When responding to a Rule 12(b)(2) motion, a "plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (per curiam) (internal quotation marks omitted).  Where, as here, there has been no discovery or evidentiary hearing, plaintiffs need only make a *prima facie* showing that jurisdiction exists.  *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam).  Such a showing "entails making 'legally sufficient allegations . . . ,' including 'an averment of facts that, if credited[,] would suffice'" to establish that jurisdiction exists.  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).  *See generally Dorchester Fin. Sec., Inc.*, 722 F.3d at 84-85.  A court must construe "all allegations . . . in the light most favorable to the plaintiff."  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).

## DISCUSSION

To make a *prima facie* showing of personal jurisdiction, a plaintiff must demonstrate: (1) procedurally proper service of process, (2) "a statutory basis for personal jurisdiction that renders such service of process effective" and (3) that "the exercise of personal jurisdiction . . .

comport[s] with constitutional due process principles." *In Re LIBOR-Based Financial Instruments Antitrust Litig.*, — F.4th —, Nos. 17-1569 et al., 2021 WL 6143556, at *11 (2d Cir. Dec. 30, 2021) (internal quotation marks omitted). In this case, Defendants have waived any defenses regarding proper service of process. *See* ECF No. 13. And, at least for purposes of this motion, Defendants do not dispute Plaintiffs' allegation that they have made payments that trigger the PSJVTA's first "deemed consent" condition. *See* Am. Compl. ¶¶ 63, 66-67.[3] Thus, as in *Waldman I*, whether the exercise of personal jurisdiction over Defendants in this case is proper turns on "whether the third jurisdictional requirement is met — whether jurisdiction over the [D]efendants may be exercised consistent with the Constitution." 835 F.3d at 328.

In general, due process — pursuant to both the Fifth and the Fourteenth Amendments, *see id.* ("[T]he minimum contacts and fairness analysis is the same under the Fifth Amendment and the Fourteenth Amendment in civil cases.") — conditions "a tribunal's authority . . . on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable . . . ,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17

---

[3]     In fact, Defendants all but concede that they did in fact make such payments. *See* ECF No. 42 ("Defs.' Mem."), at 11 (describing Defendants' "decision to continue engaging in . . . conduct" described by the PSJVTA's factual prongs); *id.* at 21 ("Because personal jurisdiction based on *either* PSJVTA prong would violate due process, there is no need for the Court to determine wither Plaintiffs can satisfy the disjunctive 'U.S. conduct' PSJVTA prong in addition to the 'payment' prong." (citations omitted)); Defendants' Brief Concerning Application of the PSJVTA, *Sokolow v. Palestine Liberation Org.*, No. 04-CV-397 (GBD) (S.D.N.Y. Jan. 8, 2021), ECF No. 1021, at 2 n.1 ("[T]he Court can assume, without deciding, that Defendants have made at least one payment implicating the PSJVTA's payments provision."); *see also* ECF No. 31, at 3 (Defendants stating that they "incorporate by reference" their brief filed in *Sokolow*). By contrast, Defendants do contest Plaintiffs' allegations that the PSJVTA's second "deemed consent" prong has been met. *See, e.g.*, Defs.' Mem. 21-25; ECF No. 50 ("Defs.' Reply"), at 7-10. Because the Court concludes that the PSJVTA's first prong has been met, it need not decide whether Defendants' conduct also implicates the second prong.

(1945)).  More specifically, there are three traditional bases for personal jurisdiction that comport

with constitutional due process principles.  First, a court may exercise "general jurisdiction" over

a foreign defendant "when the defendant's affiliations with the State in which suit is brought are

so constant and pervasive as to render it essentially at home in the forum State."  *Waldman I*, 835

F.3d at 331 (cleaned up).  In such cases, jurisdiction encompasses "any and all claims against

that defendant."  *Id.*  Second, a court may exercise "specific or conduct-linked jurisdiction"

where there is a sufficient "affiliation between the forum and the underlying controversy,

principally, activity or an occurrence that takes place in the forum state and is therefore subject

to the State's regulation."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d

Cir. 2014) (cleaned up).  In other words, "to exercise jurisdiction consistent with due process, the

defendant's suit-related conduct must create a substantial connection with the forum."  *Walden v.

Fiore*, 134 S. Ct. 1115, 1122 (2014).

      In this case, Plaintiffs make no argument for general or specific jurisdiction, and for good

reasons: Any such argument would be foreclosed by the Second Circuit's decision in *Waldman I*.

First, to the extent relevant here, the Second Circuit held in *Waldman I* that the neither the PA

nor the PLO can be fairly regarded as "at home" in the United States for purposes of general

jurisdiction; instead, both "are 'at home' in *Palestine*, where these entities are headquartered and

from where they are directed."  *See Waldman I*, 835 F.3d at 332-34; *see also Shatsky*, 955 F.3d at

1036 ("The Palestinian Authority and the PLO are not subject to general jurisdiction because

neither one is 'at home' in the District of Columbia within the meaning of *Daimler*.").  Second,

the *Waldman I* Court held that the alleged tortious actions by the PA and the PLO, "as heinous as

they were, were not sufficiently connected to the United States to provide specific personal

jurisdiction in the United States.  There is no basis to conclude that the defendants participated in

these acts in the United States or that their liability for these acts resulted from their actions that did occur in the United States." 835 F.3d at 337.  These conclusions apply, with equal force, to this case.[4]  It follows that the Court cannot "constitutionally exercise either general or specific personal jurisdiction over the defendants in this case." *Id.* at 344.

Instead of relying on general or specific jurisdiction, Plaintiffs here rely entirely on the third traditional basis for personal jurisdiction: consent.  *See, e.g.*, *J. McIntyre Mach., Ltd. v. Nicasto*, 564 U.S. 873, 880 (2011) (plurality opinion); *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990).[5]  Unlike subject-matter jurisdiction, "personal jurisdiction represents . . . an individual right," which "can, like other such rights, be waived." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("*Bauxites*").  Thus, the Supreme Court has acknowledged "[a] variety of legal

---

[4]    An argument could be made — although, conspicuously, Plaintiffs do not make it — that this case is distinguishable from *Waldman I* because here the Amended Complaint alleges, on information and belief, that the attacker specifically "targeted" the victim "because he was a Jewish American." Am. Compl. ¶ 107; *cf. Waldman I*, 835 F.3d at 343-44 (holding that there was no specific jurisdiction in part "because the terror attacks in Israel at issue . . . were not expressly aimed at the United States and because the deaths and injuries suffered by the American plaintiffs in these attacks were random and fortuitous" (internal quotation marks omitted)).  But the sole factual basis for the allegation — namely, that Jabarin "deduced" Fuld "was a Jew and an American" on the basis of the latter's "skullcap" having "bold English lettering on it," Am. Compl. ¶ 107 — is too "conclusory and insufficient for specific personal jurisdiction purposes," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013); *see also Waldman I*, 835 F.3d at 338 (rejecting the argument that "Defendants intended to hit American citizens" on that ground that "it would be impermissible to speculate based on scant evidence what the terrorists intended to do" (emphasis omitted)).  In any event, Plaintiffs have forfeited any argument in favor of specific jurisdiction. *See, e.g.*, *Delgado v. Villanueva*, No. 12-CV-3113 (JMF), 2013 WL 3009649, at *2 n.2 (S.D.N.Y. June 18, 2013).

[5]    Separately, Plaintiffs dispute the proposition that the PLO and PA even have due process rights. *See* ECF No. 46 ("Pls.' Mem."), at 13 n.4.  But they acknowledge that that argument is foreclosed by *Waldman I* and make it only to preserve the issue "for appellate consideration." *Id.*  Thus, the Court need not and does not address the issue here.

arrangements" that "have been taken to represent express or implied consent to the personal

jurisdiction of the court." *Id.* The archetypal example of express consent occurs when "parties

to a contract . . . agree in advance to submit to the jurisdiction of a given court." *Id.* at 704

(internal quotation marks omitted). Examples of "legal arrangements" that constitute "implied"

consent are (1) a party's agreement to arbitrate, *see id.* (citing *Victory Transp. Inc. v. Comisaria*

*Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964) ("By agreeing to

arbitrate in New York, where the United States Arbitration Act makes such agreements

specifically enforceable, [the respondent] must be deemed to have consented to the jurisdiction

of the court that could compel the arbitration proceeding in New York.")); and (2) "state

procedures which find constructive consent to the personal jurisdiction of the state court in the

voluntary use of certain state procedures," *id.* (citing *Adam v. Saenger*, 303 U.S. 59, 67 (1938)

("There is nothing in the Fourteenth Amendment to prevent a state from adopting a procedure by

which a judgment in personam may be rendered in a cross-action against a plaintiff in its

courts.")). Additionally, the Federal Rules of Civil Procedure provide that a defendant waives

any defense based on lack of personal jurisdiction — and, in that sense, "consents" to personal

jurisdiction — by failing to raise the issue either in an answer or in an initial motion. *See* Fed. R.

Civ. P. 12(h)(1); *see Bauxites*, 456 U.S. at 704.

Significantly, the reason that consent suffices to support personal jurisdiction is rooted in

the fact that "personal jurisdiction flows from the Due Process Clause." *Id.* at 694. "The

personal jurisdiction requirement recognizes and protects an individual liberty interest." *Id.* at

702. If a party consents to appear in a particular forum, whether explicitly or implicitly, it

follows that "maintenance of the suit" in that forum does "not offend traditional notions of fair

play and substantial justice." *Id.* (cleaned up). "The actions of the defendant . . . amount to a

legal submission to the jurisdiction of the court."  *Id.* at 704-05.  After all, "[c]onsent, by its very

nature, constitutes 'approval' or 'acceptance.'"  *WorldCare Corp. v. World Ins. Co.*, 767 F.

Supp. 2d 341, 355 (D. Conn. 2011) (quoting *Black's Law Dictionary* definition of "consent" as

"[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a

competent person; legally effective assent").  Put differently, like presence in a forum that is

sufficient to support general jurisdiction, consent "reveals circumstances . . . from which it is

proper to infer an intention to benefit from and *thus an intention to submit to the laws of the*

*forum*."  *J. McIntyre Mach.*, 564 U.S. at 881 (plurality opinion) (emphasis added); *see also, e.g.*,

*Shaffer v. Heitner*, 433 U.S. 186, 203-04 (1977) (describing cases in which the Court

"purported . . . to identify circumstances under which . . . consent [could] be attributed to [a

foreign defendant]" as an "attempt[] to ascertain what *dealings* make it just to subject a foreign

corporation to local suit" (emphasis added) (internal quotation marks omitted)).

      That inference is reasonable, however, only where the defendant's statements or conduct

actually signal approval or acceptance.  That, in turn, requires the "consent" to meet certain

minimum requirements.  Thus, the law generally requires the party's consent to be "knowing and

voluntary" before it is treated as effective.  *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*,

384 F. Supp. 3d 532, 538 (E.D. Pa. 2019) ("It is axiomatic . . . that consent is only valid if it is

given both knowingly and voluntarily.").  After all, if a party giving consent does not understand

the consequences of its actions or lacks the ability to withhold consent, it cannot be said that its

"consent" signals anything, let alone "an intention to submit to the laws of the forum."  *J.*

*McIntyre Mach.*, 564 U.S. at 881 (plurality opinion).  Relatedly, courts may not enforce a party's

express consent to personal jurisdiction where doing so "would be unreasonable and unjust," *M/S*

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), or where the agreement was affected by

"fraud, undue influence, or overweening bargaining power," *id.* at 13; *see also id.* at 10-11

(noting that these limits are "merely the other side of the proposition . . . that in federal courts a

party may validly consent to be sued in a jurisdiction where he cannot be found").  And for

conduct to imply consent, the conduct must be "of such a nature as to justify the fiction" that the

party actually consented to submit itself to the jurisdiction of the court.  *Int'l Shoe*, 326 U.S. at

318.  Put simply, for waiver of personal jurisdiction through consent to satisfy the requirements

of due process, it "must be willful, thoughtful, and fair.  'Extorted actual consent' and 'equally

unwilling implied consent' are not the stuff of due process."  *Leonard v. USA Petroleum Corp.*,

829 F. Supp. 882, 889 (S.D. Tex. 1993).

Measured against these standards, the PSJVTA does not constitutionally provide for

personal jurisdiction over Defendants in this case.  Congress simply took conduct in which the

PLO and PA had previously engaged — conduct that the Second and D.C. Circuits had held was

insufficient to support personal jurisdiction in *Waldman I*, *Livnat*, *Shatsky*, and *Klieman* — and

declared that such conduct "shall be deemed" to be consent.  18 U.S.C. § 2334(e)(1); *see, e.g.*,

*Shatsky*, 955 F.3d at 1022-23, 1037 (holding that alleged "martyr payments" did not confer

specific jurisdiction over Defendants).  But the conduct to which Congress attached jurisdictional

consequence in the PSJVTA is not "of such a nature as to justify the fiction" that Defendants

actually consented to the jurisdiction of the Court.  *Int'l Shoe*, 326 U.S. at 318.  Inferring

consent to jurisdiction in the United States from the first prong of the "deemed consent

provision" — for "martyr payments," 18 U.S.C. § 2334(e)(1)(A), that have no direct connection

to the United States, let alone to litigation in a United States court — would strain the idea of

consent beyond its breaking point.  And while the second prong — relating to offices or other

facilities in the United States and activities "while physically present in the United States," *id.*

§ 2334(e)(1)(B) — does relate to conduct in the United States, the conduct (at least as alleged in this case) is too thin to support a meaningful inference of consent to jurisdiction in this country. Neither form of conduct, as alleged in this case, even remotely signals approval or acceptance of the Court's jurisdiction.  Nor do they support an inference that Defendants intended "to submit to the laws of the [United States]" or to the jurisdiction of an American court.  *J. McIntyre Mach.*, 564 U.S. at 881 (plurality opinion).  It may be that, under different circumstances, Congress or a state legislature could constitutionally "deem" certain conduct to be consent to personal jurisdiction.  (The Court need not and does not decide that question here.)  To pass muster, however, the predicate conduct would have to be a much closer proxy for actual consent than the predicate conduct at issue is here.  To be blunt: The PSJVTA is too cute by half to satisfy the requirements of due process here.

That conclusion finds strong support in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666 (1999).  The question there was whether a state could be deemed to have waived its Eleventh Amendment immunity from suit merely by engaging in conduct that violated federal law.  The Supreme Court held that it could not because "there is little reason to assume actual consent based upon the State's mere presence in a field subject to congressional regulation." *Id.* at 680.  "There is a fundamental difference," the Court observed, "between a State's expressing unequivocally that it waives its immunity and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity." *Id.* at 680-81.  In the former situation, the state has voluntarily consented to suit.  "In the latter situation, the most that can be said with certainty is that the State has been put on notice that Congress intends to subject it to suits brought by individuals.  That is very far from concluding that *the State* made an altogether voluntary

decision to waive its immunity." *Id.* at 681.  The fact that "the asserted basis for constructive waiver" was "conduct that the State realistically could choose to abandon," the Court declared, had "no bearing on the voluntariness of the waiver." *Id.* at 684.

To be sure, *College Savings Bank* involved the Eleventh Amendment, not the Due Process Clause of either the Fifth or Fourteenth Amendments, and there are differences between the two contexts.  Significantly, however, the Court's reasoning was not specific to any particular constitutional right.  To the contrary, the Court explicitly noted that constructive — i.e., "deemed" — consents were "simply unheard of in the context of *other* constitutionally protected privileges. . . . *Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights*." *Id.* (cleaned up) (latter emphasis added).  Underscoring the point, the Court then offered an example involving a very different constitutional right, the Sixth Amendment right to trial by jury:

> [I]magine if Congress amended the securities laws to provide with unmistakable clarity that anyone committing fraud in connection with the buying or selling of securities in interstate commerce would not be entitled to a jury in any federal criminal prosecution of such fraud.  Would persons engaging in securities fraud after the adoption of such an amendment be deemed to have "constructively waived" their constitutionally protected rights to trial by jury in criminal cases?  After all, the trading of securities is not so vital an activity that any one person's decision to trade cannot be regarded as a voluntary choice.  The answer, of course, is no.  The classic description of an effective waiver of a constitutional right is the intentional relinquishment or abandonment of a known right or privilege.  Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.

*Id.* at 681-82 (cleaned up).  In short, the principles underlying *College Savings Bank* are not specific to the Eleventh Amendment, but rather apply to constitutional rights broadly.  And there is no reason to believe that they apply any less forcefully to the constitutional right at issue here — the due process right not to be subjected to suit absent sufficient "'contacts' with the forum," *Ford Motor Co.*, 141 S. Ct. at 1024 — than they do to the Sixth Amendment jury trial right.

Thus, *College Savings Bank* all but compels the conclusion that personal jurisdiction is lacking here.  Yes, Congress "express[ed] unequivocally its intention that if" either the PLO or PA "takes certain action it shall be deemed to have" consented to suit in an American court.  527 U.S. at 680-81.  From that fact, however, "the most that can be said with certainty is that" the PLO and PA have "been put on notice that Congress intends to subject [them] to suits" in the United States.  *Id.* at 681. "That is very far from concluding that" either *the PLO or the PA* "made an altogether voluntary decision to" submit to such suits.  *Id.*  Moreover, the fact that "the asserted basis for" deemed consent jurisdiction in the PSJVTA is "conduct that" the PLO and PA "realistically could choose to abandon" is of no moment.  *Id.* at 684.  That fact simply has "no bearing on the voluntariness of the waiver." *Id*.

That would be enough, but a pair of recent Second Circuit decisions concerning business registration statutes provides additional support for the Court's conclusion that the exercise of jurisdiction over Defendants here would violate due process.  *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639-41 (2d Cir. 2016); *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 498-99 (2d Cir. 2020).  In *Brown*, the Court rejected the plaintiff's argument that by registering to do business in Connecticut and appointing an agent for service of process as required by Connecticut statute, the defendant had "consented to the jurisdiction of Connecticut courts for all purposes."  814 F.3d at 630.  In *Chen*, the Court held the same with respect to registration under New York law.  *See* 954 F.3d at 499.  Most relevant here, the Court did so in part because giving "broader effect" to the registration statutes "would implicate Due Process and other constitutional concerns."  *Brown*, 814 F.3d at 626; *accord Chen*, 954 F.3d at 498-99.  "If mere registration and the accompanying appointment of an in-state agent — without an express consent to general jurisdiction — nonetheless sufficed to confer general jurisdiction by implicit

consent," the Court reasoned, "every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief." *Brown*, 814 F.3d at 640; *accord Chen*, 954 F.3d at 499.

Admittedly, *Brown* and *Chen* do not speak directly to the constitutionality of the PSJVTA. The plaintiffs in both cases argued that the statutes at issue gave rise to general jurisdiction. Here, by contrast, Plaintiffs and the United States make no such argument, as the PSJVTA's jurisdictional provisions are specific to claims against Defendants under the ATA. Moreover, the statutes at issue in *Brown* and *Chen* were not explicit in deeming registration to be consent. The PSJVTA, of course, is. In point of fact, *Brown* and *Chen* explicitly left open the possibility "that a carefully drawn state statute that *expressly* required consent to general jurisdiction as a condition on a foreign corporation's doing business in the state, at least in cases brought by state residents, might well be constitutional," *Brown*, 814 F.3d at 641 (emphasis added), and ultimately did not reach the question squarely presented here, namely whether a court's assertion of jurisdiction over a foreign defendant, "even when exercised pursuant to [the defendant's] purported 'consent,' [is] limited by the Due Process clause," *id.*[6] But the decisions

---

[6] The *Brown* Court noted that Pennsylvania's registration statute "more plainly advise[d] the registrant that enrolling in the state as a foreign corporation and transacting business will vest the local courts with general jurisdiction over the corporation," 814 F.3d at 640 (citing 42 Pa. Cons. Stat. § 5301(a)(2)(i)-(ii)), and that the Third Circuit had held that the statute was consistent with due process, *see id.* (citing *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991)). (The Pennsylvania statute is apparently the only registration statute in the country that is explicit in deeming registration to be consent. *See Asbestos Prods. Liab. Litig.*, 384 F. Supp. 3d at 539.) Notably, however, the Pennsylvania Supreme Court recently held that, following *Daimler*, the statutory scheme could *not* be squared with the Due Process Clause. *See Mallory v. Norfolk S. Rwy. Co.*, — A.3d —, 2021 WL 6067172, at *14-21 (Pa. Dec. 22, 2021). The Court acknowledged that the state's business registration statute put foreign corporations on notice that registration would be deemed consent, but concluded that such "notice . . . does not render the consent voluntary." *Id.* at *19. (In so holding, the Court rested in part on the "unconstitutional conditions doctrine." *See id.* at *20. Defendants here advert to that doctrine, but only in a footnote. *See* Defs.' Mem. 14 n.3. Accordingly, the Court deems any argument with respect to

strongly suggest — even if they do not hold — that "deemed consent" jurisdiction is limited by

the Due Process Clause and that allowing Congress by legislative fiat to simply "deem" conduct

that would otherwise not support personal jurisdiction in the United States to be "consent," as it

tried to do here, would "rob[]" the case law conditioning personal jurisdiction on sufficient

contacts with the forum "of meaning by a back-door thief." *Id.* at 640.

Notably, in arguing that the PSJVTA passes constitutional muster, Plaintiffs and the

United States do not dispute that a statute "deeming" certain conduct to be "consent" to personal

jurisdiction must be consistent with due process. *See* U.S. Mem. 7-9; Pls.' Mem. 13. In their

view, however, to comply with due process, a "deemed consent" statute need only give

defendants "fair warning about what conduct will subject them to personal jurisdiction with

respect to a particular class of claims, and a reasonable period to structure their primary conduct

with some minimum assurance as to where that conduct will and will not render them liable to

suit." U.S. Mem. 9 (internal quotation marks omitted); *see* Pls.' Mem. 13.[7] If a statute does so,

they argue, a defendant who thereafter engages in the predicate conduct has "knowingly" and

"voluntarily" consented to jurisdiction and the exercise of jurisdiction over such a defendant

---

the doctrine to have been abandoned. *See, e.g.*, *Fieldcamp v. City of New York*, 242 F. Supp. 2d
388, 391 (S.D.N.Y. 2003) ("[T]he failure to provide argument on a point at issue constitutes
abandonment of the issue."); *accord Wilmington Tr., N.A. v. 115 Owner LLC*, No. 20-CV-2157
(JMF), 2021 WL 5086368, at *1 n.1 (S.D.N.Y. Nov. 2, 2021).)

[7]     Plaintiffs add that, to pass muster under the Due Process Clause, a deemed consent statute
also has to serve a "legitimate governmental objective" so as to "avoid[] the arbitrary or
irrational exercise of power." Pls.' Mem. 13-16 (citing *Sacramento v. Lewis*, 523 U.S. 833, 846
(1998)). True enough: "The touchstone of due process is protection of the individual against
arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). But this
additional prong adds little to Plaintiffs' proposed test (and is easily satisfied here in any event),
as "only the most egregious official conduct can be said to be arbitrary in the constitutional sense
and therefore unconstitutional." *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)
(cleaned up). Thus, the Court need not and does not address it further.

comports with due process.  As applied here, Plaintiffs and the United States argue that Defendants knowingly and voluntarily "consented" because they "knew" the activities would "be deemed consent" to jurisdiction and were given "the opportunity to 'voluntarily' choose whether or not to continue such activities and thereby consent to jurisdiction in the courts of the United States."  U.S. Mem. 10; *see* Pls.' Supp. Mem. 5.  In short, in their view, nothing more than fair notice and an opportunity to conform is required for "deemed consent" to satisfy due process.

The Court cannot agree.  Separate and apart from the fact that the argument of Plaintiffs and the United States is the very one rejected by the Supreme Court in *College Savings Bank*, to accept it would effectively mean that there are *no* due process limitations on the exercise of personal jurisdiction.  Congress or a state legislature could provide for jurisdiction over *any* defendant for *any* conduct so long as the conduct post-dated enactment of the law at issue.  That is, Congress or the legislature could simply "deem" a substantive violation of the law at issue to be "consent" and, on that basis, subject any defendant who later committed a violation to jurisdiction without regard for its "contacts, ties, or relations" with the forum.  *Int'l Shoe*, 326 U.S. at 319.  Congress, for example, could simply "deem" a substantive violation of the ATA to mean that a defendant had "consented" to jurisdiction.  Or, perhaps more revealingly, a state legislature could pass a statute declaring that any foreign corporation that distributed vehicles to in-state dealerships would be "deemed" to have consented to personal jurisdiction in that state — circumventing the Supreme Court's holding in *Daimler*.  571 U.S. at 136; *cf. Coll. Savings Bank*, 527 U.S. at 683 ("Recognizing a congressional power to exact constructive waivers of sovereign immunity through the exercise of Article I powers would also, as a practical matter, permit Congress to circumvent the antiabrogation holding of *Seminole Tribe* [*of Florida v. Florida*, 517

U.S. 44 (1996)].").  In short, to hold that fair notice and an opportunity to conform one's

behavior are the only requirements for "deemed consent" jurisdiction to comport with due

process would be to hold that personal jurisdiction is limited only by reach of the legislative

imagination — which is to say, that there are no constitutional limits at all.

Congress should not be permitted to circumvent fundamental constitutional rights

through such sleight of hand.  *See Frost & Frost Trucking Co. v. R.R. Comm'n*, 271 U.S. 583,

593 (1926) ("[C]onstitutional guarantees, so carefully safeguarded against direct assault, [should

not be] open to destruction by the indirect but no less effective process of requiring a surrender

which, though in form voluntary, in fact lacks none of the elements of compulsion.").  Indeed, to

give such power to a legislature would be to violate the longstanding proposition that "it was not

left to the legislative power to enact any process which might be devised" and that due process

"cannot be so construed as to leave Congress free to make any process 'due process of law,' by

its mere will."  *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 276 (1856);

*see Quill Corp. v. N. Dakota*, 504 U.S. 298, 305 (1992) (noting that Congress does not "have the

power to authorize violations of the Due Process Clause"), *overruled on other grounds by S.

Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018).  More directly on point, it would offend the

fundamental principle that a statute "cannot create personal jurisdiction where the Constitution

forbids it."  *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008) (internal

quotation marks omitted), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305

(2010); *see Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002)

("[I]t is well-settled that a statute cannot grant personal jurisdiction where the Constitution

forbids it." (internal quotation marks omitted)).  Or as the Second Circuit put it in *Waldman I*

(when rejecting the plaintiffs' argument that the PLO and the PA had consented to personal

jurisdiction through their appointment of an agent for service of process in Washington): A *statute* cannot itself "answer the *constitutional* question of whether due process is satisfied." 835 F.3d at 343 (emphasis added).

 Moreover, as the Supreme Court's reference to the jury trial right in *College Savings Bank* makes plain, to accept the argument advanced by Plaintiffs and the United States could (and likely would) have staggering implications beyond the realm of personal jurisdiction. After all, the concepts of consent and waiver have legal significance with respect to a host of individual constitutional rights. Law enforcement may conduct a warrantless search on consent. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A defendant cannot be prosecuted for a felony absent an indictment unless he waives the right to be indicted by a grant jury. *See, e.g.*, *Matthews v. United States*, 622 F.3d 99, 101 (2d Cir. 2010). Parties entitled to a civil jury trial under the Seventh Amendment can consent to a bench trial. *See, e.g.*, *Texas v. Penguin Grp. (USA) Inc.*, No. 11-MD-2293 (DLC), 2013 WL 1759567, at *6-7 (S.D.N.Y. Apr. 24, 2013). Parties in a federal civil case are entitled to litigate their claims before an Article III judicial officer absent consent to proceed by other means. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 674-78 (2015). And so on. To accept that fair notice and an opportunity to alter conduct are all that is required for a legislature to "deem" conduct to be "consent" is to accept that the rights underlying these doctrines are subject to mere legislative whim. Congress could simply say that a person who is arrested on probable cause with a cellphone is "deemed" to have "consented" to a search of the phone, *cf. Riley v. California*, 573 U.S. 373, 386 (2014) (holding that law enforcement officers "must generally secure a warrant" before searching a cellphone seized incident to an arrest); that by merely filing or answering a lawsuit in federal

court, a party is "deemed" to have "consented" to a bench trial or to have "consented" to the jurisdiction of a Magistrate Judge; and so on.  Constitutional rights are not so fickle.

Conspicuously, Plaintiffs and the United States do not cite any case suggesting, let alone holding, that a legislature may simply "deem" conduct unrelated to actual consent to be consent, in the personal jurisdiction context or otherwise.[8]  The closest they come is the Supreme Court's decision in *Bauxites*, but *Bauxites* does not bear the weight they put on it.  In *Bauxites*, the district court found that the petitioners had violated various discovery orders relating the question of personal jurisdiction.  Exercising its authority under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure, the district court sanctioned the petitioners by deeming the facts that formed the basis for personal jurisdiction to be established.  On appeal, the petitioners argued that this violated due process because a court "may not create" personal jurisdiction "by judicial fiat."  456 U.S. at 695.  The Supreme Court rejected the argument, holding that application of Rule 37(b)(2) supported the presumption, established in *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909), "that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense."  456 U.S. at 705-06.

---

[8]     Plaintiffs and the United States both rely on *Wellness International Network* and *Roell v. Withrow*, 538 U.S. 580 (2003), *see* U.S. Mem. 13-14; Pls.' Mem. 14, but neither case provides support for their cause.  In each case, the Court blessed the concept of implied consent (in *Wellness International Network*, for consent to the jurisdiction of a bankruptcy judge and in *Roell*, for consent to the jurisdiction of a magistrate judge) and stressed that "consent — whether express or implied — must still be knowing and voluntary."  *Wellness Int'l Network*, 575 U.S. at 685.  But neither case identified a standard for determining what conduct constitutes implied consent, let alone addressed whether or when a legislature can simply "deem" conduct to be consent.  If anything, the decisions support the proposition that conduct constitutes consent only where the party's actual acquiescence can be inferred, as they held that a party's consent to a non-Article III adjudicator turns on whether it "voluntarily appeared" before that adjudicator.  *Id.* at 685; *Roell*, 538 U.S. at 590. "Appearance" is defined, in turn, as "the overt act by which a party *submits* himself to the court's jurisdiction.  An appearance may be expressly made . . . or it may be implied from some act done *with the intention of appearing and submitting* to the court's jurisdiction."  *Roell*, 538 U.S. at 586 n.3 (emphases added).

"The sanction," the Court concluded, "took as established the facts — contacts with Pennsylvania — that [the respondent] was seeking to establish through discovery. That a particular legal consequence — personal jurisdiction of the court over the defendants — follows from this, does not in any way affect the appropriateness of the sanction." *Id.* at 709.

*Bauxites*, therefore, stands for the straightforward proposition that where a defendant voluntarily submits to the jurisdiction of a court for purposes of disputing jurisdiction and then violates orders with respect to jurisdictional discovery, it does not offend due process to deem the facts supporting personal jurisdiction to be established. Critically, however, the petitioners' conduct was related to the litigation itself — in which petitioners had voluntarily appeared (albeit for the limited purpose of disputing jurisdiction). *See id.* at 706 ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. By submitting to the jurisdiction of the court for the limited purpose of challenging jurisdiction, the defendant agrees to abide by that court's determination on the issue of jurisdiction." (citation omitted)). Moreover, the petitioners were not deemed to have consented to the court's jurisdiction through their conduct; indeed, the Court made clear that such a direct sanction would indeed have violated due process. *See* 456 U.S. at 706 (citing *Hovey v. Elliott*, 167 U.S. 409 (1897)).

Instead, the petitioners' conduct in *Bauxites* was sufficient to support a presumption of *fact* — namely, that they had contacts with Pennsylvania — that, in turn, had the *legal* consequence of establishing personal jurisdiction. In other words, the Court blessed a legal fiction, but only because the fiction was not so far detached from fact. *See id.* at 701 (quoting Justice Holmes's opinion in *McDonald v. Mabee*, 243 U.S. 90, 91 (1917), for the proposition that "'great caution should be used not to let fiction deny the fair play that can be secured only by a

pretty close adhesion to fact'"").  Additionally, the Court took pains to state that its holding "does

not alter the requirement that there be 'minimum contacts' between the nonresident defendant

and the forum . . . .  Rather, our holding deals with how the facts needed to show those

'minimum contacts' can be established when a defendant fails to comply with court-ordered

discovery."  *Id.* at 703 n.10.  If anything, therefore, *Bauxites* supports the conclusion that a court

may not exercise personal jurisdiction over a defendant, based on purported consent or

otherwise, unless the defendant has sufficient "contacts, ties, or relations" with the forum "such

that the maintenance of the suit does not offend traditional notions of fair play and substantial

justice."  *Int'l Shoe*, 326 U.S. at 316, 319 (internal quotation marks omitted).[9]

     Separately, Plaintiffs and the United States fall back on the deference that courts owe to

the political branches with respect to matters of foreign affairs and national security.  *See* U.S.

Mem. 10-13, 19; Pls.' Mem. 14-16.  But their argument is unavailing for several reasons.  First,

although courts should grant deference to the political branches when it comes to such matters in

light of their constitutionally derived powers and expertise, "concerns of national security and

foreign relations do not warrant abdication of the judicial role. . . .  [T]he Government's authority

and expertise in these matters do not automatically trump the Court's own obligation to secure

the protection that the Constitution grants to individuals."  *Holder v. Humanitarian L. Project*,

561 U.S. 1, 34 (2010) (internal quotation marks omitted); *see Open Soc'y Just. Initiative v. Dep't*

---

[9]    To be sure, *Bauxites* does state that "[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, *whether voluntary or not*."  456 U.S. at 704-05 (emphasis added).  Read in context, however, the phrase "or not" plainly refers to situations other than consent in which a defendant's actions nevertheless legally amount to submission to the jurisdiction of a court.  To read it otherwise would violate the fundamental proposition — endorsed, of course, by Plaintiffs and the United States themselves — that consent must be knowing and voluntary in order to be valid.

*of Def.*, No. 20-CV-5096 (JMF), 2021 WL 3038528, at *7 (S.D.N.Y. July 15, 2021) ("Judicial

deference in the area of national security is certainly warranted.  But deference is not equivalent

to acquiescence." (internal quotation marks omitted)).  Indeed, the courts' "respect for

Congress's policy judgments" cannot "disavow restraints on federal power that the Constitution

carefully constructed" because courts "enforce the limits on federal power by striking down acts

of Congress that transgress those limits."  *NFIB v. Sebelius*, 567 U.S. 519, 538 (2012).  As

Justice Souter once put it: "Even Justice Sutherland's reading of the National Government's

'inherent' foreign affairs power . . . contained the caveat that the power, 'like every other

governmental power, must be exercised in subordination to the applicable provisions of the

Constitution.'"  *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 417 n.9 (2003) (quoting *United

States v. Curtiss-Wright Export Corp*., 299 U.S. 304, 320 (1936)).

The constitutional limits on the political branches' exercise of the treaty power

underscore the point.  The Constitution explicitly grants the President the "Power, by and with

the Advice and Consent of the Senate to make Treaties."  U.S. Const. art. II, § 2.  And treaties,

by definition, implicate foreign relations.  Yet, the law is pellucid that "the treaty power cannot

override constitutional limitations respecting individual rights."  *Oneida Indian Nation of N.Y. v.

State of N.Y.*, 860 F.2d 1145, 1163 (2d Cir. 1988) (citing *Reid v. Covert*, 354 U.S. 1, 16-17

(1957) (plurality opinion)); *see Am. Ins. Ass'n*, 539 U.S. at 416 & n.9 ("[Treaties are s]ubject . . .

to the Constitution's guarantees of individual rights."); *In re Premises Located at 840 140th Ave.

NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2011) ("Treaties, like statutes, are subject to

constitutional limits, including the separation of powers and the guarantee of due process.").  If

the political branches cannot use the treaty power — despite its explicit constitutional

provenance and the fact that it is wielded, by definition, in the realm of foreign affairs — to override an individual's due process rights, they surely cannot do so here either.

Second, and in any event, Plaintiffs and the United States do not cite, and the Court has not found, any authority for the proposition that the test for personal jurisdiction — which, again, is an individual constitutional right — varies by context or by the nature of a plaintiff's claim. *See Livnat*, 851 F.3d at 56 ("[A]lthough congressional interests may be relevant to whether personal jurisdiction comports with due-process standards, they cannot change the standards themselves." (citation omitted)); *see also Waldman I*, 835 F.3d at 329-30 & n.10 (holding that personal jurisdiction standards are the same under the Fifth and Fourteenth Amendments, citing cases against foreign defendants and involving terrorism, and specifically rejecting the argument that there is "'universal' — or limitless — personal jurisdiction in terrorism cases"). And finally, such an "expansive view" of Congress's authority to create personal jurisdiction where it otherwise would not exist, even if limited to the context of foreign affairs, would pay insufficient "heed to the risks to international comity." *Daimler*, 571 U.S. at 141. "Considerations of international rapport thus reinforce" the Court's "determination that subjecting" foreign parties to jurisdiction based on conduct that has no direct contact with the United States, let alone nexus with litigation in the United States, "would not accord with the 'fair play and substantial justice' due process demands." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).

In the final analysis, the Court cannot acquiesce in Congress's legislative sleight of hand and exercise jurisdiction over Defendants here pursuant to the PSVJTA. A defendant's knowing and voluntary consent is a valid basis to subject it to the jurisdiction of a court, but Congress cannot simply declare anything it wants to be consent. To hold otherwise would let fiction get the better of fact and make a mockery of the Due Process Clause. *See McDonald*, 243 U.S. at 91

(Holmes, J.) ("[G]reat caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact"); *M3 USA Corp. v. Qamoum*, No. CV 20-2903 (RDM), 2021 WL 2324753, at *12 (D.D.C. June 7, 2021) ("[T]he Court must avoid treating 'consent' as simply a 'legal fiction' devoid of content or engaging in 'circular' reasoning that premises 'consent' on the presumption that defendants know the law and then defines the law so that anyone engaging in the defined conduct is deemed to have consented to personal jurisdiction.").  That is not to say that "deemed consent" jurisdiction in all its forms would necessarily be unconstitutional.[10]  If the underlying conduct were a closer proxy for actual consent, perhaps a statute deeming the conduct to be consent would pass muster.  The Court leaves that question for another day.  For today's purposes, it suffices to say that the provisions of the PSVJTA at issue push the concept of consent well beyond its breaking point and that the predicate conduct alleged here is not "of such a nature as to justify the fiction" of consent.  *Int'l Shoe*, 326 U.S. at 318.  It follows that exercising jurisdiction under the facts of this case does not comport with due process and Defendants' motion must be granted.

---

[10]     Nor is it to say that Defendants are correct in arguing that "'deemed' consent to jurisdiction cannot be squared with Due Process unless there is *reciprocity*," which they define as "an express or implied exchange by which a defendant impliedly agrees to jurisdiction in return for a benefit conferred by the forum," Defs.' Mem. 1 (emphasis added).  Although there are cases holding that a defendant's receipt of a benefit can be deemed to be consent, *see, e.g.*, *Hess v. Pawloski*, 274 U.S. 352, 356-57 (1927); *cf. J. McIntyre Mach.*, 564 U.S. at 881 (plurality opinion) (describing "circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State"); *Coll. Savings Bank*, 527 U.S. at 686 ("Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not require them to take, and that acceptance of the funds entails an agreement to the actions."), Defendants do not cite, and the Court has not found, any case holding that such receipt of a benefit is a necessary condition.  *See also, e.g.*, *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 380 (S.D.N.Y. 2001) (Lynch, J.) ("[V]oluntary consent to jurisdiction need not be supported by consideration.").

## CONCLUSION

As in *Waldman I*, the killing of Ari Fuld was "unquestionably horrific" and Plaintiffs' efforts to seek justice on his and their own behalf are morally compelling.  835 F.3d at 344. "But," as the Second Circuit emphasized in its decision, "the federal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed by the due process clause of the Constitution, no matter how horrendous the underlying attacks or morally compelling the plaintiffs' claims."  *Id.* at 344.  For the reasons discussed above, the Court concludes that exercising jurisdiction here would indeed go beyond the limits prescribed by the Due Process Clause.  Accordingly, and for the reasons discussed above, the Court concludes that Defendants' motion to dismiss for lack of personal jurisdiction must be and is GRANTED.  As a result, the Court need not and does not reach Defendants' other arguments for dismissal.

The Clerk of Court is directed to terminate ECF No. 24, to close this case, and to enter judgment for Defendants.

SO ORDERED.

Dated: January 6, 2022
New York, New York

_____
JESSE M. FURMAN
United States District Judge

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MIRIAM FULD et al.,

                         Plaintiffs,

         -against-                                20 **CIVIL** 3374 (JMF)

                                                     **<u>JUDGMENT</u>**

THE PALESTINE LIBERATION ORGANIZATION
et al.,

                        Defendants.

-----------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Opinion and Order dated January 6, 2022, and as in *Waldman I*, the killing of

Ari Fuld was "unquestionably horrific" and Plaintiffs' efforts to seek justice on his and their own

behalf are morally compelling. 835 F.3d at 344. "But," as the Second Circuit emphasized in its

decision, "the federal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed

by the due process clause of the Constitution, no matter how horrendous the underlying attacks or

morally compelling the plaintiffs' claims." *Id.* at 344. The Court concludes that exercising

jurisdiction here would indeed go beyond the limits prescribed by the Due Process Clause.

Accordingly, the Court concludes that Defendants' motion to dismiss for lack of personal jurisdiction

must be and is GRANTED. As a result, the Court need not and does not reach Defendants' other

arguments for dismissal; accordingly, the case is closed.

**Dated:** New York, New York

      January 7, 2022

                                        **RUBY J. KRAJICK**

                                        _____

                                           **Clerk of Court**

                   **BY:**    *K. Mango*

                                           _____

                                           **Deputy Clerk**